# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SV Special Situations Master Fund Ltd.,
    Plaintiff,

    v.

Knight Libertas, LLC, et al.,
    Defendants/Third-Party-Plaintiffs,

    v.

Scott Stagg, Mark Focht, and
3V Capital Management, LLC,
    Third-Party Defendants.

No. 3:08cv1769 (SRU)

## PARTIAL RULING AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Pending before me are three motions for summary judgment arising out of facts and

circumstances best characterized as a deeply contentious corporate divorce involving former

hedge fund partners, Scott Stagg and Gary Katcher.   The pair and their various corporate entities

are embroiled in at least three separate litigations, including this one, arising out of Stagg's

creation of a new hedge fund and Katcher's sale of his own company for a sizable fortune.   *See*

*Katcher v. 3V Capital Partners LP,* 2011 WL 105724 (Conn. Super. Feb. 1, 2011); *Katcher v.*

*Stagg,* No. X05cv085008570 (Conn. Super.).   At summary judgment, I am faced with an unusual

set of circumstances in which the defendants, collectively, admit to having in their possession,

without a claim of right, $8,938,574.64 wrongly obtained from 3V Capital Master Fund, Ltd. [1]

Defendants, however, challenge plaintiff's standing to recover the $8,938,574.64 (and other

---

[1] The facts and allegations addressed in this ruling concern the second amended complaint.   SV Master Fund moved
to file a third amended complaint adding, *inter alia*, former plaintiff 3V Capital Master Fund Ltd. as an additional
plaintiff in the case.   *See* doc. # 270.   The motion to amend was granted on June 23, 2011.   *See* doc. # 280.

monies at issue). Plaintiff's loose treatment of corporate formalities compounded by both sides'

inability to properly identify the applicable law has rendered the issue of standing unresolvable on

the current record. The open question of standing coupled with plaintiff's failure to come forth

with evidence demonstrating which defendant or defendants received and/or benefitted from the

$8,938,574.64 prevents me from granting summary judgment in its favor at this time.

Furthermore, with respect to Katcher's counterclaim, there exists no dispute of material fact that

SV Special Situations Master Fund Ltd. erroneously received and continues to hold $4,124,542

belonging to Katcher. Because each defendant's liability to plaintiff cannot be resolved on this

record, open questions remain whether Katcher's claim to the $4,124,542 is affected by his own

unclean hands.

Accordingly, for the reasons that follow, defendants' motion for summary judgment (doc.

# 236) is denied in part and taken under advisement in part; plaintiff's motion for summary

judgment (doc. # 243) is taken under advisement; third-party-defendants' motion for summary

judgment (doc. # 243) is granted in part and denied in part; and counterclaimant's motion for

summary judgment (doc. # 239) is denied. The parties are ordered to place certain monies into

escrow and to supplement the record as set forth below.

## II.     Standard of Review

### A.     Summary Judgment

Summary judgment is appropriate when the record demonstrates that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must

present affirmative evidence in order to defeat a properly supported motion for summary

judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to resolve all ambiguities and draw all inferences in favor of the nonmoving party). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Only when reasonable minds could not differ about the import of the evidence is summary judgment proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable, or is not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of

its case with respect to which it has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## III. Background

### A. Factual Background

The following facts are not in dispute unless otherwise noted. In February 2004, Scott Stagg and Gary Katcher opened 3V Capital Master Fund, Ltd. ("3V" or "3V Master Fund"), a hedge fund specializing in below-grade investments. *See* doc. # 243-5 at ¶3 ("Stagg Aff'd"); *see also* doc. # 242, ex. 63 at ¶4 ("Katcher Aff'd."). The fund consisted of two feeder funds -- 3V Capital Partners LP and 3V Capital Fund, Ltd. *See* doc. # 243-6, ex. 1. 3V Capital Management, LLC ("3V Management") operated as the investment advisor and the entity through which 3V Master Fund effectuated trades. *Id.* Katcher and Stagg each held a fifty percent ownership interest in 3V Management and 3V Capital Advisors, LLC ("3V Advisors"). 3V Advisors is the general partner of 3V Capital Partners LP. *See* Stagg Aff'd at ¶5; Katcher Aff'd at ¶5.

In 2002, Katcher formed Libertas Holdings, LLC ("Libertas Holdings") and Libertas Partners, LLC ("Libertas Partners"). Katcher Aff'd. at ¶1. The Libertas entities specialized in the sales, trading and research of high-yield/distressed debt instruments. *Id.* at ¶2. Katcher was the Chief Executive Officer of Libertas Holdings and Libertas Partners. *Id.* at ¶1. Libertas

Holdings owned Libertas Partners; Katcher was the majority owner of Libertas Holdings. *See* doc. # 242, ex. 1 at p. 48 and ex. 54. 3V Master Fund brokered the vast majority of its trades through Libertas Partners. *See* Stagg Aff'd at ¶3.

In January 2003, the Libertas entities hired Mark Focht ("Focht") as Chief Operations Officer ("COO"). Doc. #148 at ¶9. Focht also began working as 3V Management's COO in 2004. *Id.* at ¶ 10. Focht's duties at both entities included paying expenses and managing the relationship between the Libertas and 3V entities. During the years 2004 to 2007, the business operations of the Libertas and 3V entities overlapped, including the sharing of employees and office space. *Id.* at 8. In March 2007, Stagg, without Katcher, formed SV Special Situations Fund, LP and SV Special Situations Fund, Ltd., feeder funds that co-invested in plaintiff, SV Special Situations Master Fund, Ltd. ("SV Master Fund" or "SV"). Doc. # 242, ex. 13 at 213-15.

At or about the same time, Stagg, allegedly without Katcher's knowledge or consent, closed the 3V funds to new investors and moved the offices of the 3V entities to a new location. Doc. # 148 at ¶¶13-14. SV Master Fund claims to have absorbed the assets of 3V and effectively replaced 3V as an investment vehicle; defendants contend that SV Master Fund is not 3V Master Fund's successor-in-interest and therefore lacks standing to pursue claims in place of 3V Master Fund. *See* Stagg Aff'd at ¶¶41-46. In 2008, Knight Capital Group, Inc. ("Knight") purchased the Libertas entities. Doc. # 242 at ex. 65.

The core issues in this case are premised on two allegations: that Stagg and 3V Management froze Katcher out of the 3V entities and have impermissibly retained Katcher's partnership account valued in excess of $4 million; and that defendants wrongfully obtained and kept nearly $13,159,703.48 of 3V Master Fund's assets as part of scheme to reduce 3V Master Fund's capital and to inflate the value of the Libertas entities for sale to Knight. The former

allegation is the subject of Katcher's counterclaim (doc. # 174) and is discussed more fully *infra* at section IV.C.   The latter allegation centers a series of transactions in which monies from 3V Master Fund were transferred by Focht to either Libertas Partners or Katcher, or through them to pay the debts and obligations of Libertas Holdings.   The facts concerning the alleged unauthorized transfers are as follows.

1. *Northern Offshore Transfers*

From October 2005 to May 2006, over the course of sixteen transactions, $4,082,541.70 was transferred from 3V Master Fund and Distressed High yield Trading Opportunities Fund Ltd. ("Distressed").[2]   The transfers were purportedly to purchase Northern Offshore securities for the benefit of 3V Master Fund.   The orders were prepared by Focht and signed by Stagg.   Doc. # 243-6, ex.3; doc. # 254, ex. 12 at 136-37.   On March 6, 2006, Bill Rapavy of Access International Advisors, emailed Focht about discrepancies relating to the Northern Offshore purchases.   Doc. # 254, ex. 24 at K05189-K051992.   Rapavy questioned Focht about transfers from 3V Master Fund for the purchase of Northern Offshore Securities in which 3V Master Fund did not receive the shares.   *Id.*   SV Master Fund alleges that 3V Master Fund never received the securities identified by Rapavy but acknowledges that the Libertas entities incurred financial obligations on behalf of 3V and/or Distressed and that those obligations offset at least some of the transfers.   Stagg Aff'd at ¶¶18-19.   The net loss claimed by SV Master Fund associated with the Northern Offshore transfers is $858,562.95.[3]   Defendants maintain that 3V Master Fund received consideration for all Northern Offshore-related transfers.

2  3V Management managed the assets in the accounts of Distressed.   Stagg Aff'd at ¶ 7.   Distressed has assigned its right to reclaim those funds to 3V Master Fund.   Doc. # 243-6, ex. 25.
3  In the proposed third amended complaint, plaintiff claims an additional loss of $373,000 associated with the Northern Offshore transfers.   This ruling concerns only the allegations as pled in the second amended complaint.

## 2. *Delta Airlines Transactions*

On December 1 and 13, 2005, Libertas Partners transferred (over the course of three transactions) a total of $1,160,250 from 3V Master Fund and Distressed to Libertas's Escrow Account purportedly for the purchase of Delta Airlines securities.   Doc. # 243-6, ex. 10.   Libertas retained the funds for five months and on April 18, 2006, Libertas carried out the security purchase on 3V Master Fund's behalf.   3V Master Fund did in fact receive the Delta Airlines securities. Doc. # 257 at p. 6 n.6.

## 3. *Payroll Transfer*

On or about February 14, 2007, $3,362,565.89 was transferred from 3V Master Fund's trading account to Libertas Holdings's payroll agent to cover Libertas Holdings's February 15, 2007 payroll ("Payroll Transfer").   Doc. # 243-5, ex 17.   The letters of authorization to transfer the funds are signed by Stagg; he denies that 3V Master Fund authorized the transfers.   Doc. #243-6, ex. 15, Stagg Aff'd at ¶31.   Defendants do not deny receiving and accepting the funds, but argue that the funds were transferred to reimburse the Libertas entities for $3.4 million in expenses Libertas incurred on behalf of 3V.   Doc. # 250 at p.23; *see also* doc. # 243-5, ex. 17. Katcher and Libertas claim to have relied upon Focht's explanation that the monies were in fact reimbursement for 3V related expenses; Focht has testified that this was a lie.   Doc. # 243-5, ex. 17; *see also* doc. #243-2/3, ex B. 22-23.   Focht states that he wired the money to help Libertas meet its payroll obligations.   Doc. #243-2/3, ex. B at 9 – 13.   Defendants continue to maintain that Libertas's auditor substantiated that the transfers were nonetheless proper reimbursements.

## 4. *Stelco Transfer*

On or about May 2, 2006, 3V agreed to purchase Stelco bonds from Ore Hill through Libertas Partners.   Doc. # 243-5, ex. 13.   Focht caused 3V to wire Libertas a total of

$5,836,043.17 for the purchase ("Stelco transfer"). Distressed transferred $2,918,021 and Pierce Diversified Strategy Master Fund LLC ("Pierce")[4] transferred $427,782.10 towards the purchase of the bonds. Although the transfer orders bear Stagg's signature, Focht testified that he initiated the Stelco transfer in order to satisfy Libertas's debt to another entity, Quadrangle. Doc. # 243-5, ex. 13; doc. #243-2/3, ex B at 332. A portion of those funds went to Quadrangle, and a portion went to pay other Libertas debts. Doc. #243-2/3, ex B at 332. Ore Hill's counsel confirmed by affidavit that it never received the funds to purchase the Stelco bonds. Baum Aff'd at 9. Defendants do not deny the fact of the Stelco transfer; in fact, they concede to having no legitimate claim to $5,836,043.17. *See* May 4, 2011 Hr'g Trans. at p. 12 ("Court: The defendants have not denied that they have at least 8.9 million-dollars that is not theirs. [Defendants' Counsel]: I agree.").

> 5. *Transport Transfer*

On or about February 2006, Libertas agreed to purchase the "Transport" bond from Credit Suisse for 3V. Libertas was unable to pay its obligation to Credit Suisse and on April 20, 2007, 3V wired Libertas Partners $3,102,531.47. Doc. # 243-2/3, ex. B at 38-39. Focht testified to having transferred the money from 3V Master Fund to Libertas and then wired the $3,102,531 to Credit Suisse to complete the purchase. *Id.* Defendants have not returned the funds to 3V Master Fund and there is no evidence that 3V Master Fund received consideration for those funds. In fact, defendants acknowledged at the May 4, 2011 hearing that the $3,102,531.47 associated with the Transport transfer added to the Stelco transfer funds comprises the $8,938,574.64 that defendants have conceded they possess without a legitimate claim to do so. *See* May 4, 2011

---

4 Pierce's assets are managed by 3V Management. Stagg Aff'd at ¶7. Pierce has assigned its right to reclaim the funds at issue to 3V. Doc. # 243-6, ex. 26.

Hr'g Trans. at p. 12.

In August 2009, Focht pled guilty in New York state court to charges of grand larceny for the misappropriation of funds from 3V Master Fund.

All told, it is alleged that each of the defendants played some role in the transfer and retention of $13,159,703.48 belonging to 3V Master Fund, and there is no dispute that $8,938,574.64 of those funds are wrongly in defendants' collective possession. The parties do dispute whether the remaining funds were impermissible transfers rather than proper reimbursements for expenses incurred on behalf of 3V Master Fund.

B.   Pleadings

1.   *Second Amended Complaint*

In its efforts to recover the allegedly stolen funds, SV Master Fund has filed a twelve-count second amended complaint (doc. # 166). Count 1 alleges that, in committing the unauthorized transfers, all of the defendants have breached a contract with 3V Master Fund. Count 2 alleges a claim of unjust enrichment against all defendants. Count 3 alleges a claim for money had and received against all defendants. Count 4 alleges a claim of breach of fiduciary duty against Katcher. Count 5 alleges a claim of conversion in that each of the defendants wrongly retained the funds associated with the transfers. Count 6 raises a claim against each of the defendants for unlawful statutory theft in violation of Conn. Gen. Stat. § 52-564. Count 7 alleges a second claim of statutory theft against Katcher for his acceptance of the Payroll Transfer funds. Count 8 alleges breach of fiduciary duty against Libertas Partners and Libertas Holdings in that they intentionally and willfully failed to act with diligence in executing 3V Master Fund's trade orders. Count 9 alleges that Libertas Holdings, Libertas Partners, and Katcher aided and abetted breach of fiduciary duty. Count 10 alleges conspiracy to commit the thefts, cover up the thefts and retain

9

the stolen funds. Count 11 alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") in that 3V Master Fund suffered an ascertainable harm as a result of defendants' unfair and deceptive acts or practices. Count 12 seeks an accounting of defendants' holdings in order to identify the wrongfully obtained funds and determine if other wrongful acts occurred.

In the second amended complaint, SV Master Fund seeks recovery of the stolen funds, an accounting, punitive damages, treble damages, interest, attorneys' fees, and costs.

2. *Third-Party Complaint*

With respect to the transfers at issue in SV's second amended complaint, defendants have filed a third-party-complaint (doc. # 98) against Focht, Stagg and 3V Management. Defendants-third-party-plaintiffs allege that: (1) the Stelco purchase was executed by the third-party defendants who transferred the funds to Libertas without the knowledge of Katcher and Libertas Partners; (2) the funds at issue in the Payroll transfer were transferred by third-party defendants without Libertas's knowledge; and (3) the Transport transfer took place without any involvement of Libertas Partners.

Count 1 of the third-party complaint alleges fraud in that the third-party defendants failed to disclose the fact of the transfers. Count 2 alleges a claim for breach of fiduciary duty in that the third-party defendants engaged in misconduct related to the transfers. Count 3 alleges negligence because third-party defendants Stagg and 3V Management failed to supervise Focht. Count 4 pleads a CUTPA claim against Focht. Count 5 seeks common law indemnification arising out of Stagg, Focht and 3V Management's negligence regarding the transfers, and Count 6 seeks contractual indemnification from 3V Management.

Defendants-third-party plaintiffs seek compensatory and punitive damages, interest, attorneys' fees, and an order regarding indemnification.

Defendants have moved for summary judgment (doc. # 236) on the second amended complaint.   Plaintiff has cross-moved for summary judgment (doc. # 243) on all counts of the second amended complaint.   In the same pleading (doc. # 243), third-party-defendants, Stagg and 3V Management move for partial-summary judgment on the third-party complaint.

## IV.   Discussion

### A.   Cross-Motions for Summary Judgment on Plaintiff's Second Amended Complaint

#### 1.   *Defendants' Motion for Summary Judgment on Plaintiff's Second Amended Complaint*

Defendants' motion for summary judgment on the second amended complaint makes three arguments.   First, defendants contend that SV Master Fund lacks standing to bring claims on behalf of and in place of 3V Master Fund.   Second, defendants argue that there exists no genuine dispute of fact that 3V Master Fund received the Delta securities.   Lastly, defendants argue that the record confirms that there is no basis for Katcher's personal liability.   Plaintiff is not seeking recovery for the transfers associated with the Delta Airlines security purchase; accordingly, the motion for summary judgment is denied as moot with respect to that issue.   Doc. # 257 at p. 6 n.6. I address, in turn, defendants' remaining arguments.

#### a.   **SV Master Fund's Standing**

On March 5, 2010, SV Special Situations Master Fund, Ltd. filed a second amended complaint in this action and substituted itself in place of former plaintiff, 3V Master Fund. Defendants argue that SV Master Fund is not the real party in interest in this case and therefore lacks standing to assert claims based on the alleged transfers from 3V Master Fund to/or on behalf of defendants.   Specifically, defendants argue that SV Master Fund is not a successor-in-interest of 3V Master Fund and more pointedly, any claim that 3V Master Fund had to the monies held by

11

defendants abated during the asset transfer process.   Plaintiff counters that it acquired 3V Master Fund's assets, including its rights to pursue these claims, through a back-to-back redemption of stock.   SV Master Fund contends that 3V Master Fund's assets, including the right to recover the monies wrongfully in defendants' possession, were transferred to redeeming investors who then reinvested those assets into an SV feeder fund; those assets and interests associated with the reinvestment were then transferred to SV Master Fund.   Throughout this process of redemption and reinvestment, 3V Master Fund's right to pursue these claims purportedly transferred to SV Master Fund and, therefore, SV Master Fund is the "real party in interest" in this case.   SV Master Fund also requested, in the alternative, that I permit the amendment of the complaint to add 3V Master Fund as an additional plaintiff.[5]

Article III of the Constitution imposes on the court an obligation to "require that plaintiff[] establish [its] 'standing' as 'the proper part[y] to bring' suit."   *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP,* 549 F.3d 100, 106 (2d Cir. 2008) (quoting *Raines v. Byrd,* 521 U.S. 811, 818 (1997)).   Once the plaintiff's Article III standing has been questioned, "the District Court has leeway as to the procedure it wishes to follow."   *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88 (2d Cir. 2006) ("*Alliance*") (citing *Gibbs v. Buck,* 307 U.S. 66, 71-72 (1939) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.")).

There is no dispute that 3V Master Fund is the entity from which the $8.9 million was taken and therefore it is the entity that suffered at least some of the injuries alleged in the second amended complaint.   The inquiry at this stage is whether SV Master Fund has succeeded 3V Master Fund for the purposes of pursuing the claims in the second amended complaint.

5  As noted in footnote 1, I granted the motion to add 3V Master Fund as an additional plaintiff.

Defendants maintain that the answer is "no." In support of their contention that SV Master Fund lacks standing as a successor-in-interest to pursue claims of 3V Master Fund, defendants proffer the following evidence. The entities have separate legal identities; specifically, both Master Funds are independently incorporated in the British Virgin Islands with different Memoranda of Association and Articles of Incorporation. Doc. # 242, exs. 45-48. The SV feeder funds were marketed to investors as new and distinct funds with a different investment strategy from the 3V feeder funds and the investors in the SV feeder funds were required to complete different subscription agreements than those required of 3V feeder funds' investors. Defendants place significant weight on the fact that not all of the 3V feeder funds' investors chose to re-invest in the SV feeder funds. Thus, they contend that the SV Master Fund could not have acquired *all* of 3V Master Fund's assets through the back-to-back redemption because not *all* of the 3V feeder funds' investors reinvested with SV. In short, defendants argue that the method by which 3V Master Fund's assets were transferred to SV Master Fund was insufficient to transfer the right to assert the claims in the second amended complaint.

In support of standing, SV Master Fund counters that it has suffered a direct injury because in the asset transfer it received the fraudulently inflated positions of the bonds associated with the Stelco and Transport transfers and that SV Master Fund was required to write down those positions. SV Master Fund also introduces an email from its bank, HSBC Alternative Fund Services, to Mark Focht that states "September 2007 valuation was the last valuation for 3V. All assets and liabilities were transferred into the SV master fund. Gary Katcher redemption payable is sitting in the SV master fund not 3V. The money has to be paid out from the SV Master fund to the investor." Doc. # 242, ex. 26 at p. 3. In addition, Stagg submits that investors received interests in the SV feeder funds in exchange for the respective value of their investments in the 3V

feeder funds.

"Substitution of a successor in interest or its joinder as an additional party under [Fed. R. Civ. P.] 25(c) is generally within the sound discretion of the trial court." *Organic Cow, LLC v. Center for New England Dairy Compact Research,* 335 F.3d 66, 71 (2d Cir. 2003) (quoting *Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322, 1324 (10th Cir. 1978)); *see also Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.,* 13 F.3d 69, 71-72 (3d Cir. 1993) ("*Luxliner*") (citing cases); 3B Moore's Federal Practice § 25.08, at 25-59 (2d ed. 1996).   Specifically, Rule 25(c) provides:

> Transfer of Interest.   In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

"A 'transfer of interest' in a corporate context occurs when one corporation becomes the successor to another by merger or other acquisition of the interest the original corporate party had in the lawsuit." *Luxliner,* 13 F.3d at 71.   The determination "whether an entity is a transferee of interest" so as to warrant exercise of Rule 25(c) involves "appl[ication of] law to facts," *Luxliner,* 13 F.3d at 72, and whether an entity succeeds another is a matter of state law.   *See generally LiButti v. United States*, 178 F.3d 114, 124 (2d Cir. 1999).   The central question at this juncture is whether SV Master Fund acquired the assets, i.e., the right to recover the funds at issue, from 3V Master Fund in accordance with the law of the controlling jurisdiction.

Despite a year of extended discovery, the parties have failed to provide a sufficient factual and legal basis from which I can resolve that question.   Specifically, neither the defendants nor the plaintiff have come close to adequately identifying which jurisdiction's law controls the transfer of assets at issue, and applying that law to the facts of the transfer.   For example, it may be that the laws of the British Virgin Islands control the transfer because both entities are incorporated there.   Accordingly, the relevant inquiry would then turn on whether the method 3V Master Fund

14

and SV Master Fund utilized in transferring the assets is sufficient to confer successor-in-interest standing on SV Master Fund under the laws of the British Virgin Islands. On the other hand, it may be that the laws of Connecticut control the transfer because the physical transfer might have occurred here. In that case, the inquiry would then turn on whether the method of transferring assets was sufficient to confer successor-in-interest standing on SV Master Fund in accordance with Connecticut law.

To the extent that 3V Master Fund has ratified SV Master Fund's pursuit of this action, *see* doc. # 255-2, I note that ratification is a creature of Rule 17 of the Federal Rules of Civil Procedure, which requires that the real party in interest prosecute the claim. *Gusto Records, Inc. v. Artists Rights Enforcement Corp.,* 1992 WL 26746 (S.D.N.Y. 1992). Although, it could be argued that Rule 17 governs this case in light of the evidence that the alleged transfer of assets occurred prior to the start of litigation, even if that were the case, ratification, under these circumstances, is not enough. SV Master Fund must still demonstrate, under the appropriate state law, whether: (1) 3V Master Fund had the right to prosecute the claims in the first place; and (2) whether SV Master Fund, at the start of the litigation, possessed the rights of action that it asserts in this case under the controlling state law. *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber,* 407 F.3d 34, 49 (2d Cir. 2005).

In light of the deficiencies identified above, the parties are hereby ordered to submit, within 21 days of this order, supplemental briefs addressing: (1) the appropriate law to be applied in determining the standing issue, and (2) identifying, if necessary, additional facts to assist me in resolving that issue.

### b.    3V Master Fund's Standing

During the May 4, 2011 hearing, defendants challenged 3V Master Fund's standing on the grounds that 3V's claim to the funds at issue abated during the transfer of assets to the various feeder funds and that 3V has waived its claims against Katcher.   *See* doc. # 242, ex. 27 at ¶4.   In light of the addition of 3V Master Fund as a plaintiff in this action, defendants' arguments about 3V Master Fund's standing must now be addressed because I am still obligated to ensure that 3V Master Fund has Article III standing to pursue the claims arising out of the challenged transfers. Accordingly, the parties shall also address in the supplemental briefing on standing: (1) the appropriate law governing the transfer of assets, including the claims in this case, between the various 3V and SV entities, and (2) identifying, if necessary, additional facts to assist me in resolving the question of whether 3V Master Fund's right to pursue the claims in this action abated during the asset transfer process.

Defendants' motion for summary judgment with respect to standing is taken under advisement.   Should the parties fail to provide me with the appropriate legal and factual basis from which I can readily determine the entity that possess the rightful claim to the millions in defendants' possession, I may appoint, at the parties' expense, an expert pursuant to Rule 706 of the Federal Rules of Evidence to assist me in determining if a rightful claimant to the funds exists.

### c.    Katcher's Liability

Katcher moves for summary judgment on the basis that SV Master Fund cannot pierce the corporate veil and hold Katcher liable for any of the transfers.   Katcher testified that he did not know about the transfers and that he did not participate in them.   Katcher Aff'd at ¶¶ 22, 28 & 30. Nonetheless, there exists a genuine issue of material fact whether Katcher may have personally benefitted from the transfers, thus precluding his dismissal from this case.   *See* doc. #243-5, ex.

15 (evidence concerning the Payroll transfer indicates that Katcher personally received $100,912.85 of the funds alleged to have been improperly transferred to cover Libertas's payroll shortfall).

Furthermore, if Katcher personally received or benefitted from any of the transfers at issue, plaintiff need not pierce the Libertas corporate veil to recover from Katcher. Indeed, to prevail on the claim for unjust enrichment, SV Master Fund need only demonstrate that "(1) the defendant was benefitted, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment." *Lawrence v. Richman Group Capital Corp.,* 358 F. Supp. 2d 29, 42-43 (D. Conn. 2005). To meet the elements of a claim for money had and received, the plaintiff must demonstrate that the defendants received money belonging to the plaintiff, and benefitted from receipt of that money. *See Koch v. Stop & Shop Co., Inc.,* 2003 WL 553280 (Conn. Super. 2003). With respect to plaintiff's conversion claim, SV Master Fund need only show that Katcher has participated in some unauthorized act that has deprived it of its property. *See Modis, Inc. v. Bardelli*, 531 F. Supp. 2d 314, 322 (D. Conn. 2008) ("The Connecticut Supreme Court had identified conversion as some unauthorized act which deprives another of his property permanently or for an indefinite time. . . .") (quoting *Falker v. Samperi*, 190 Conn. 412 (1983)). The facts in the record would support a jury finding that Katcher, at the very least, personally benefitted by $100,912.85, thus giving rise to personal liability under theories of unjust enrichment, money had and received, and conversion. Accordingly, Katcher is not entitled to summary judgment with respect to his personal liability.

     2.     *Plaintiff's Motion for Summary Judgment on the Second Amended Complaint*

The open question concerning SV Master Fund's standing precludes summary judgment

on the second amended complaint in its favor at this time; the motion is taken under advisement.

That said, assuming that either SV Master Fund or 3V Master Fund has standing to recover the

monies associated with the Stelco and Transport transfers, the record at summary judgment is

*nearly* sufficient to award summary judgment on the second amended complaint on the claims of

unjust enrichment, money had and received, conversion, and statutory theft.[6]  Summary judgment

on those claims must await evidence showing which defendant or defendants hold the funds at

issue, and for the purposes of the unjust enrichment claim, which defendant or defendants have

unjustly benefitted from those funds and, to what degree they have benefitted.[7]

 I cannot resolve the question of each defendant's liability on the record before me nor do I

expect that a lay jury could resolve the question of liability on the record compiled by the parties.

The insufficient record, protracted history of this case in conjunction with the exceedingly

adversarial relationship of the parties, informs my decision that the assistance of an impartial

expert witness is necessary to "enlighten the jury and [myself] on issues which have become

confused because of partisanship in presentation."  *See Scott v. Spanjer Bros., Inc.,* 298 F.2d 928,

930-31 (2d Cir. 1962) (holding that the district court has the inherent authority to appoint an expert

to aid in the just disposition of a case).  Accordingly, pursuant to Rule 706 of the Federal Rules of

Evidence, an expert witness shall be appointed to conduct a forensic accounting of defendants'

books and records to assist the trier of fact in determining which of the defendants has received,

and/or benefitted from the receipt of the $8,938,574.64 and to what extent.  *Id.* at 931.  The

---

6 With respect to plaintiff's claims for statutory theft, it must demonstrate that the funds at issue belonged to it, defendants intentionally deprived plaintiff of those funds, and that the defendants' conduct was unauthorized.  *See Aztec Energy Partners, Inc. v. Sensor Switch, Inc.,* 531 F. Supp. 2d 226, 231 (D. Conn. 2007).  The wrongful withholding of another's property constitutes statutory theft under Connecticut law.  *Id.*

7  In Connecticut, the measure of damages in an unjust enrichment case is not the loss to the plaintiff, here $8.9 million, but the benefit to the defendant.  *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.,* 231 Conn. 276, 285 (1994).

specifics of the expert witness's duties shall be set forth in a separate order.   Furthermore, defendants are jointly and severally ordered to place $8,938,574.64 in an interest-bearing escrow account for the benefit of SV Master Fund to be held until the questions concerning standing, culpability and damages associated with the Transport and Stelco transfers have been resolved on the merits.

I further note that record before me contains insufficient facts to support plaintiff's claims of breach of contract, breach of fiduciary duty, and violation of the Connecticut Unfair Trade Practices Act.   For example, plaintiff has pled a breach of contract claim against each defendant, but has introduced evidence of only one contract between 3V Master Fund and Libertas Holdings. Under Connecticut law, the elements of a breach of contract action are: (a) the formation of an agreement, (b) performance by one party, (c) breach of the agreement by one party, and (d) damages.   *Steward Mach. Co., v. White Oak Corp.*, 462 F. Supp. 2d 251, 265 (D. Conn. 2006). The lack of evidence in the record of a contract between 3V Master Fund and any other defendant arguably warrants the partial dismissal of the claim.   Mindful of the Second Circuit's caution that a district court should not *sua sponte* grant summary judgment against the moving party without notice or opportunity to be heard, I shall refrain from dismissing the apparently deficient claims at this time.   *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 139 (2d Cir, 2000).   Plaintiff is, however, on notice that a failure "to bring forward evidence" with respect to each of the defendants' purported contract formation, contract and fiduciary breaches, and violations of CUTPA will result in the dismissal of those claims before trial.   *Nationwide Mut. Ins. Co. v. Mortensen,* 606 F.3d 22, 28 (2d Cir. 2010) (affirming the district court's *sua sponte* grant of summary judgment against the plaintiff where it was apparent that plaintiff would not be able to present to the jury evidence sufficient to prove its case).

B.     Plaintiff's Motion for Summary Judgment on the Third-Party Complaint

The theory of the third-party complaint (doc. # 98) is that 3V Management and Focht initiated the transfers from 3V Master Fund to defendants-third-party-plaintiffs; the defendants-third-party-plaintiffs were unaware that they received millions of dollars from 3V Master Fund; and the transactions associated with the transfers were carried out by Focht. Accordingly Focht, Stagg and 3V Management should indemnify defendants-third-party-plaintiffs from any liability arising out of claims pled in the second amended complaint.   Stagg and 3V Management move for summary judgment on the defendant-third-party-plaintiffs' claims for negligence, common law indemnification, and contractual indemnification.

1.     *Negligence (count 3) and Common Law Indemnification (count 5)*

To succeed on their common law indemnification claim, the defendants-third-party-plaintiffs need to allege that any one or all of the third-party defendants, Focht, Stagg or 3V Management, was the active or primary tortfeasor, and that defendants-third-party-plaintiffs were mere passive or secondary tortfeasors.   *Ferryman v. City of Groton*, 212 Conn. 138, 142 (1989) Specifically, the defendants-third-party-plaintiffs must establish four elements: (1) a third-party-defendant was negligent; (2) that the negligence was the direct and immediate cause of the injury, here the misappropriation of funds from 3V Master Fund to defendants-third-party-plaintiffs; (3) that the third-party defendant rather than the defendants-third-party-plaintiffs had control over the events that led to plaintiff's injury; and (4) that the defendants-third-party-plaintiffs did not know of wrongful conduct, i.e., the wrongful transfer of monies from 3V Master Fund to the Libertas entities, had no reason to anticipate the wrongful conduct, and reasonably relied on the third-party defendant not to engage in the wrongful conduct.   *Id.*; *see also*

*Lawyers Title Ins. Corp. v. Singer,* -- F. Supp. 2d --, 2011 WL 1870277 (D. Conn. 2011) (discussing elements of a common law indemnification claim).[8]

To establish the first element of their common law indemnification claim, the defendants-third-party-plaintiffs must satisfy all the elements of a claim for negligence and also plead facts sufficient to allege that defendants-third-party-plaintiffs were the passive rather than active tortfeasors. *See generally Lawyers Title Ins. Corp.,* 2011 WL 1870277 at *2 (noting that third-party plaintiff must prove by a preponderance of the evidence third-party defendant was the active or primary tortfeasor in order to succeed on common law indemnification claim). Here, the claims brought by the plaintiff that defendants-third-party-plaintiffs could be liable for arise out of the improper transfer and wrongful possession of the monies identified above. Thus, in order to proceed on a claim for common law indemnification from liability arising out of the second amended complaint, defendants-third-party-plaintiffs must plead that they were merely passive rather than active tortfeasors in connection with the transfer and wrongful possession of the monies at issue.

Count three of the third-party complaint alleges negligence relating to the transfers and the supervision of Focht, however, the facts as pled in the third-party complaint fail to identify how third-party defendants' negligence amounts to anything more than a contributing factor to the transfer. In other words, the third-party complaint does not allege that the acts of 3V Management, Stagg and Focht were the primary cause rather than merely a contributing factor of the harm suffered by plaintiff. Accordingly, defendants-third-party-plaintiffs' claims of negligence and common-law indemnification are dismissed without prejudice as insufficiently

_____

8 In *Lawyers Title Ins. Co.*, the plaintiff sought indemnification for a claim of common law fraud. Here, defendants-third-party-plaintiffs have pled only a common law indemnification claim in connection with the claim for negligence.

pled.   Leave to amend is granted to the extent that amendment could cure the defect.

### 2. *Contractual Indemnification (count 6)*

Additionally, to the extent that Katcher seeks indemnification for whatever role he played in the transfer in his capacity as a Manager for the 3V entities, his claim fails.   Under the terms of the Operating Agreement a manager can only seek indemnification for expenses incurred in connection with the business of the company and when acting in good faith and in the best interest of the company.   Doc. # 120-3 at ¶¶ 5.6 and 16.1.   If Katcher is found liable for the claims in the amended complaint, then he will have been found to have either (a) wrongly retained funds in his capacity as a principal of Libertas, in which case the 3V Management operating agreement does not apply, or (b) breached his fiduciary duty as a manger of 3V Management and looted the company, which would nullify indemnification under ¶16.1.   Stagg and 3V Management's motion for summary judgment on count 6 of the third-party complaint is granted.

### C.   Katcher's Motion for Summary Judgment on the Counterclaim

### 1.   Counterclaim

Katcher has filed a five-count counterclaim (doc. # 174) against SV Master Fund concerning Katcher's unsuccessful attempts to redeem his partnership interest ("capital account") in 3V Capital Partners.   Katcher alleges that: SV Master Fund has impermissibly received and converted Katcher's capital account for its own use; the transfer of Katcher's capital account to SV Master Fund violates Conn. Gen. Stat. § 52-564; the transfer was fraudulent; SV Master Fund has been unjustly enriched by the transfer; and is in receipt of money belonging to Katcher. Katcher moves for summary judgment against SV Master Fund on the counterclaim (doc. # 239).

In addition to facts set forth in section III.A, the following additional facts are undisputed and relevant to Katcher's counterclaims.   At the close of September 2007, Katcher's 3V Partners

capital account was valued at $4,124,543. Doc. # 242, ex. 12 at pp. 277, 281 and 283, and ex. 17.

In October 2008, 3V Partners provided Katcher with a Schedule K-1 that falsely represented that

Katcher had received the funds in his capital account. *Id.* at ex. 17 and ex. 14 at ¶¶ 16-17. Each

of the other investors in 3V Partners, except Katcher, were allowed to redeem their investment and

invest in the SV feeder funds. *Id.* at ex. 14. Notwithstanding the fact that Katcher did not

redeem his capital account investment and reinvest in the SV feeder funds, Katcher's capital

account was transferred to SV Master Fund. *Id.* at ex. 26 at p. 3. In August 2008, Katcher

initiated an action in Connecticut Superior Court against Stagg and a number of other entities

associated with Stagg, 3V Master Fund and SV Master Fund ("PJR Defendants") for recovery of

his capital account investment. On February 1, 2011, the Connecticut Superior Court found

probable cause that Katcher would prevail on his claims against defendants in that action.

*Katcher v. 3V Capital Partners LP, et al.,* 2011 WL 1105724 (Super. Ct. Feb. 1, 2011). The

Superior Court granted Katcher's motion for prejudgment remedy and ordered the defendants to

bring assets worth $4.1 million into Connecticut. *Id.* The PJR defendants have not complied

with that order. May 4, 2011 Hr'g Trans. at pp. 54 – 56.

SV Master Fund counters that, because Katcher benefitted (directly or indirectly) from the

unauthorized transfers from 3V Master Fund to Libertas, Katcher is not entitled to summary

judgment on his counterclaim because genuine issues of material fact exist concerning whether

Katcher has unclean hands.

"The party seeking to invoke the clean hands doctrine to bar equitable relief must show

that his opponent engaged in willful misconduct with regard to the matter in litigation."

*Ridgefield v. Eppoliti Realty Co., Inc.,* 71 Conn. App. 321, 335, *cert. denied*, 261 Conn. 933

(2002). SV Master Fund proffers the following evidence of Katcher's involvement in the

challenged transfers.   First, Focht testified that he notified Katcher of the payroll shortfall and that Katcher's attitude was that Focht should just fix it.   Doc. # 243-2/3, ex. B at 13.   Focht, it is alleged, remedied the shortfall by transferring funds from 3V Master Fund to Libertas's payroll account.   Katcher, SV Master Fund contends, is described as having an understanding of Libertas's balance sheet and staying on top of the checking account balances.   Doc. # 243 -2/3, ex. B at 319; *see also* Henderson Aff'd at pp 11- 13.   Katcher also signed many of the wire transfer orders transferring the funds (alleged to have been taken from 3V Master Fund) from the Libertas Partners account to the Libertas Holdings account.   Doc. #243-2/3, ex. H.   As previously discussed, there is evidence in the record that Katcher personally received $100,912.85 in monies associated with the Payroll transfer.   Stagg Aff'd, ex. 15.   There is also some suggestion, supported by SV Master Fund's auditor's report, that Libertas's value was artificially increased in light of the $13.1 million influx from 3V Master Fund.   *See* doc. # 242-3, ex. H.   Accordingly, there is evidence in the record from which a jury could infer that Katcher was aware of the transfers and personally benefited from the sale of Libertas as a result of the transfers from 3V Master Fund.   Should those facts be established at trial, Katcher's ability to recover his capital account from SV Master Fund may be affected by his unclean hands.   Accordingly, whether Katcher is entitled to recover all of his capital account cannot be settled on a motion for summary judgment.

Still, as is the case with the Stelco and Transport transfers, there exists no genuine dispute of material fact that SV Master Fund is in possession of Katcher's capital account without authorization.   I recognize that SV Master Fund claims the right to retain the funds to offset Katcher's liability on the claims in the second amended complaint, but until Katcher's liability has been resolved, SV Master Fund possesses no greater claim to Katcher's capital account than

defendants do to SV Master Fund's $8,938,574.64. SV Master Fund is hereby ordered, within 14 days of this order, to place $4,124,542 into an interest-bearing escrow account for the benefit of Katcher, to be held until such time as a trier of fact determines the merits of the second amended complaint and the counterclaim.

## V.      Conclusion

For the reasons set forth above, defendants' motion for summary judgment on the second amended complaint is denied as moot with respect to the Delta transaction; denied with respect to Gary Katcher's liability; and taken under advisement with respect to the question of SV Master Fund's standing.

Plaintiff's motion for summary judgment on the second amended complaint is taken under advisement. Third-party-defendants' motion for summary judgment on count 6 of the third-party complaint is granted; counts 3 and 5 of the third-party complaint are dismissed without prejudice as insufficiently pled.

Gary Katcher's motion for summary judgment on his counterclaim is denied.

It is further ordered that:

1.      The parties shall submit, no later than 21 days after entry of this ruling and order, supplemental briefs addressing the issues identified in section IV. A of this ruling and order.

2.      Defendants are hereby ordered to place $**8,938,574.64** into an escrow account for the benefit of plaintiff. The Defendants are jointly and severally liable for compliance with this order.

3.      An expert witness will be appointed to conduct a forensic accounting of plaintiffs and defendants' books and accounts to assist the trier of fact in determining which defendants received and/or benefitted from the $8,938,574.64. The duties of the expert witness shall be set forth in a separate order.

4.      SV Master Fund is hereby ordered to place **$4,124,542** into an escrow account for the benefit of Katcher.

It is so ordered.

Dated at Bridgeport, Connecticut, this 8th day of July 2011.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge