UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SV SPECIAL SITUATIONS MASTER FUND LTD. and 3V CAPITAL MASTER FUND, LTD., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No. 3:08cv1769 (SRU) |
| - against - | : | |
| | : | |
| KNIGHT LIBERTAS LLC, KNIGHT LIBERTAS HOLDINGS LLC, LIBERTAS HOLDINGS LLC, LIBERTAS PARTNERS LLC, and GARY KATCHER, | : | |
| | : | |
| | : | July 29, 2011 |
| Defendants/Third-Party Plaintiffs, | : | |
| | : | |
| - against - | : | |
| | : | |
| MARK A. FOCHT, SCOTT A. STAGG, and 3V CAPITAL MANAGEMENT LLC, | : | |
| | : | |
| Third-Party Defendants. | : | |
| | : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO RECONSIDER A PORTION OF THE JULY 8, 2011 ORDER**

Defendants oppose Plaintiffs' request that they be excused from complying with the

Court's July 8, 2011 order (the "Order") directing Plaintiffs to establish a $4.1 million escrow

account for the benefit of Defendant Gary Katcher ("Katcher").[1] The Court correctly denied

Plaintiffs' request twice already, and Plaintiffs' latest plea provides no reason for the Court to

---

[1] "Defendants" collectively refers to defendants Knight Libertas LLC, Knight Libertas Holdings LLC, Libertas Holdings LLC, Libertas Partners LLC, and Gary Katcher.

1984260v1

reverse itself now.  Plaintiffs' meritless motion stems from their baseless refusal to accept that, as the Court previously held, there is no basis to "offset" the $8.9 million that the Court ordered Defendants to set aside against the $4.1 million that Plaintiffs must set aside for Katcher's personal claim.  Despite Plaintiffs' claims, neither the parties nor their legal obligations align to permit the proposed offset.  Tellingly, non-party New Libertas Holdings Corp. ("New Libertas")—which, like Katcher, agreed to indemnify Defendants for any losses from this litigation but, unlike Katcher, is not entitled to recover on Katcher's personal claim—is complying with the Order by depositing more than $13 million in an escrow for Plaintiffs' benefit.

Plaintiffs' pleas of manifest injustice and poverty also ring hollow.  While they assert impossibility, Plaintiffs merely claim they lack $4.1 million in *cash*, which obviously is irrelevant to their ability to liquidate other assets to fund the required escrow.  Indeed, Plaintiffs' professed inability to establish the escrow is undercut by numerous representations and evidence concerning SV Master Fund's substantial assets.  In this and related litigation, Plaintiffs repeatedly have asserted they have assets worth tens of millions of dollars.  Not only do these representations undercut Plaintiffs' claims of poverty, they also underscore Plaintiffs' ability to access assets if they perceive it is in their interest to do so.

In sum, there remains no basis for any claimed offset, nor any other reason for the Court to reconsider its Order requiring Plaintiffs to establish the required escrow.

-2-

1984260v1

## RELEVANT BACKGROUND

During a June 23, 2011 conference, the Court ordered Plaintiff SV Master Fund to place in escrow $4.1 million for Katcher's benefit in connection with his counterclaim seeking return of his investment. (Jeffrey F. Robertson Declaration ("Robertson Decl."), Exhibit 1 at p. 11.) Plaintiffs' counsel objected, arguing that the $4.1 million should offset the $8.9 million the Court ordered Defendants to escrow. (*Id.* at 11-13.) The Court overruled Plaintiffs' objections, recognizing that the parties required to escrow $8.9 million for Plaintiffs are not the same parties who are pursuing Katcher's $4.1 million claim. (*Id.* at 13). The Court stated:

> Well, here's one problem with the offset theory. The party, the parties that owe the $8.9 million are not necessarily the same as the party owed the $4.1 million. In other words, you're assuming that the defendants are jointly and severally liable for the $8.9 [million]. It's not apparent to me that that's the case. The $4.1 [million] is owed directly to Katcher. So there may not be an offset that applies here.

(*Id.*)

The Court's July 8, 2011 Order found that SV Master Fund "erroneously received and continues to hold $4,124,542 belonging to Katcher." (Dkt. 282 at 2). The Order again rejected SV Master Funds' argument for an offset based on Katcher's potential liability for SV Master Funds' claims, and ordered SV Master Fund to place $4,124,153 in an interest-bearing escrow account for Katcher's benefit within 14 days, *i.e.*, by July 22, 2011. (*Id.* at 24-25.) Two days before that deadline, Plaintiffs filed this motion for reconsideration. Plaintiffs evidently, but without excuse, have not complied with either the Court's June 23 directive or the July 8 Order.

1984260v1

## ARGUMENT

### POINT I

### PLAINTIFFS FAIL TO SATISFY THE LEGAL REQUIREMENTS NECESSARY FOR RECONSIDERATION

The standard for granting motions for reconsideration is strict; such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). Motions for reconsideration will not be granted where the party merely seeks to relitigate an issue that has already been decided. (*Id.*) The three major grounds for granting a motion for reconsideration in the Second Circuit are: (*i*) an intervening change of controlling law, (*ii*) the availability of new evidence, or (*iii*) the need to correct a clear error or prevent manifest injustice. *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 167 (2d Cir. 2003). A party moving for reconsideration must set forth "the matters or controlling decisions which [it] believes the Court overlooked." D. Conn. Local Civ. R. 7(c)(1). The party must demonstrate that "the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Eisemann v. Greene,* 204 F.3d 393, 395 n.2 (2d Cir. 2000) (citation omitted). As described below, Plaintiffs cannot satisfy any ground for reconsideration and their motion should be denied.

## POINT II

### THERE IS NO BASIS FOR THE COURT
### TO RECONSIDER ITS ESCROW ORDER

A.  **Katcher's Right To Personally Recover On His Counterclaims Cannot Be Offset Against Defendants' Potential Liability**

Plaintiffs erroneously claim that they should be relieved of placing into escrow for Katcher's benefit $4.1 million (that the Court has found they have improperly) due to the potential that any future litigation recovery against Defendants collectively should offset Katcher's personal right to his limited partnership interest. The Court already rejected this argument because (*i*) Katcher alone is entitled to recover on his personal claim for his $4.1 million partnership interest and (*ii*) it remains to be seen what, if any, personal liability Katcher may have for Plaintiffs' $8.9 million claim against Defendants collectively. (*See* Robertson Decl., Exhibit 1 Tr. at 13; Order at 23.) Undaunted, Plaintiffs again argue that they should be permitted to retain Katcher's $4.1 million, citing Katcher's potential obligation to indemnify certain Defendants in connection with this case. (Dkt. 286-2 at 3.) But Plaintiffs' latest argument fails for the same reasons as their prior contentions: there is no offset because the parties who ultimately may be responsible for the $8.9 million that Plaintiffs seek are not the same parties who are entitled to recover Katcher's $4.1 million claim.

In 2008, non-party Knight Capital Group, Inc. ("Knight") acquired defendant Libertas Holdings LLC (together with defendants Knight Libertas LLC, Libertas Holdings LLC and Libertas Partners LLC, the "Libertas Defendants"). (*See* Gary Katcher July 29, 2011

1984260v1

Declaration ("Katcher Decl."), ¶ 2.)  In connection with that transaction, Katcher and non-party

New Libertas Holdings LLC ("New Libertas") agreed to jointly and severally indemnify Knight

for certain potential items.  (*Id.* at ¶ 3.)  Among those items are claims against the Libertas

Defendants in this lawsuit.  (*Id.*)  Indeed, pursuant to its indemnification obligation, New Libertas

(not Katcher) recently sold millions of shares of Knight common stock so the proceeds of those

sales, more than $13 million, can be deposited into an interest-bearing escrow account, as the

Court's order required.  (*Id.* at ¶ 4.)  Like the Libertas Defendants, however, non-party New

Libertas and its approximately twelve owners are entitled to no part of Katcher's personal claim

against Plaintiffs seeking at least $4.1 million.  (*Id.* at ¶ 6.)  Simply put, Katcher's personal claim

cannot offset the Defendants' potential liability (and certainly not before Katcher's potential

liability has been established), including potential liability that may be borne by non-parties such

as New Libertas.[2]

Nor is there any other basis for SV Master Fund to avoid setting aside Katcher's

money simply because Knight may invoke its indemnification rights under the Libertas acquisition

agreement vis a vis non-party New Libertas and/or Katcher.  SV Master Fund has no right to

interfere with contractual agreements between Knight, New Libertas and Katcher.  How those

parties choose to resolve their contractual obligations is not SV Master Fund's concern.  Certainly

SV Master Fund cannot unilaterally—based solely on its apparent desire not to comply with the

---

[2] Even the documents that Plaintiffs submitted to substantiate Katcher's liability undercut their offset argument.
Those documents make clear that Katcher and non-party New Libertas share any potential indemnification obligation.
(*See* Dkt. 288-1, ¶ 8 (acknowledging "that the indemnification obligations of you *and New Libertas*" and referencing
"*your and New Libertas's* obligations of indemnification") (emphasis added).)

1984260v1

Order—require that Katcher pledge the $4.1 million that the Court has ordered SV Master Fund to set aside towards any potential indemnification obligation.

**B.      Plaintiffs Fail To Present Credible Evidence They Lack Assets Sufficient To Comply With The Court's Order**

Plaintiffs' manifest injustice argument lacks any credibility.  SV Master Fund neither contends that it lacks assets sufficient to comply with the Court's order nor provides evidence to support such a claim.  Never before has SV Master Fund suggested that it could not satisfy the Court's Order—including during the May 4, 2011 summary judgment hearing, the June 23, 2011 status conference, or in any prior pleading.[3]

Rather, SV Master Fund only claims now that it lacks $4.1 million in "cash."  Of course, if true, that is no basis for refusing to comply with the Court's order—cash is but one asset available to SV Master Fund to fund the required escrow.  As noted, non-party New Libertas liquidated significant assets (by selling stock in an unfavorable market) to satisfy the Court's Order.  Moreover, other than Stagg's bare-bones affidavit, Plaintiffs offer nothing—no bank statement, brokerage account statement, audited financial statements, or any other evidence—to support their claims.

In fact, SV Master Fund has made numerous representations and produced evidence establishing that it <u>can</u> comply with the Order.  Most recently, Plaintiffs' counsel

---

[3] A claim that SV Master Fund lacks sufficient assets to satisfy the Court's order would be shocking.  Nearly four years ago, SV Master Fund admittedly received and took control of at least $4,124,534 belonging to Katcher (as well as approximately $7 million owed to another investor) to which it was not entitled.  In 2008, in connection with Connecticut state court litigation Katcher commenced, Stagg and entities he controls were ordered to "hold, preserve, and maintain inviolate, for Katcher's benefit, the sum of $4 million," which order remains in effect today.

1984260v1

indicated they had "no doubt" about SV Master Fund's ability to finance the Court-appointed

expert retainer and ongoing fees, which likely will consume hundreds of thousands of dollars; in

fact, Plaintiffs' counsel argued for expanding the scope (and cost) of the Court-ordered review.[4]

SV Master Fund's ability to come up with money to do so, and to fund this and other litigation, is

not surprising: in related litigation, SV Master Fund produced prime brokerage account

statements reflecting assets of at least $31 million, and proffered an unaudited balance sheet that

showed it had investments worth at least $23 million that it can liquidate.[5]  Furthermore, Stagg

testified in this case that SV Master Fund has ready access to substantial funds merely by

requesting repayment of a loan it made to Mas Global Solutions, Inc., another company

controlled by Stagg.  As Stagg explained, "if SV [Master Fund] needs to pay legal fees, [SV

Master Fund] basically ask[s] for a repayment of the monies or [account] receivable."[6]

      This evidence belies SV Master Fund's claim it "cannot" fund the $4.1 million

escrow—indeed, to the contrary, it demonstrates that SV Master Fund has access to substantial

assets when it wants to use those assets.  Like Defendants, SV Master Fund should be required to

liquidate those assets to comply with the Order.  Accordingly, no impossibility or manifest

---

[4] Robertson Decl., Exh. 2 (July 21, 2011 hearing transcript) at 13.

[5] Robertson Decl., Exhibits 3 (Garwood Securities LLC March 2011 Statement of Account for SV Master Fund) and 4 (SV Special Situations Master Fund, Ltd. Balance Sheet (unaudited), as of January 31, 2011).  Defendants do not offer these documents as evidence of the true value of SV Master Fund's assets (indeed, we believe the value of SV Master Fund's assets is overstated in these documents).  Instead, these documents are provided to assist the Court's assessment of SV Master Fund's current claims of poverty.  (See Dkt. 286-2 at 2, 4.)

[6] Robertson Decl., Exhibit 4 (Scott A. Stagg January 27, 2011 deposition transcript at 74:22-75:02).

1984260v1

injustice exists justifying reconsideration; in fact, it would be manifestly unjust to permit SV aster Fund to retain "$4,124,542 belonging to Katcher." (Order at 2.)

## CONCLUSION

The lack of mutuality of the parties or their legal obligations confirms there is no basis for any claimed offset.  Nor have Plaintiffs otherwise satisfied the requirements for the Court to reconsider, much less overturn, the Order requiring that they deposit $4.1 million into an escrow account for Katcher's benefit.

1984260v1

Respectfully Submitted,

**DEFENDANTS,
KNIGHT LIBERTAS LLC, KNIGHT
LIBERTAS HOLDINGS LLC, LIBERTAS
HOLDINGS LLC, LIBERTAS PARTNERS
LLC AND GARY KATCHER**


By:   /s/ Howard Schiffman
    Howard Schiffman (*pro hac vice*)
    Jeffrey F. Robertson (*pro hac vice*)
    Schulte Roth & Zabel LLP
    1152 Fifteenth Street, NW
    Suite 850
    Washington, DC 20005
    Tel. (202) 729-7470
    E-mail: howard.schiffman@srz.com
    E-mail: jeffrey.robertson@srz.com

    And

    Frederick S. Gold  (ct03560)
    Eric Lubochinski  (ct25842)
    Shipman & Goodwin LLP
    300 Atlantic Street, Third Floor
    Stamford, CT 06901
    Tel. (203) 324-8100
    Fax (203) 324-8199
    E-mail: fgold@goodwin.com
    E-mail: elubochinski@goodwin.com

    Their Attorneys

1984260v1

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2011 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/Eric Lubochinski
Eric Lubochinski (ct25842)

1984260v1