# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| SV SPECIAL SITUATIONS MASTER FUND LTD., | : |
| Plaintiff, | : |
| - against - | : Case No. 3:08cv1769 (SRU) |
| KNIGHT LIBERTAS LLC, KNIGHT LIBERTAS HOLDINGS LLC, LIBERTAS HOLDINGS LLC, LIBERTAS PARTNERS LLC, and GARY KATCHER, | : |
| Defendants/Third-Party Plaintiffs, | : |
| - against - | : |
| MARK A. FOCHT, SCOTT A. STAGG, and 3V CAPITAL MANAGEMENT LLC, | : AUGUST 9, 2011 |
| Third-Party Defendants. | : |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO MODIFY SCOPE OF RULE 706 ORDER

As indicated during the August 3 conference, Defendants believe the Court's July 21, 2011 Rule 706 order ("the Order") inadvertently expands the scope of the court-appointed expert's assessment beyond the objective, quantitative forensic accounting that is relevant to the pending motions, and to which Defendants agreed. Such expansion needlessly injects subjective, qualitative assessments that are neither relevant nor appropriate to consider in connection with the pending motions. Instead, the Court should adopt Defendants'

DOC ID-17191980.5
1994525v1

proposed order, which limits the expert analysis to an objective forensic accounting and quantitative assessment that will assist the Court to resolve the pending summary judgment motions, including a finding that Defendant Gary Katcher received no portion of the $8.9 million at issue. Specifically, the proposed order requires that the court-appointed expert report on the recipients of the $8.9 million at issue and how that money was disbursed. These qualitative questions are the only issues presented by the pending summary judgment motions and the issues appropriate for the court-appointed forensic accountant to consider.

## ARGUMENT

I. **THE COURT'S RULE 706 ORDER IS OVERBROAD, INJECTS QUALITATIVE CONCEPTS THAT ARE NEITHER NECESSARY NOR APPROPRIATE TO RESOLVE SUMMARY JUDGMENT, AND SHOULD BE MODIFIED TO ORDER A QUANTITATIVE FORENSIC ACCOUNTING**

　　A.　**Deloitte's Analysis Should Be Limited to a Quantitative Accounting**

Since the Court initially proposed engaging a forensic expert, all discussions among the Court and parties have indicated that the court-appointed expert's analysis would be limited to a quantitative assessment—described as an "accounting"—intended to trace the $8.9 million transferred to Defendants or for their benefit for the so-called Stelco and Credit Suisse/Transport transfers. The Court introduced the concept at the May 4 summary judgment hearing, for example, by indicating it would "order *an accounting* by a reputable accounting or forensic accounting firm retained by the court with the parties to split the costs

of that *accounting*."[1] (*See also id.* at Tr. 19:2-5 ("What we need to do is *get Price Waterhouse or somebody competent in here to figure out what the heck happened to this money*"); *id.* at 37:4-7 (noting Court's desire to "have a *forensic accounting report* that says Mr. Katcher only received, directly or indirectly, the benefit from this amount of dollars.") (emphasis added).)[2]

The Court's summary judgment ruling stated that "pursuant to Rule 706 of the Federal Rules of Evidence, an expert witness shall be appointed to conduct a *forensic accounting* of defendants' books and records to assist the trier of fact in determining which of the defendants has received, and/or benefitted from the receipt of the $8,938,574.64 and to what extent." (Dkt. 281 at 18 (emphasis added); *see also id.* ("Summary judgment on those claims must await evidence showing which defendant or defendants hold the funds at issue, and for the purposes of the unjust enrichment claim, which defendant or defendants have unjustly benefited from those funds and, to what degree have they benefitted").)

Likewise, the Court consistently has indicated that Deloitte's assessment is limited to "the issues that were identified in the summary judgment ruling." (Decl., Exhibit C, July 21, 2011 conference Tr. at 8:22-23.) The Court rejected Plaintiffs' pleas to expand the scope of the proposed review, noting "[it is] not intended that Deloitte act as a special master

---

[1] (*See* Exhibit A to the August 9, 2011 declaration of Jeffrey F. Robertson, the transcript of the May 4, 2011 oral argument hearing, at Tr. 3:8-11 (additional exhibits denoted as "Decl., Exhibit __").

[2] The Court made similar comments during the June 23 conference, during which the Court proposed appointing Deloitte Financial Advisory Services (hereafter "Deloitte"). (*See* Decl., Exhibit B, June 23, 2011 conference Tr. at 15:3-6 ("We need to retain a court expert to undertake some of the *forensic work* in this case that I think may be necessary to a number of issues ..."); *see also id.* at 15:23-24 (discussing Deloitte's claim "to have the largest *forensics* and dispute advisory practice of any accounting firm around") (emphasis added.)

to, in effect, decide what happened in this case completely." (*Id.* at 8:23-25.) To the contrary, the Court indicated it was "limit[ing] [the scope of Deloitte's review] to the issues that are set forth in the [summary judgment] order because that's, that's really how it came up." (*Id.* at 9:5-7.) Beyond those issues, the Court appropriately recognized it was the parties' responsibility "to develop any expert opinion they want on the *remaining issues* and, frankly, even on [issues related to the $8.9 million transfers] to the extent that they disagree with Deloitte's conclusions." (*Id.* at 9:7-10) (emphasis added.)

From the beginning, Defendants have supported the proposed quantitative forensic accounting. (*See* Decl., Exhibit A at 20:4-8 ("if you want to bring in an accounting firm to sort out the facts, we have no objection to that ... we welcome and we should do that.").) As discussed at the summary judgment hearing, Defendants believe an accounting will confirm that defendant Katcher received *none* of the $8.9 million at issue.[3]

---

[3] At most, Katcher indirectly received approximately $100,000 in connection with the so-called "Payroll Transfer," but due to factual issues precluding summary judgment regarding that transfer, it is not part of the $8.9 million for which an accounting has been ordered. (*See id.*, at 18:17-18, 20:22-23.)

### B. The Order Expands Deloitte's Analysis Well Beyond a Quantitative Accounting and Introduces Qualitative Issues That Are Inappropriate for Summary Judgment, Particularly In This Case

In contrast to pending summary judgment issues that will be addressed by a forensic accounting, the Court's July 21 Order (Dkt. 289) expands the scope of the court-appointed expert's analysis beyond *objective, quantitative* issues and injects *subjective, qualitative* assessments. For instance, the Order seeks opinions about whether the transferred amounts "artificially inflate the *value*" of the Libertas entities, what the Libertas entities "would have been *worth*" absent the transfers, and what is the "*value* of any *benefit*" to Defendants from the transfers. (Order at ¶¶ 2(a), 2(b) and 4(a) (emphasis added).) Indeed, in related litigation, Plaintiffs have argued that Deloitte has been ordered to offer a qualitative assessment that will confirm Plaintiffs' contention "that Libertas would not have survived absent the [funds transferred] from 3V Master Fund" and that "Katcher will face liability for the full $150 million" that Knight paid to acquire Libertas. (Decl., <u>Exhibit D</u>, at 6-7.) Plaintiffs thus cannot dispute that the Order transforms a straight-forward forensic accounting into a subjective qualitative exercise.

Such subjective valuation issues generally are inappropriate for summary judgment. Perhaps for that reason, Plaintiffs did not seek summary judgment regarding the *amount* of any supposed benefit to Defendants from the transfers. Nor could they credibly have done so because, among other things, the parties dispute the extent of any indirect benefit to Katcher. Indeed, at trial, Defendants will present evidence and expert testimony

regarding the purported value of the transfers to Libertas; Defendants have not done so as yet, however, because those issues are not germane to the pending summary judgment motions. Thus, there is no reason for the Court to request that Deloitte opine about the supposed benefit to Katcher in light of the Court's determination that the Deloitte's analysis will be confined to the $8.9 million transfers and summary judgment issues. (*See* Dkt. 281 at 18; Decl., Exhibit C at 8:21-9:10.)

Moreover, given the facts of this case, a subjective assessment by Deloitte of the supposed "benefit" to Defendants from the transfers is a misguided and flawed exercise that certainly will not help resolve pending summary judgment issues. Here, Defendants will introduce evidence at trial that Knight Capital Group, Inc.'s ("Knight") valuation of Libertas in connection with the Libertas acquisition was based on projections of Libertas's *future revenues* (as is typical of transactions involving broker-dealers). But neither Knight's revenue projections nor its valuation of Libertas was impacted by the relevant transfers at issue, some of which occurred *three years* before the acquisition. Thus, while Plaintiffs repeatedly crow about the "benefit" Defendants supposedly received from the transfers—and that "Katcher will face liability for the full $150 million" that Knight paid to acquire Libertas—there is no

factual basis for such claims. (*See* Decl., Exhibit D at 7.)[4] In addition, Plaintiffs' damage claims are far-fetched and baseless.[5]

Nor is there any factual predicate for the *qualitative* questions posed by the Order regarding the impact of the transfers on Libertas's "value," "worth" or "benefit," at least as measured by Knight's acquisition. Indeed, given that the jury will hear evidence concerning the *actual* valuation of Libertas by Knight (based on future revenue projections), a *hypothetical* valuation (based on the supposed impact of the alleged transfers on Libertas's "worth" or "value" using an unknown methodology) is not relevant to what, if any, "benefit" the Defendants may have received as a result of the transfers. Such evidence is disputed and the parties will argue their respective positions to the jury, but that evidence will not "assist the trier of fact" (Dkt. 281 at 18) to resolve summary judgment. To the extent Libertas's "worth" or "value" has *any* relevance at trial—a contention Defendants vehemently dispute—Knight's *actual* valuation of Libertas is the best, indeed *only*, undisputed evidence, since it

---

[4] Of course, Plaintiffs' claims obviously contradict their counsel's response to the Court's question during the May 4 summary judgment hearing:

"THE COURT:   The plaintiff wants some cut of the [$]150 [million]? Is that what's going on here?

Mr. Kazin:   The plaintiff doesn't want [sic] cut of [the $]150 [million] …"

(Decl., Exhibit A at 22:15-18.) Indeed, it has been apparent for some time that Plaintiffs erroneously believe they have a claim to the proceeds from the sale of Libertas.

[5] To recover *any* part of the Libertas sale price under their unjust enrichment claim, Plaintiffs must overcome *both* (*i*) the remoteness and lack of causation between the transferred amounts and the sale of Libertas (as much as three years after the transfers), much less the sale proceeds, *and* (*ii*) their admission that they lack any evidence whatsoever that Katcher either knew about or participated in any of the alleged transfers. (*See* Dkt. 237 at 22-25 (quoting Stagg's admissions concerning the transfers at issue).) In any event, Plaintiffs' purported recovery is not at issue, and cannot be decided, in connection with the pending summary judgment motions.

resulted from arms-length negotiations in an agreed-upon transaction between a willing buyer and seller.

### C. Defendants' Proposed Order Reflects the Appropriate Scope of Deloitte's Assessment

Given the Order's unnecessary expansion of the scope of Deloitte's analysis to include qualitative matters that are neither appropriate nor relevant to the pending summary judgment issues, the Court instead should limit Deloitte's analysis to a quantitative forensic accounting. As the Court requested, Defendants have prepared a proposed order that reflects the proper scope of Deloitte's analysis.[6] The proposed order requires Deloitte to (a) identify the recipients of the $8.9 million in transfers; (b) to the extent possible, identify how the recipients used those funds; and (c) indicate whether Katcher received any portion of the $8.9 million. (Proposed Order at ¶ 2(a)-(c).)[7]

The proposed order is appropriate and should be entered. *First*, it limits Deloitte's analysis to the objective forensic accounting and quantitative assessment that is relevant to the pending summary judgment motions, including the absence of any basis to find that Katcher received any portion of the $8.9 million at issue. *Second*, it avoids the qualitative assessments regarding "benefit," "value" and "worth" that the parties will dispute and, in any event, are not at issue in connection with the pending summary judgment motions. Accordingly, Defendants respectfully request that the Court so-order the proposed order.

---

[6] Defendants' proposed order is included herewith. A comparison showing changes to the Order is included as Decl., Exhibit E.

[7] Consistent with the modified scope of the order, Deloitte should staff the engagement with personnel who are experienced forensic accountants, not valuation experts.

## CONCLUSION

As demonstrated, the Order unnecessarily expanded the scope of Deloitte's review concerning the pending summary judgment motions by injecting subjective, qualitative assessments. Defendants' proposed order limits Deloitte's analysis to an objective, quantifiable forensic accounting regarding issues that are relevant and appropriate to resolve on summary judgment. Defendants respectfully urge the Court to modify its Order by adopting Defendants' proposed order.

Respectfully Submitted,

**DEFENDANTS,
KNIGHT LIBERTAS LLC, KNIGHT
LIBERTAS HOLDINGS LLC, LIBERTAS
HOLDINGS LLC, LIBERTAS
PARTNERS LLC AND GARY
KATCHER**

By:   /s/ Howard Schiffman
    Howard Schiffman (*pro hac vice*)
    Jeffrey F. Robertson (*pro hac vice*)
    Schulte Roth & Zabel LLP
    1152 Fifteenth Street, NW
    Suite 850
    Washington, DC 20005
    Tel. (202) 729-7470
    Fax: (202) 730-4520
    E-mail: howard.schiffman@srz.com
    E-mail: jeffrey.robertson@srz.com

and

Frederick S. Gold  (ct03560)
Eric Lubochinski  (ct 25842)
Shipman & Goodwin LLP
300 Atlantic Street, Third Floor
Stamford, CT 06901
Tel. (203) 324-8100
Fax (203) 324-8199
E-mail: fgold@goodwin.com
E-mail: elubochinski@goodwin.com

Their Attorneys

DOC ID-17191980.5
1994525v1
-10-

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2011, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/Eric Lubochinski
Eric Lubochinski