UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------

SV SPECIAL SITUATIONS MASTER FUND LTD.
and 3V CAPITAL MASTER FUND, LTD.,

        Plaintiff,                           Case No.  3:08cv1769 (SRU)

        - against -

KNIGHT LIBERTAS LLC, KNIGHT LIBERTAS
HOLDINGS LLC, LIBERTAS HOLDINGS LLC,
LIBERTAS PARTNERS LLC, and GARY
KATCHER,

        Defendants/Third-Party Plaintiffs,        August 15, 2011

        - against -

MARK A. FOCHT, SCOTT A. STAGG, and 3V
CAPITAL MANAGEMENT LLC,

        Third-Party Defendants.

------------------------------------------------

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO RECONSIDER THE JULY 21, 2011 ORDER**

Plaintiffs SV Special Situations Master Fund Ltd. ("SV Master Fund") and 3V Capital Master Fund Ltd. ("3V Master Fund"), by their attorneys, Stagg, Terenzi, Confusione & Wabnik, LLP, respectfully submit this memorandum of law in opposition to defendants' motion to reconsider the Court's July 21, 2011 Rule 706 Order (the "Order").[1]

**PRELIMINARY STATEMENT**

Defendants' motion to reconsider the Order is another transparent delay tactic to avoid disclosure of not only the true damage done by defendants through their theft of $8.9 million

---

[1] Defendants call their motion a motion to "modify," but this is actually a motion to reconsider. See Clinton v. Brown & Williamson Holds., Inc., 652 F. Supp. 2d 528, 530 (S.D.N.Y. 2009) (deeming a motion to modify an order a motion to reconsider pursuant to Local Rule).

from plaintiffs, but also the extent to which defendants benefitted from those thefts. There is no dispute that at least one defendant is liable for unjust enrichment for the theft of the $8.9 million associated with the Stelco and Transport securities, or that the stolen funds were wrongfully used to pay Libertas's financial obligations. The Court did not indicate it required a forensic accountant and valuation expert to confirm these facts.

Instead, the Court indicated it wanted Deloitte, as a Court-appointed expert, to assist the Court in determining specifically which of the defendants "directly or indirectly" benefited from the transfers and to what extent they benefitted. (Ex. B p. 37:4-7.) At oral argument on the pending motions for summary judgment, the Court stated:

> What we need to do is get Price Waterhouse or somebody competent in here to figure out what the heck happened to this money that your clients admit they wrongfully have.
>
> \*\*\*
>
> An accounting's going to help a jury. I'm not going to give this case to a jury in its current posture, quite frankly. Its not fair to a jury to expect them to sort through the mess that is this case.
>
> For all I know, Mr. Katcher has taken every dime that's at issue.
>
> \*\*\*
>
> I'm going to feel a lot more comfortable when I have a forensic accounting report that says Mr. Katcher only received, directly *or indirectly*, the benefit from this amount of dollars.

(emphasis added) (id. at 20, 37:4-7; 36.)

In the July 8, 2011 Order, the Court made its position even clearer. The Court held:

> I cannot resolve the question of each defendant's liability on the record before me nor do I expect that a lay jury could resolve the question of liability on the record … an impartial expert witness is necessary to "enlighten the jury and [myself] on issues which have become confused because of partisanship in presentation." See Scott v. Spanjer Bros., Inc., 298 F.2d 928, 930-31 (2d Cir. 1962)

2

> (holding that district court has the inherent authority to appoint an expert to aid in the just disposition of a case). Accordingly, pursuant to Rule 706 of the Federal Rules of Evidence, an expert witness shall be appointed to conduct a forensic accounting of defendants' books and records to assist the trier of fact in determining which of the defendants has received, and/or benefitted [directly or indirectly] from the receipt of the $8,938,574.64 and to what extent.[2]

(Doc. 281, p. 18)

> An expert witness will be appointed to conduct a forensic accounting of plaintiffs and defendants' books and accounts to assist the trier of fact in determining which defendants received and/or benefited from the $8,938,574,64.

(Id. at p. 25)

The Court also correctly held that

> There is also some suggestion, supported by SV Master Fund's auditor's report, that Libertas's value was artificially increased in light of the $13.1 million influx from 3V Master Fund. Accordingly, there is evidence in the record from which a jury could infer that Katcher was aware of the transfers <u>and personally benefitted from the sale of Libertas as a result of the transfers from 3V Master Fund</u>.

(Id. at 24 (emphasis added).)

> [I]f Katcher personally received or benefitted from any of the transfers at issue, plaintiff need not pierce the corporate veil to recover from Katcher, [and that] <u>in Connecticut, the measure of</u>

---

[2] Defendants' counsel "disagree[d]" with the notion that the Court wanted to retain an expert because the question of damages (who must pay them and to what extent) was "exactly what somebody like Deloitte could figure out far better than a jury." (Ex. D. p. 18.)

Defendants also contended that the Court should modify the Order because valuation involves "qualitative decisions which both sides will battle about in front of jury" and "has nothing to do with summary judgment" and that "there could never be summary judgment on valuation because that is qualitative." They also contended that Rule 706 only "anticipates" quantitative rather than qualitative work. This ignores that the Court retained Deloitte to enlighten the "lay jury" and the Court. (Doc. 281, p. 18) Deloitte was not retained solely to resolve summary judgment.

Moreover, defendants' representation that the Court cannot issue summary judgment based on an expert valuation is false. A FRE 706 expert, like any expert, may be retained for any purpose that will enlighten the court on a complex issue, and is particularly appropriate for valuation. (See, infra, pt. V.)

3

> damages in an unjust enrichment case is not the loss to the plaintiff, here the $8.9 million, but the benefit to the defendant.

(Id. at p. 17 and 18, n.7 (emphasis added).)

As the Court noted, SV Master Fund's expert determined that Libertas lacked sufficient operating revenue absent the funds stolen from 3V Master Fund. (Id. at 24.) Deloitte will confirm that but for the influx of the stolen $8.9 million, Katcher would not have been able to sell Libertas to Knight Capital Group ("Knight") for $150 million.

On July 21, 2011, defendants urged this Court to adopt the Order as currently drafted, arguing that its scope was precisely in line with what Deloitte should accomplish. They sought to prevent the Court from expanding the Order to include additional thefts. Defendants' counsel did not in any way take issue with the Order as drafted, and indeed vehemently supported it, stating:

> This order . . . is entirely consistent with what Your Honor has indicated in two prior conferences and in Your Honor's summary judgment decision would be the scope of Deloitte's review. This is entirely consistent with that and we think that's exactly what the review should accomplish and that's --- we don't see a reason to expand it beyond what Your Honor has set forth here.

(Ex. C p. 7:5-12.)

The Court *agreed with defendants*, declined to expand the Order, and issued the Order that day. (Doc. 289.) Still, defendants did not take issue with the Order. They signed and returned Deloitte's engagement letter, and sent Deloitte the $50,000 retainer. Again, no complaint was made about the terms of the Order. On July 29, 2011, defendants disclosed, for the first time, that defendant Katcher's brother is a Deloitte partner and that a former Deloitte partner is a director of Knight. At the August 3, 2011 conference addressing defendants' belated disclosures, defendants suddenly requested, for the first time, that the Court alter the Order.

4

They offered absolutely no justification for their drastic about face.[3] The Court did not stay, vacate or otherwise modify the Order. Instead, it merely permitted defendants to submit a proposed counter-order, noting:

> I am willing to look at what Deloitte *is doing* but, you know, I don't want to change the [O]rder, you know, on less than five minutes' notice, because I haven't seen your proposal yet. …I really don't want Deloitte stretched out. They have a fairly tight time frame at the moment, and if we're going to amend what their marching orders are, we ought to do it...

(Ex. D pp. 17-18) (emphasis added). [4]

This motion to "modify" (i.e., reconsider) ensued.  Defendants, however, failed to move to reconsider within the fourteen days required by Local Rule 7(c)(1).  See D. Conn. L. Civ. R. 7(c)(1).  They also fail to offer any explanation as to how the Court overlooked any pertinent information and therefore do not meet the substantive standard for a motion to reconsider.  And because they agreed to the Order in open court, they are not entitled to a modification unless they show manifest injustice.  Obviously, an objective expert like Deloitte revealing the truth does not suffice.  Moreover, defendants are judicially estopped from rearguing the order.

Defendants' sole argument, that a FRE 706 expert cannot opine on valuation, is false.  A court may appoint an expert under Rule 706 to help determine any complex issue on which the court requires clarification or any issue on which the Court believes the jury will require assistance.  The Court has always been crystal clear that the jury should be assisted in

---

[3] Defendants claim the Order was sprung on them at the last minute.  (Aug. 3, 2011 Tr. 16:10-12.)  This Court invited defendants to submit a proposed order for the court-appointed expert months ago.

[4] Defendants contacted Deloitte on August 10, 2011 indicating that until the Court provides further direction regarding the scope of the analysis, it was "inappropriate" for Deloitte to proceed.  This is wholly inconsistent with the Order.

determining which (if not all) of the defendants was unjustly enriched and the extent to which they were enriched.

For the foregoing reasons, the Court should deny defendants' motion to reconsider and direct Deloitte to commence its work in accordance with the Order.

## A R G U M E N T

### POINT I

### DEFENDANTS' MOTION TO RECONSIDER IS UNTIMELY

A motion for reconsideration of a prior order must be served and filed within fourteen days of entry of the underlying order.  D. Conn. L. Civ. R. 7(c)(1); cf Credit One, LLC. v. Head, 2010 WL 3058916, at *1 (D. Conn. Jan. 11, 2010) (allowing extra time to move to reconsider because plaintiff was *pro se*, but noting that parties represented by counsel must move to reconsider within fourteen days); Anderson v. Lantz, 2009 WL 2883072 at *1 (D. Conn. Aug. 27, 2009); Capone v. Patchogue-Medford Union Free School Dist., 2011 WL 743573 at * 1 (E.D.N.Y. Feb. 23, 2011) (motion to reconsider denied as untimely because it was filed after deadline set by local rules).

The court entered the Order on July 21, 2011.  Defendants waited nineteen days to move for reconsideration.   Their motion is therefore untimely and should be denied.

### POINT II

### DEFENDANTS FAIL TO SHOW THAT THE COURT OVERLOOKED ANY MATERIAL FACTS OR LAW

A motion for reconsideration will not be granted where a party is merely seeking to re-litigate an issue that has already been decided. See Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Courts disfavor such motions and deny them "unless the moving party can point to controlling decisions or data that the court overlooked- matters, in other words, that

6

might reasonably be expected to alter the conclusion reached by the court." Id.  It is the moving party's burden to show "the matters or controlling decisions which [it] believes the court overlooked."  D. Conn. Local Civ. R. 7(c)(1); Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (moving party must demonstrate that "the court overlooked controlling decisions or factual matters that were put before it on the underlying motion.").

Defendants specifically consented to the Order and vehemently argued that it was exactly in line with the Court's intent.  They did not put before the Court any "matters or controlling decisions" related to the proposed Order.  Even now, they fail to show how the Court overlooked any matters.

Accordingly, the Court should deny defendants' motion to reconsider and direct Deloitte to proceed in accordance with the Order.

## POINT III

### THE COURT SHOULD NOT ALTER THE STIPULATION ENTERED INTO BY THE PARTIES

Where a party has knowingly and voluntarily agreed to conditions in an action, the party is bound by that agreement. See Sinicropi v. Milone, 915 F.2d 66, 68 (2d Cir. 1990); see also In re Connaught Props., Inc., 176 B.R. 678, 685 (D. Conn. 1995).  A court will grant relief to a party from a stipulated agreement only upon a showing that "unless relieved, he will suffer a substantial injustice and that the other parties to the stipulation can be restored to the same position they would have had if no agreement had been made."  Greenspahn v. Joseph E. Seagram & Sons, 186 F.2d 616, 620 (2d Cir. 1951).

Here, defendants' only justification for modifying the Order is that defendants erred in consenting to it.  But a party may not seek relief from a stipulation due to a mental lapse. See H. Masuda v. Kawasaki Dockyard Co., 328 F.2d 662, 665-66 (2d Cir. 1964) (although "the

7

defendant's contention that it should be relieved of a maladroit stipulation because of a mental lapse by counsel is refreshingly candid [it] is accompanied by no adequate reason for granting the relief requested.").

The parties agreed to the Order on July 21, 2011 on the record.  (Ex. C.)  Defendants' counsel took full advantage of the opportunity to insist that the Court enter the Order exactly as drafted.  Defendants prevailed in urging this Court to adopt the Order as drafted, when they specifically opposed plaintiff's attempt to broaden its scope.  Defendants' blatant attempt for second bite of the apple that they already approved does not come close to establishing the substantial injustice that warrants vacating a stipulation.  Accordingly, the Court should deny the motion and direct Deloitte to proceed in accordance with the Order.

## POINT IV

### DEFENDANTS ARE JUDICIALLY ESTOPPED FROM SEEKING RECONSIDERATION

The doctrine of judicial estoppel prevents litigants from playing "fast and loose" with the court's authority.  See In re Peck, 155 B.R. 301, 305 (Bankr. D. Conn. 1993) (denying party's argument that order was defective because the party stipulated to its very terms).  Under this doctrine, a party may not assert a position inconsistent with a position it previously asserted.  Id. Defendants prevailed in urging this Court to adopt the Order as drafted, when they specifically opposed plaintiff's attempt to broaden its scope.  Defendants' blatant attempt to reverse course is "unseemly" and should not be permitted.   See Id. at 305.  Accordingly, the Court should deny the motion and direct Deloitte to proceed in accordance with the Order.

## POINT V

### THE COURT MAY APPOINT AN EXPERT
### TO ASSIST THE TRIER OF FACT OR ITSELF

Under the Federal Rules of Evidence, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence, a qualified expert may testify in the form of an opinion or otherwise. See FRE 702; In re Flag Telecom Holds., Ltd. Sec. Litig., 245 F.R.D. 147 (S.D.N.Y. 2007). The court is authorized to appoint such an expert to assist the jury or itself understand the evidence already in the record by explaining it and putting it in context. See United States v. Schiff, 538 F. Supp. 2d 818 (D.N.J. 2008); 28 FED PROC., L. ED. § 64:60[5] ("court appointed experts may serve a number of purposes: to advise the court on technical issues, to provide the jury with background information; to aid comprehension; or to offer a neutral opinion on disputed technical issues").[6]

"The most persuasive *valuation* witnesses are experts, especially where the court is valuing complex assets." 2 EQUIT. DISTRIB. OF PROP. 3d § 7:15. Experts frequently opine on valuation in achieving the just resolution of litigation. See In Re Hechinger Inc. Co. of Delaware, Inc., 2008 WL 2083145, at *2-3 (3d Cir. May 19, 2008) (court affirmed summary judgment based on valuation of business at $260 million which was confirmed by outside auditor); Woodworth v. Carter Machine Co., 2004 WL 1088248, at *1 (6th Cir. May 12, 2004) (court properly granted summary judgment based on statements by defendants' expert witness in

---

[5] A copy of this section is annexed hereto as part of Exhibit "A."

[6] Defendants' contention that the Order should be modified because the Court has not appointed a Special Master is a red herring because "the decision whether to appoint a special master involves largely the same considerations pertinent to court appointed experts." 28 FED. PROC., L. ED. § 64:61, a copy of which is annexed hereto as part of Exhibit A.

determining valuation of stock shares); In re Auction Houses Antitrust Lit, 2001 WL 170792, at * 4 (S.D.N.Y. Feb. 22, 2001) (706 experts appointed to advise the court on the "defendants' plan for fair market valuation…*and the defendants' financial exposure if the case were tried successfully to judgment*") (emphasis added); In re Chambers Dev. Secs. Lit., 912 F. Supp. 822, 830-31 (W.D. Pa. 1995) (Rule 706 expert testified regarding valuation of real estate); Great Plains Res., Inc. v. L. F. Tomlinson, 1991 WL 328520 at *3 (S.D. Ill. June 26, 1991) (appointing 706 experts to determine damages by calculating loss in fair market value); Findley v. Blinken, 122 B.R. 6, 7 (E.D.N.Y. 1990) (court appointed expert to project future calculations of damages due to complex nature of data); Salas v. Wang, 846 F.2d 897 (3d Cir. 1988) (permitting expert to make qualitative analysis of future value of damages based on present data); Reilly v. United States, 682 F. Supp. 150, 162 (D.R.I. 1988) (court has statutory and inherent authority to appoint advisor to advise and instruct court on issue of damages based on practice that dates back to "early fourteenth century in Valencia and spans more than six centuries"); Tennessee Valley Auth. v. 109 Acres of Land, 404 F. Supp. 1392, 1392 (E.D. Tenn. 1975) (court appointed independent value expert to testify before jury) .

None other than Justice Louis Brandeis specifically endorsed appointing an auditor to help reach a just resolution. He indicated that the auditor was appointed:

> [N]ot merely to examine books, vouchers and other papers, and to make computations, but to hear and pass upon conflicting testimony of the parties and of other witnesses . . . form a judgment and express an opinion upon such of the items as he found to be in dispute [and]… to render possible an intelligent consideration of the case by court and jury.

In re Peterson, 253 U.S. 300, 307 (1920).

The Court appointed Deloitte to detail which defendants benefitted, and the extent to which they benefited, either "directly or *indirectly*," from the $8.9 million theft. (See Ex. B p.

10

37:4-7.) If Libertas would have lacked sufficient cash to operate but for the stolen $8.9 million, then Katcher could not have sold it to Knight and therefore benefitted from thefts for the full amount of the purchase price that he pocketed. There is no dispute that Deloitte's forensic accountant and valuation experts can clarify these issues for the Court and the jury.

Accordingly, the Court should deny defendants' motion and direct Deloitte to proceed in accordance with the Order.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants' motion to reconsider, direct Deloitte to proceed in accordance with the Order, and award plaintiffs such other relief as the Court deems just and proper.

Dated: Garden City, New York
August 15, 2011

Respectfully Submitted,

**STAGG, TERENZI, CONFUSIONE & WABNIK, LLP**

By: _____s/ Andrew Kazin_____
Andrew Kazin (ct-24833)
Debra L. Wabnik (ct-24768)
Thomas E. Stagg (ct-23429)
Attorneys for Plaintiffs SV Special Situations Master Fund Ltd. and 3V Capital Master Fund Ltd., and Third-Party Defendants Scott A. Stagg and 3V Capital Management LLC
**Office and P.O. Address:**
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4500