**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SV SPECIAL SITUATIONS MASTER FUND LTD. and 3V CAPITAL MASTER FUND, LTD.,

Plaintiffs,

- against -

KNIGHT LIBERTAS LLC, KNIGHT LIBERTAS HOLDINGS LLC, LIBERTAS HOLDINGS LLC, LIBERTAS PARTNERS LLC, and GARY KATCHER,

Defendants/Third-Party Plaintiffs,

- against -

MARK A. FOCHT, SCOTT A. STAGG, and 3V CAPITAL MANAGEMENT LLC,

Third-Party Defendants.

Case No. 3:08cv1769 (SRU)

November 22, 2011

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL MOTION TO RECONSIDER A PORTION OF THE JULY 8, 2011 ORDER**

The time for Plaintiffs to comply with the Court's July 8, 2011 escrow order (the "Order") is long overdue and the Court should not entertain Plaintiffs' *third* motion for reconsideration or any other future motions related to the Order. Once again, Plaintiffs' latest motion for reconsideration of the Order is premised on the disproven and repeatedly rejected notion that it is impossible for Plaintiff SV Special Situations Master Fund Ltd. ("SV Master Fund") to comply. That contention was never made prior to the Order being entered and simply is not true.

While SV Master Fund may claim that it cannot monetize its litigation receivable and that it currently lacks sufficient cash and securities (the truth of which is not conceded, but is irrelevant for the purposes of this motion), there is no dispute that SV Master Fund owns a large and valuable equity interest in Mas Global Solutions Inc. ("Mas Global"), a holding company that Stagg controls, and which interest SV Master Fund values at $23.7 million. Similar equity interests in private companies are routinely bought, sold, and used as collateral, and Plaintiffs have demonstrated no reason that SV Master Fund's Mas Global interest cannot be partially liquidated or otherwise used to satisfy the Order.

Moreover, even if SV Master Fund did not own an equity interest that could be monetized or leveraged to satisfy the Order, it is irrefutable that any purported "inability" to comply with the Order results from numerous sham transactions in which Stagg transferred SV Master Fund's cash and securities to Mas Global to line his own pockets and to shield those assets from creditors, including Mr. Katcher. Those assets should be returned to SV Master Fund so that it can comply with the Order. While Defendants' opposition to Plaintiffs' second motion for reconsideration (Dkt. No. 314) detailed the numerous transactions in which Stagg directly and indirectly transferred funds from SV Master Fund to pay himself, his family, and his personal expenses, two *additional* transactions in which Stagg transferred SV Master Fund assets sufficient to comply with the Order to Mas Global for no legitimate purpose and virtually no consideration are described below. These two transactions involved a transfer of approximately a million dollars cash and a transfer of millions of dollars worth of preferred stock in a public company known as

EasyLink Services International ("EasyLink"), which SV Master Fund inexplicably transferred to Mas Global for virtually no consideration (and which Mas Global has since converted to publicly-tradable stock). Incredibly, contrary to their prior representations to the Court, Plaintiffs now concede that Mas Global does control these liquid assets and evidently uses them to pay SV Master Fund's expenses, including legal fees to Mr. Stagg's brother. These assets, or the proceeds from Mas Global's disposition of them, can and should be returned to SV Master Fund and be used to satisfy the Order.

Further motion practice concerning Plaintiffs' compliance with the Order is frivolous and harassing. The Court has patiently rejected the same disingenuous arguments over and over in the six months since it issued the Order. That patience should be exhausted. The Court should deny the motion for reconsideration and order Plaintiffs to comply with the Order immediately. Should Plaintiffs fail to do so or again argue they cannot (in other words, will not) comply with this Court's Order, the Court must consider additional measures to compel compliance and achieve the security intended by the Order. These measures should include appointing Deloitte to review and provide an accounting of SV Master Fund's and Mas Global's financial records and assets, including (i) the disposition of SV Master Fund's assets since August 2008 (including the $4.1 million transferred from Mr. Katcher's 3V Capital Partners LP account), (ii) inter-company transfers between SV Master Fund and Mas Global, (iii) what consideration Mas Global paid to SV Master Fund, and (iv) the disposition of SV Master Fund's assets once they were transferred to Mas Global. To meaningfully locate SV Master Fund's assets (and Mr. Katcher's money), this

review must include the records of Mas Global, the holding company owned by SV Master Fund and controlled by Stagg, which ample evidence demonstrates is used by Stagg to siphon and conceal SV Master Fund's assets. In addition, the Court should consider appointing an independent receiver to oversee SV Master Fund's affairs and marshal its assets, ordering judgment on Mr. Katcher's claims so that he may pursue collection of the stolen $4.1 million that the Order required Plaintiffs to escrow, and imposing sanctions against Plaintiffs for their willful violation of this Court's Order.

## ARGUMENT

## POINT I

## SV MASTER FUND OWNS AND HAS ACCESS TO ASSETS SUFFICIENT TO COMPLY WITH THE ORDER

### A. SV Master Fund Owns An Approximate $23.7 Million Equity Interest That Can And Should Be Used To Comply With The Order

Plaintiffs' motion for reconsideration should again be denied because SV Master Fund indisputably owns assets far in excess of the $4,124,542 it has been ordered to place in escrow.[1] In connection with its previous motion for reconsideration, SV Master Fund submitted an unaudited balance sheet (Dkt. No. 311-3) that shows that SV Master Fund's equity interest in Mas

---

[1] As an initial matter, Plaintiffs' failure to place even their current cash assets in escrow, or to liquidate the securities in SV Master Fund's account at GarWood Securities and place the proceeds into escrow, makes clear they have no intention of ever complying with the Order. Moreover, Plaintiffs' proposal to modify the Order so that they now be required to place *only* the Chase cash and Garwood unliquidated securities in the escrow is woefully insufficient and completely unnecessary. The Court has already determined that the escrow be funded with *cash* equal to the full $4.1 million owed to Mr. Katcher. Plaintiffs have the ability to comply with the Order and should do so.

Global is worth *at least* \$23.7 million.[2] Just as Defendants were required to sell millions of dollars of Knight Capital Group Inc. stock in adverse market conditions to comply with the Order (which compliance has to date cost Defendants millions of dollars in now-unrealizable stock gains), some portion SV Master Fund's equity interest in Mas Global can and should be liquidated or otherwise monetized to comply with the Order.[3]

Tellingly, Plaintiffs again all but ignore SV Master Fund's equity interest in Mas Global in their third motion for reconsideration. Instead, Plaintiffs assert in conclusory fashion that they "cannot" sell their interest in Mas Global. This is, of course, ridiculous. Interests in private companies are routinely bought and sold. Stagg may prefer not to open Mas Global's books to any outside investors or purchasers, or cede control of the entity that he uses as his personal piggybank, but that does not equate to an inability to liquidate Mas Global or its assets, which in turn ultimately are the assets of SV Master Fund.

More incredible, Plaintiffs concede—in a shocking about face from their prior representations to the Court that Mas Global has no liquid assets—that Mas Global is paying SV Master Fund's expenses, evidently including legal fees to SV Master Fund's counsel, Mr. Stagg's brother. (Dkt. No. 327-5, at 4.) Not only should those assets that are being used to pay SV

---

[2] Plaintiffs do not contend that Mas Global's value as reflected on the unaudited balance sheet they provided to the Court is incorrect or inflated. As set forth in Defendants' previous opposition to motion for reconsideration (Dkt. 314 at n.10), however, that balance sheet is facially inaccurate and misleading for other reasons because it omits numerous assets SV Master Fund concedes it owns.

[3] Once again, Plaintiffs request an "offset" be applied so they can avoid complying with the Order. The Court has appropriately considered and rejected this argument on numerous occasions. Nothing has changed and this argument once again must fail because the parties that allegedly owe the \$8.9 million are not necessarily the same as the party to whom the \$4.1 million is owed.

Master Fund's expenses (which, as described below, were assets transferred to Mas Global from SV Master Fund) also be used to satisfy the Order, but Plaintiffs' admission is astonishing and clear evidence of the games Plaintiffs are playing with the Court. Plaintiffs' admission reveals that SV Master Fund stashed assets within Mas Global that it accesses whenever it needs to pay Mr. Stagg or expenses he deems legitimate (*e.g.*, his "consulting" fee and personal credit card bills, his brother's law firm), but pleads poverty when courts—the Connecticut state court in addition to his Court—require that Plaintiffs and Stagg deposit the funds they stole from Mr. Katcher. Plaintiffs' admission confirms that SV Master Fund has no excuse for failing to comply with the Order.[4]

**B. SV Master Fund's Purported Inability To Comply With The Order Results From Stagg's Shell Games And Sham Transactions**

SV Master Fund's claims of poverty ring hollow and should be rejected for the additional reason that any purported inability to comply with the Order is a mirage intentionally

---

[4] Plaintiffs' counsel has suggested, most recently during October 18, 2011 status conference, that SV Master Fund cannot comply with the Order due to the transfers alleged in the Third Amended Complaint (the "Complaint"). (*See, e.g.*, Exh. A (10/18/2011 status conference transcript) at 57:09-15.) As demonstrated in this memorandum (and Defendants' prior oppositions to Plaintiffs' motions for reconsideration), however, this is simply not true because SV Master Fund owns or controls assets sufficient to comply. But more importantly, Plaintiffs' counsel's suggestion is nonsense for at least three additional reasons. *First*, according to its own records, SV Master Fund owned assets that it valued at more than $163 million and had a net asset value of more than $90 million as of October 31, 2007, and owned assets that it valued at more than $126 million and had a net asset value of more than $85 million as of August 31, 2008, shortly before it suspended redemptions. (*See* Exhs. B & C (SV Master Fund monthly NAV statements).) Obviously, the transfers alleged in the Complaint—which total only $13.5 million and allegedly were completed by April 2007—would not cause at least $85 million in assets to disappear since August 2008. *Second*, Stagg concedes that in or about September 2007, SV Master Fund knowingly received more than $11 million from 3V Capital Master Fund Ltd. to which it was not entitled (including Mr. Katcher's $4.1 million). (Exh. D (1/27/11 Stagg deposition transcript) at 81:04-82:05, 83:01-10, 247:09-20, 287:02-12.) The unauthorized receipt and retention of those funds negates any purported harm SV Master Fund suffered from the alleged transfers (moreover, this $11 million has now disappeared as well, according to Plaintiffs). *Third*, most fundamentally, none of the transfers alleged in the Complaint even involved SV Master Fund and therefore could not have been the cause SV Master Fund's purported inability to comply with the Order.

created by sham transactions that Stagg orchestrated to line his own pockets and shield SV Master Fund's assets from creditors, including Mr. Katcher. *First*, as described in detail in Defendants' opposition to the second motion for reconsideration, to enrich himself Stagg directed numerous illicit transfers of millions of dollars from SV Master Fund directly or indirectly to his accounts and to pay his personal expenses. (*See* Dkt. No. 314 at 3-8.)

*Second*, as part of his continuing shell game to shield additional assets from SV Master Fund's creditors, Stagg transferred millions of dollars in cash and securities from SV Master Fund to Mas Global for virtually no consideration. For instance, according to Stagg, sometime in 2010, SV Master Fund "sold" several million dollars of class C preferred stock in EasyLink, a publicly traded company, to Mas Global, the holding company that SV Master Fund owns, but the only consideration SV Master Fund received in exchange for the valuable EasyLink stock was additional shares of Mas Global.[5] This self-dealing transaction is nonsensical from both sides and appears to have no purpose other than to attempt to shield SV Master Fund's assets. Mas Global is a holding company with no revenues or employees and does not appear to own any other public securities; conversely, at the time of the supposed transaction, SV Master Fund, a fund Stagg testified was in the process of winding down, already owned approximately 98.5% of Mas Global and would have no reason for acquiring additional newly-issued stock, supposedly worth millions of dollars, in a company it values as worth only approximately $23.7 million and which

[5] The date of the purported "sale" is uncertain. Although Stagg testified that SV Master Fund "sold" the EasyLink stock to Mas Global in March 2010 (*see* Exh. E (2/3/11 Stagg deposition transcript) at 320:20-325:12; 219:18-220:04), SV Master Fund's prime broker's records show that SV Master Fund continued to own and possess the EasyLink stock at least through October 2010. (*See* Exh. F at Garwood000450.)

stock it claims cannot be sold or otherwise monetized. Moreover, according to Stagg, only he participated in the transaction and valued the consideration that SV Master Fund supposedly received.[6] In early 2011, Mas Global converted the stock into 700,000 shares of publicly-traded EasyLink common stock—which today are worth approximately $3 million.[7] Those shares, or the proceeds from any subsequent disposition, should be accounted for and returned to SV Master Fund to satisfy the Order.

Similarly, Stagg has testified that SV Master Fund "loaned" Mas Global at least $1 million;[8] in fact, the purported "loan" is a sham and the money Stagg claims was transferred to Mas Global should be returned to SV Master Fund so that it can satisfy the Order. No "loan" documents were ever produced, nor is there any legitimate purpose for SV Master Fund to "loan" Mas Global, a holding company with no business operation or employees, at least $1 million. Indeed, as Stagg explained, although the "loaned" funds were transferred to Mas Global, they are used to pay *SV Master Fund's* expenses and bills, including fees to Stagg's brother:

> *Stagg*. Well, there is money, there is a payable for [Mas] Global, so if SV needs to pay legal fees, they basically ask for a repayment of the monies or receivable.[9]

Although Stagg testified on January 27, 2011 and February 3, 2011 that SV Master Fund had a receivable on its balance sheet for a return of the "loaned" funds,[10] the unaudited

---

[6] Exh. E (2/3/11 Stagg deposition transcript) at 324:01-16.

[7] Exh. G (Form 10-Q, EasyLink Services International Corp., for period ending 1/31/11) at 24. The closing price of EasyLink's Class A common stock on November 21, 2011 was $4.00. (*See* Exh. H (NASDAQ report).)

[8] Exh. D (1/27/11 Stagg deposition transcript) at 322:04-323:07, 325:06-09.

[9] Exh. D (1/27/11 Stagg deposition transcript) at 74:22-75:02.

balance sheet dated January 31, 2011 that Plaintiffs provided to the Court inexplicably omitted that receivable, presumably to avoid questions about why that money, which Stagg testified was being used to pay SV Master Fund's expenses, could not also be used to satisfy the Order. The simple answer is that it can and should.

These sham transactions demonstrate SV Master Fund's ability to comply with the Order. The proceeds from these transactions—approximately $3 million in EasyLink stock and $1 million in a "loan" repayment—as well as proceeds from other, undiscovered transactions, should be made available to SV Master Fund and deposited into escrow.[11]

**POINT II**

**THE COURT MUST FASHION ADDITIONAL MEASURES TO COMPEL PLAINTIFFS TO COMPLY WITH ITS ORDERS**

Plaintiffs' baseless refusal to comply with the Court's Order and continued motion practice to re-litigate issues that the Court has already decided on numerous occasions demands that the Court impose new measures to enforce the Order (or compel a similar result).

At a minimum, the Court should appoint Deloitte, at Plaintiffs' expense, to review SV Master Fund's and Mas Global's records and provide an accounting of (i) the disposition of SV Master Fund's assets since August 2008 (including the $4.1 million improperly transferred from

[10] Exh. D (1/27/11 Stagg deposition transcript) at 74:22-75:02, 322:04-323:07, 325:06-09; Exh. E (2/3/11 Stagg deposition transcript) at 194:09-10.

[11] Plaintiffs' final proposed alternative to actually complying with the Order—proposed for the first time months after the Order they pushed for was issued—is that the Order be rescinded. This is absurd. Months ago, Defendants liquidated millions of dollars of stock at a substantial loss to comply with the Order. That cannot be undone simply because Plaintiffs refuse to comply. More importantly, Plaintiffs should not be permitted to avoid providing the security to Mr. Katcher that both this Court and the state courts of Connecticut have ordered.

Mr. Katcher's 3V Capital Partners LP account), (ii) inter-company transfers between SV Master Fund and Mas Global, (iii) what consideration Mas Global paid to SV Master Fund, and (iv) the disposition of SV Master Fund's assets once they were transferred to Mas Global. Mas Global is a holding company controlled by Stagg with no employees or operations. Ample evidence demonstrates that Stagg uses Mas Global as the conduit to siphon funds from SV Master Fund. Thus, to be meaningful, and locate the ultimate destination of SV Master Fund's assets and the money owed to Mr. Katcher, Deloitte's accounting must include a comprehensive examination of Mas Global's books and records, inter-company transfers between SV Master Fund and Mas Global, and subsequent transfers from Mas Global.

The Court should also consider appointing a receiver to oversee SV Master Fund's operations and marshal its assets. The Court has authority under its general and inherent powers and Federal Rule of Civil Procedure 66 to appoint a receiver and manage a defendant's assets during the pendency of litigation. *In re McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994); *see also SEC v. American Bd. of Trade, Inc.*, 830 F.2d 431, 443 (2d Cir. 1987) (holding that district court did not abuse its discretion in appointing receiver "[i]n light of the [defendants] deteriorating financial condition, their failure...to maintain adequate financial records, and the unexplained dissipation of their assets"); *In re Bayou Group, LLC*, 363 B.R. 674, 678-80 (Bkr. S.D.N.Y. 2007) (describing appointment of receiver and corporate manager of affiliated group of hedge funds that had been misused by principals); *Ross v. Thomas*, No. 09 Civ. 5631(SAS), 2011 WL

2207550, at *1-2 (S.D.N.Y. June 6, 2011) (approving fees for receiver appointed to administer and collect interests of defendant-entities to satisfy judgment).

Courts in the Second Circuit have considered the following factors to be relevant in the appointment of a receiver:

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*United States v. Trusty Capital, Inc.*, No. 06-CV-8170 (KMK), 2007 WL 44015, at *7 (S.D.N.Y. Jan. 5, 2007) (citing *Varsames v. Palazzolo,* 96 F.Supp.2d 361, 365 (S.D.N.Y.2000) (quoting 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1999))).

These factors demonstrate that appointing a receiver to manage SV Master Fund's operations and marshal its assets is warranted. As described above and in Defendants' prior oppositions to Plaintiffs' motions for reconsideration, SV Master Fund and Stagg have engaged in repeated fraudulent conduct that presents an imminent danger Mr. Katcher's stolen money—which the Order acknowledges SV Master Fund indisputably possesses without authorization (Dkt. No. 281)—will be or has already been dissipated and/or concealed. Indeed, SV Master Fund has disregarded orders from both this Court and Connecticut state courts ordering Mr. Katcher's money to be posted in escrow, and issues related to Stagg's violations of other temporary restraining orders requiring Mr. Katcher's money to be held inviolate were recently litigated in a

Connecticut state court contempt hearing. Obviously, in the face of Stagg's repeated violations of court orders, permitting Stagg to continue to dissipate and conceal SV Master Fund's assets presents a high likelihood of additional harm to Mr. Katcher. Conversely, there can be no argument that SV Master Fund, which no longer has ongoing day-to-day operations and supposedly is in the process of winding down, would suffer any injury from the appointment of a receiver. Accordingly, should Plaintiffs fail to comply with the Order, the Court should appoint a receiver to oversee SV Master Fund's operations and marshal its assets.

The Court should consider entering judgment on all of Mr. Katcher's counterclaims so that he can pursue recovery of the $4.1 million and SV Master Fund admits it has knowingly withheld from him improperly since at least 2008.

Finally, the Court should impose additional sanctions on Plaintiffs and their counsel for violating the Order, including but not limited to awarding Defendants' attorney fees and costs expended in responding to Plaintiffs' baseless motions for reconsideration.

## CONCLUSION

SV Master Fund owns assets it concedes are worth many multiples of the $4.1 million that it wrongfully possesses, including assets worth millions that have been transferred to its virtually wholly-owned subsidiary Mas Global. There is no basis for Plaintiffs' continued refusal to comply with the Order, which should not be reconsidered or modified. The motion for reconsideration should be denied, with prejudice, and SV Master Fund should be ordered to comply with the Order immediately. If Plaintiffs fail to do so, the Court should take additional

measures to enforce compliance or achieve a similar result, including but not limited to appointing Deloitte to account for SV Master Fund's and Mas Global's assets.

**DEFENDANTS,**
**KNIGHT LIBERTAS LLC, KNIGHT LIBERTAS HOLDINGS LLC, LIBERTAS HOLDINGS LLC, LIBERTAS PARTNERS LLC AND GARY KATCHER**

By: /s/ Howard Schiffman

Howard Schiffman (*pro hac vice*)
Jeffrey F. Robertson (*pro hac vice*)
Andrew P.C. Wright (*pro hac vice*)
Schulte Roth & Zabel LLP
1152 Fifteenth Street, NW
Suite 850
Washington, DC 20005
Tel. (202) 729-7470
E-mail: howard.schiffman@srz.com
E-mail: jeffrey.robertson@srz.com
E-mail: andrew.wright@srz.com

And

Frederick S. Gold (ct03560)
Eric Lubochinski (ct 25842)
Shipman & Goodwin LLP
300 Atlantic Street, Third Floor
Stamford, CT 06901
Tel. (203) 324-8100
Fax (203) 324-8199
E-mail: fgold@goodwin.com
E-mail: elubochinski@goodwin.com

Their Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2011 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/Eric Lubochinski
Eric Lubochinski (ct25842)

DOC ID-17671603.4
2104798v1