# Exhibit C

VIDEOTAPED DE BENE ESSE DEPOSITION OF SCOTT A. STAGG
CONDUCTED ON THURSDAY, JANUARY 27, 2011

1 (Pages 1 to 4)

---

Page 1

```
 1  UNITED STATES DISTRICT COURT
    DISTRICT OF CONNECTICUT
 2  ------------------------------------------X
 3  SV SPECIAL SITUATIONS MASTER FUND, LTD,
 4           Plaintiff,
 5      - against -
 6  KNIGHT LIBERTAS LLC, KNIGHT LIBERTAS HOLDINGS LLC,
    LIBERTAS HOLDINGS LLC, LIBERTAS PARTNERS LLC and
 7  GARY KATCHER,
 8          Defendants and Third-Party Plaintiffs,
 9      - against -
10  MARK A. FOCHT, SCOTT A. STAGG and 3V CAPITAL
    MANAGEMENT LLC,
11
            Third-Party Defendants.
12
    ------------------------------------------X
13
            January 27, 2011
14          10:09 a.m.
15
16      EXAMINATION BEFORE TRIAL of SCOTT A. STAGG,
17  taken by the Respective Parties, held at the
18  Offices of Schulte Roth & Zabel LLP, 919 Third
19  Avenue, New York, New York, on the above mentioned
20  date and time, before Melissa Jimenez-De Armas, a
21  Notary Public for and within the State of New York.
```

---

Page 2

```
 1  A P P E A R A N C E S:
 2
 3  STAGG, TERENZI, CONFUSIONE & WABNIK, LLP
        Attorney for Scott Stagg
 4      401 Franklin Avenue, suite 300
        Garden City, New York 11530
 5  BY:  ANDREW KAZIN, ESQ.

 6
 7  SCHULTE ROTH & ZABEL, LLP
        Attorney for Gary Katcher
 8      1152 Fifteenth Street NW
        Washington, DC 20005
 9  BY:  HOWARD SCHIFFMAN, ESQ
10       ANDREW P.C. WRIGHT, ESQ.
11       JEFFREY F. ROBERTSON, ESQ.

17  ALSO PRESENT:
18      GARY KATCHER
19      DAVID SANDERS, Videographer

21        *      *      *
```

---

Page 3

```
                  C O N T E N T S

    Examination of Scott Stagg        Page No.
    by Mr. Schiffman                     12


                    E X H I B I T S


    Exhibit Nos.    Description        Page No.
    56       a document entitled SV        41
             Special Situations Fund,
             Page 1 to Page 23.

    57       a document entitled 3V       125
             Capital Partners LP,
             Limited Partnership Agreement
             as Amended and Restated July 15th,
             2004. Bearing Bates Stamp Numbers
             3VC 00130 through 3VC 00158.

    58       a four-page document entitled  127
             Agreement made this 1st day
             of December 2004, by and between
             Libertas Holdings LLC and
             3V Capital Management.
```

---

Page 4

```
    59       a document entitled Stagg       130
             Capital Group LLC transactions
             related to SV Special Situations
             Master Fund. Bearing Bates Stamps
             00671 to 677.

    60       a Affidavit of Scott A. Stagg   136
             dated February 24th, 2010.

    61       Bates Stamp K051929,            138
             Bear Stearns account statements.

    62       Bear Stearns account            139
             Statement bearing Bates
             Stamp K051931.

    63       one-page document on the        210
             letterhead of Libertas Partners
             LLC, dated April 15th, 2008.
             Signed by Gary Katcher to Mark Focht.

    64       documents Bates Stamped         211
             K05268 through K05270.
```

---

Merrill LAD
(202)861-3410 (800)292-4789 (301)762-8282 (703)288-0026

VIDEOTAPED DE BENE ESSE DEPOSITION OF SCOTT A. STAGG
CONDUCTED ON THURSDAY, JANUARY 27, 2011

2 (Pages 5 to 8)

Page 5

| | | | |
|---|---|---|---|
| 1 | 65 | a document called 3V Capital Partners LP Subscription Agreement, 3VC 01216 through 1228. | 261 |
| 2 | 66 | a one-page document bearing Bates Stamp 3VC 01230, Additional Subscription Form dated January 24th, 2005. | 261 |
| 3 | 67 | a one-page document entitled Additional Subscription Form dated June 1st, 2006, bearing Bates Stamp 3VC 01229. | 261 |
| 4 | 68 | a document entitled Position Appraisal Report, SV Special Situations Master Fund. pages 1 through 35. | 314 |
| 5 | 69 | a document bearing Bates Stamp PSA 001946 to 1953 | 319 |

* * *

Page 6

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties herein, that filing, sealing and certification be and the same are hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed and sworn to before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the Court.

Page 7

THE VIDEOGRAPHER: This is the video operator speaking, David Sanders, of Merrill Legal Solutions, 225 Varick Street, New York, New York 10014. Today is January 27th, 2011 and the time is 10:11 a.m.

We are at the offices of Schulte, Roth & Zabel, 919 Third Avenue, New York, New York to take the videotaped deposition of Scott Stagg, in the matter of SV Special Situations Master Fund LTD versus Knight Libertas LLC, et al, and third-party Defendants in the United States District Court, District of Connecticut. Case Number 3:08 cv 1769 (SRU) and Superior Court, Judicial District of Stamford Norwalk, Case numbers X 05--

MR. KAZIN: No, we are just here for the federal deposition, sorry.

MR. SCHIFFMAN: All depositions are in all the cases.

MR. KAZIN: No, that's not what we agreed to.

MR. SCHIFFMAN: Yes, it is.

MR. KAZIN: No, it's not.

MR. SCHIFFMAN: It absolutely is. All

Page 8

discovery --

MR. KAZIN: It may be used. It may be used in the federal case.

MR. SCHIFFMAN: This is in both cases.

MR. KAZIN: No, it's not.

MR. SCHIFFMAN: It's in the federal case. That's how we noticed it, that's how it's going to be.

MR. KAZIN: No, they are not mixed.

MR. SCHIFFMAN: They are mixed.

MR. KAZIN: This is a federal deposition.

MR. SCHIFFMAN: No it's not, Andrew.

MR. KAZIN: Yes, it is.

MR. SCHIFFMAN: Do you just fight about everything all the time? Actually, you lose most of the time as well, but that's okay.

MR. KAZIN: We actually set this forth in front of the judge yesterday. This is not the deposition in the New York collection matter.

MR. SCHIFFMAN: It is not the New York collection matter, it's the Connecticut State Court matter --

MR. KAZIN: This is a federal deposition and it can be used in the State Court of

109

1  the grand jury?
2  A. I believe in the first instance they were
3  attempting to -- I think the first instance had to
4  do with Mark's theft from Pierce, and I don't think
5  they were able to indict him, so they brought me
6  in, and I testified and he was indicted.
7  Q. When did you first become aware that Mark
8  Focht potentially had stolen money from 3V?
9  A. He was terminated October 23rd or 24th, it
10 was a Friday of 2008, I became -- now, when you say
11 stolen money from 3V --
12    MR. KAZIN: What he said was potentially
13    stole money.
14 A. Potentially stole money. Were you talking
15 the management company?
16 Q. I really want to ask the question in the
17 broadest sense, 3V, SV, the management company.
18 When did you first realize that he had done
19 something wrong?
20 A. The day he was fired, and the day I did
21 research and found out a bunch of the things he
22 represented weren't true, I think over the next
23 month and then time after that, we --
24 Q. The first inclination that you had that he
25 did something wrong was based on research that you

110

1  had done?
2  A. Yes.
3  Q. So essentially you discovered his
4  defalcations?
5  A. Yes.
6  Q. What defalcations did you initially
7  discover?
8  A. I don't know if I recall the order, but, I
9  think the first thing I did that weekend was to
10 look at the positions in the portfolio, and I saw
11 that Stelco was still in the portfolio, I saw that
12 SeaBridge was in the portfolio, I saw Altitude
13 Vista was overstated, so, that was --
14 Q. So that caused you, you had reason to
15 believe that Stelco wasn't in the portfolio?
16 A. I thought we sold it in the fall of 2006,
17 that's what Mark represented to me.
18 Q. So any other defalcations in this process
19 that you started to be concerned about?
20 A. I think a couple of months later I learned
21 of a Libertas Holdings escrow account which, you
22 know, I saw there were transfers into that. I
23 learned about the details of each of the specific
24 initial three transactions. I saw that money was
25 used for Libertas's payroll and sent directly to

111

1  Paychex.
2     And then as I saw money, transfers into,
3  some of this money went into Libertas Holdings
4  escrow account, we -- through discovery we got
5  information and dissected that account and saw that
6  that's the account that Mark used effectively.
7  There was Northern Offshore and there were many
8  transfers beginning in, I believe, August,
9  September, 2005.
10 Q. Did you bring to the attention of anybody,
11 other than counsel, the defalcations that you
12 found?
13 A. I'm sure investigators and others.
14 Q. Did you bring it to the attention of the
15 criminal authorities?
16 A. We were already under investigation by the
17 New York District Attorney's Office for trades that
18 Mark tried to conduct in June and August, where he
19 tried to effectively trade between -- from one
20 prime broker to the other to effectively create the
21 illusion of a trade and the illusion of capital and
22 then try to transfer that money out.
23 Q. So there was an ongoing investigation of
24 Mark prior to --
25 A. Well, I believe the DA's office sent their

112

1  initial, I am not sure what the term is, they sent
2  an official document, I believe at the end of
3  September 2007.
4  Q. And then -- but that was in connection with
5  this trade between the prime brokers?
6  A. Connected with a lot of stuff and, I
7  remember the day, you know, I called Mark at 9
8  o'clock in the morning, I called him at the office
9  and I said, Hey, listen, I don't know anything
10 about it, and he said let me come over to your
11 house. On the way over he got into a car accident,
12 so I should have kind of figured something was
13 problematic at that point. But it was only a
14 matter of three weeks, four weeks later where he
15 was fired anyway, so.
16 Q. But did you ever share with the New York
17 State authorities the defalcations that you had
18 discovered?
19 A. Of course. He was, in his guilty plea -- he
20 pleaded guilty.
21 Q. I'm trying to figure out, is it correct that
22 you're the person who discovered those
23 defalcations, you told the New York State
24 authorities about them, they investigated and
25 ultimately that resulted in his going to jail?