**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SV SPECIAL SITUATIONS MASTER FUND LTD.
and 3V CAPITAL MASTER FUND, LTD.,

               Plaintiff,                              Case No.  3:08cv1769 (SRU)

        - against -

KNIGHT LIBERTAS LLC, KNIGHT LIBERTAS
HOLDINGS LLC, LIBERTAS HOLDINGS LLC,
LIBERTAS PARTNERS LLC, and GARY
KATCHER,

           Defendants/Third-Party Plaintiffs,        MARCH 16, 2012

        - against -

MARK A. FOCHT, SCOTT A. STAGG, and 3V
CAPITAL MANAGEMENT LLC,

           Third-Party Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**
**DISMISSING PLAINTIFFS' STATUTORY THEFT CLAIMS**

       Plaintiffs SV Special Situations Master Fund Ltd. and 3V Capital Master Fund Ltd.

respectfully submit this memorandum of law in opposition to defendants' cross-motion for

summary judgment dismissing plaintiff's sixth and seventh claims of the third amended

complaint for statutory theft.

**PRELIMINARY AND FACTUAL STATEMENT**

       On February 28, 2011, the parties cross-moved for summary judgment in accordance

with the court-ordered briefing schedule.  (Docs. 239, 243, 257.)  Plaintiffs' statutory theft

claims were addressed in the parties' respective briefs.[1]  (Docs. 236 through 243-16; 247; 249 through 260.)  Defendants did not move for summary judgment dismissing plaintiff's statutory theft claims (Doc. 239), even though they were required to do so by February 28, 2011.  (Doc. 224.)  Now, more than one year later, defendants seek dismissal of the statutory theft claims and attempt to re-brief the issues.

Regardless of how defendants spin the facts, they cannot change that they wrongfully withheld and continue to withhold $13.1 million that they should return.

Defendants argue that they made a $13 million mistake and therefore cannot be held liable. (Doc. 366 pp. 24-28.)  But defendants admitted in 2010 that they were merely hoping to discover some reason for retaining the stolen funds, but had not yet found that reason. (Doc. 175 pp. 11:11-13:2.)  And Your Honor has repeatedly advised defendants that they are wrongfully withholding the funds without a claim of right, mistaken or otherwise.  (Doc. 175 pp. 3:12-5:1; 5:22-6:21; 11:23-12:3; Doc. 271 pp. 3:19-4:1; 6:4-6; 12:3-5; 23:3-8.)  Indeed, court appointed expert Deloitte Financial Services LLP ("Deloitte") has confirmed that Libertas Holdings LLC received and withheld the $5,836,043.10 associated with the Stelco transfer and that defendant Gary Katcher, personally, improperly received $8,333.33 of these funds.  It also determined that Libertas diverted and failed to return the $3,102,531.47 associated with the Transport theft. (Doc. 362-1.)

Defendants contend they are not liable for statutory theft on the Transport theft because the $3.1 million never passed through a Libertas account.  (Doc. 366.)  Connecticut's statutory

---

[1] Plaintiffs respectfully refer the Court to pages 5 through 25 of the memorandum of law in support of their motion for summary judgment for a recitation of the facts underlying their statutory theft claims.   Plaintiffs' moving and reply memoranda and all supporting affidavits are incorporated herein. (Docs. 243 through 243-16; and Docs. 257 through 257-10.)

theft statute merely requires a defendant to have had dominion over funds that he knows he should return.  Where a company controls stolen funds to satisfy its financial obligations, it exercises dominion, regardless of whether the funds pass through its account.

Nor can defendants evade liability because they escrowed the stolen funds more than three years into this litigation.  (Doc. 366 pp. 18, 23-24.)  Defendants committed larceny when they used the stolen funds to satisfy their financial obligations.  Katcher disguised Libertas's undercapitalization with the stolen money and was thereby able to sell Libertas for $150 million. That defendants were able to escrow the $13.1 million in stolen funds (a mere nine percent of Katcher's profit), after the Court ordered them to do so, does not erase the larcenous motive of their prior conduct.

For these reasons, the Court should deny  defendants' motion for summary judgment dismissing these claims.

## A R G U M E N T

### POINT I

### DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' UNLAWFUL STATUTORY THEFT CLAIMS BECAUSE DEFENDANTS' USE OF THE STOLEN FUNDS CONSTITUTED LARCENY

Plaintiffs' sixth and seventh claims in their complaint seek to recover under Connecticut's statutory theft statute for defendants' theft of $13.1 million.   (Doc. 283.) "Statutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119." Deming v. Nationwide Mut. Ins. Co., 279 Conn. 745, 771, 905 A.2d 623 (2006).  Section 53a-119 provides, in pertinent part:

A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner.  Larceny includes, but is not limited to:

(1)   Embezzlement.  A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody.

(4)   Acquiring property lost, mislaid or delivered by mistake.  A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of larceny if, with purpose to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to it.

(8)   Receiving stolen property.  A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner.

A party commits larceny pursuant to § 53a-119 "when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains *or withholds such property from an owner* …."  General Statutes § 53a-119; Mystic Color Lab, Inc. v. Auctions Worldwide, LLC, 284 Conn. 408, 418 n.14, 934 A.2d 227 (2007) (emphasis added). "[T]he essential cause of action is a wrongful exercise of dominion over personal property of another."  Health Communications, Inc. v. Chicken Soup for the Soul Pub., 2011 WL 2611826, at * 6 (Conn. Super. June 14, 2011); see Masse v. Perez, 2011 WL 383854, at * 3 (Super. Ct. Conn. Jan. 4, 2011) (improper use of funds that defendants controlled sufficient for statutory theft).  There is no dispute that defendants wrongfully withheld or misappropriated to a third party $13,159,703 from 3V Master Fund to satisfy their own financial obligations. (Doc. 243-13

4

pp. 16-32; Doc. 257 pp. 8-11.) Katcher personally received and withheld not less than $100,000 in the Payroll Theft and $8,333.33 in the Stelco transaction.  (Doc. 362-1.)

Defendants contend that there is no evidence of defendants' intent to steal because third-party defendant Mark Focht ("Focht") effected all transfers.  (Doc. 249 at 2.)  But Focht was acting on behalf of Libertas and Katcher, as a Libertas employee or agent, and for Libertas and Katcher's benefit when the funds were stolen. See Sheltry v. Unum Life Ins. Co. of Am., 247 F. Supp. 2d 169, 176 (D. Conn. 2003) (recognizing under Connecticut law that a principal can be civilly liable for an agent's illegal acts).  Even if Katcher did not push the button that actually transferred the stolen millions, he authorized every wire transfer from the secret Libertas escrow account (Doc. 243-2 pp.25-26), maintained a running balance of Libertas's cash flow (Doc. 243-2 pp.44-45; Doc. 243-11 ¶12), was repeatedly advised that Libertas was underfunded and lacked the ability to meet its financial obligations (Doc. 243-2 p. 14), and actively covered up the Payroll Theft with false documentation to ensure that FINRA would not suspend Libertas Partners' license. (Doc. 243-2 p.85.)  A defendant is guilty of larceny if he knows or believes that the withheld funds are probably stolen.  See State v. Gabriel, 192 Conn. 405, 412-13 (1984); Rana Auto v. Terjanian, 2011 WL 1366758, at *2 (Conn. Super. Mar. 17, 2011) (since defendants knew source and disposition of funds, their failure to return funds to rightful party evidenced intent to deprive).  Even the withholding of funds taken from parties other than the plaintiff is civil theft if those funds are owed to the plaintiff.  See Hylton v. Gunter, 2011 WL 1366524, * 4 (Conn. Super. Mar. 14, 2011) (defendant manipulated his company's books to withhold money from plaintiff).  Katcher cannot hide behind his feigned or deliberate ignorance of the thefts to absolve himself of liability.  See State v. Barber, 24 Conn. Super. 346, 352 (Cir.

App. Div. 1962) ("law does not require that feigned or deliberate ignorance must be overcome by proof of actual knowledge as it may exist in a person's mind.").

Moreover, contrary to defendants' repeated pleas that they were initially unaware of the transfers, there is damning evidence of a widespread cover-up.  Katcher willfully disregarded the transfers, knew of Libertas's capital shortfall, directed Focht to "fix" it, and accepted Focht's explanation even though Focht was clearly lying.  (Dkt. 243-1, Ex. B at 25:3.)  This willful blindness constitutes an intent to steal.[2]

Further, there is no dispute that all defendants knew they were required to return the stolen funds but failed to do so once 3V Master Fund commenced this action.

Accordingly, defendants' motion for partial summary judgment should be denied and SV Master Fund should be granted summary judgment on its sixth and seventh claims.

## POINT II

### IT IS LAW OF THE CASE THAT DEFENDANTS WRONGFULLY WITHHELD THE $8.9 MILLION THEY STOLE "WITHOUT A CLAIM OF RIGHT"

Defendants argue that they kept the stolen millions based on an honest, but mistaken, claim of right.  (Doc. 366 pp. 23-27.)  It is too late for defendants to make this argument. Defendants already admitted they are withholding $8.9 million without a claim of right.  (Doc. 271 p. 6:4-7; Doc. 249.)  This Court already decided that defendants have no right to the stolen millions.  (Doc. 175 pp. 3:12-5:1, 5:22-6:21, 11:23-12:3; Doc. 271 pp. 3:19-4:1, 6:4-6, 12:3-5, 23:3-8.)  Defendants are bound by this Court's determinations and their own admissions.  See In re PCH Assoc., 949 F.2d 585, 592 (2d Cir. 1991) (court's determination becomes binding

---

[2] The full extent of the cover-up is set forth in plaintiffs' February 28, 2011 memorandum and the supporting documents, all of which are incorporated herein.  (Doc. 243-13.)

6

precedent in later stages of litigation); <u>Gorham-Dimaggio v. Countrywide Home Loans, Inc.</u>, 2009 WL 1748743, at * 8 (N.D.N.Y. 2009) (same); <u>Perkowski v. Stratford Bd. of Ed.</u>, 455 F. Supp. 2d 91, 98 n.8 (D. Conn. 2006), (quoting <u>Purgess v. Sharrock</u>, 33 F.3d 134, 144 (2d Cir. 1994) (noting that assertions found in pleadings and briefs will be treated as admissions).

The lead case on which defendants rely for the proposition that they mistakenly withheld funds is easily distinguishable.  In <u>Lawson v. Whitney's Frame Shop</u>, 42 Conn. App. 599 (Conn. App. Ct. 1996), the defendant, "acting at the direction of the Hartford police department, towed plaintiff's automobiles" to its lot after the plaintiff incurred $3,000 in parking tickets.  Here, the Court directed defendants to return the stolen funds almost two years ago. (Doc. 175 pp. 5:22-6:3.)

Accordingly, the Court should deny defendants' motion for summary judgment dismissing plaintiffs' sixth and seventh claims.

**POINT III**

**DEFENDANTS STOLE THE $3,102,531.47 TRANSFERRED IN THE
TRANSPORT THEFT WHEN THEY USED THOSE FUNDS TO SATISFY
<u>THEIR FINANCIAL OBLIGATIONS AND REFUSED TO RETURN THE FUNDS</u>**

Defendants admit that the $3.1 million stolen in the Transport Theft satisfied a Libertas obligation.  (Doc. 366.)  They nevertheless proclaim innocence because the stolen funds were transferred from 3V Capital Master Fund's trading account to Credit Suisse's bank account. Therefore, according to defendants, they never "took, obtained, or withheld" the stolen funds. (Doc. 366 pp. 14-15.)

Funds need not actually flow through a defendant's account for the defendant to take, obtain or withhold it.  As Your Honor previously held, under the Connecticut theft statute, a defendant need only exercise wrongful dominion over the funds to be liable.  See <u>ALV Events</u>

Int'l v. Johnson, 2010 WL 7856715 at *6 (D. Conn. Aug. 20 2010) (defendant liable for statutory theft where moneys were wired to a third party for his benefit).  When a defendant wrongfully uses funds to satisfy its own financial obligations, it exercises dominion over funds.  See id.; People v. Kozlowski, 846 N.Y.S.2d 44, 47-48 (2d Dep't 2007) (transfer of company funds directly to third party for defendant's benefit constituted larceny); Black's Law Dictionary, 6th ed. (defining dominion as control over property).

The cases defendants cite in support of their argument are inapposite.  See Geico Indem. Co. v. Rodriguez, 2010 WL 816862 at *1 (Conn. Super.  Feb. 3, 2010) (Geico insured, who was injured in a car accident, cashed a $26,730 check payable to her that Geico should have issued to her medical provider); Riverbend Executive Ctr., Inc. v. Modern Telecomm'n CT., Inc, 2000 WL 765500 (Conn. Super. June 1, 2000) (transfer of office fixtures).  Neither involved a defendant using stolen funds to satisfy his own financial obligations.

Accordingly, defendants' motion for partial summary judgment should be denied.

## POINT IV

### ESCROWING FUNDS ALMOST THREE YEARS INTO THIS LITIGATION AND ONLY WHEN ORDERED TO DO SO DOES NOT ABSOLVE DEFENDANTS

Defendants contend they did not steal because they ultimately sold stock and escrowed the proceeds.  (Doc. 366, pp. 18, 23-24.)  Therefore, according to defendants, their theft was only temporary.  (Id.)  This is simply the wrong legal standard for civil theft.  As set forth in Point I supra, a defendant is liable for larceny if he intends to permanently deprive the victim of its property or disposes of the property without the intent to permanently deprive the victim.   See State v. Weiler II, 35 Conn. App. 566, 577-78 (App. Ct. 1994).   There is no dispute that

defendants used the stolen funds to satisfy their own financial obligations and only escrowed funds when ordered to do so.

Nor may a party withhold millions of dollars because he seeks to use it as leverage in litigation.[3]  (Doc. 366 pp. 26-27.)  See Blackwell v. Mahmood, 120 Conn. App. 690, 702 (App. Ct. 2010) (defendant liable for statutory theft for withholding funds even though he believed that plaintiff had improperly failed to return deposits to defendant).

Both cases on which defendants rely to support their "leverage" argument are inapplicable because they held that the plaintiff failed to prove statutory theft by clear and convincing evidence.  See Connecticut Valley Wholesale Florists, Inc. v. Ferris, 1999 WL 989599 (Super. Ct. Conn. Oct. 15, 1999) (withholding orchids did not constitute theft); Mafcote Indus., Inc. v. Swanson, 1998 WL 795119 (Super. Ct. Conn. Nov. 2 1998) (withholding a Ford Taurus did not constitute theft). That standard became obsolete when Connecticut's Supreme Court held that a plaintiff need only prove statutory theft by a preponderance of the evidence. See Stuart v. Stuart, 297 Conn. 26, 44 (2010).

Defendants' argument that they are not liable because they escrowed the funds is meritless.  (Doc. 366 pp. 18, 23-24.)  See L&V Contractors, LLC v. Drive Train Unlimited, LLC, 2010 WL 5573700, at * 4 (Conn. Super. Dec. 10, 2010) (defendants liable for statutory theft even though they still maintained stolen property); Torres v. Kershner Co., 2010 WL 5573744, at *14-15 (Conn. Super. Dec. 13, 2010) (despite money being held in escrow, defendants still liable for theft where court found intent to withhold).

First, the legal authority defendants cite undercuts their arguments because all were breach of contract actions.  In Nationwide Airlines (PTY) Ltd. v. African Global, Ltd., 2007 WL

---

[3] If this were the case, then any party involved in litigation could, without consequence, withhold funds due to his adversary for any reason.

521155 (D. Conn. Feb. 14, 2007), the court rejected the statutory theft claim not because the defendants maintained funds but because the action was "a contract dispute at heart, despite the best efforts of both parties to dress it up in tort clothing." Id. at 18. "[T]he parties had a good faith and legitimate dispute about their respective contractual obligations." Id. at 19.[4] As the Court has already determined, this is a tort action, not a contract dispute. (Doc. 281.)

Second, defendants did not escrow the funds when this action was commenced, a year after it started, or even two years later. It took three years for them to escrow the funds, and even then it was only done because the Court ordered them to do so.

In Nationwide, relied upon by defendants, the defendants retained the plaintiff's funds in escrow "during the entire course of [the] litigation." Nationwide Airlines (PTY) Ltd., 2007 WL 521155 at 17. In Psaki, the defendants also independently created an escrow account to ensure they had sufficient funds to pay any judgment. In Ferrari v. First and Last Tavern of Guilford, 2009 WL 4852193 (Conn Super. Nov. 19, 2009), the plaintiff lawfully obtained funds and escrowed them eleven business days into the litigation. Here, Deloitte confirmed that the stolen millions were used to fund Libertas's financial obligations because Libertas lacked sufficient capital to independently satisfy those obligations. (Doc. 362-1.) Katcher made $150 million propping Libertas up with plaintiffs' stolen funds. Merely because defendants escrowed less than ten percent of this profit when ordered to do so does not absolve defendants of liability for statutory theft.

In a last ditch effort, defendants argue that they never actively concealed the stolen funds. (Defs. Mem. 30-32.) But concealment is not an element of a statutory theft claim. See Fenn v.

---

[4] Psaki v. Karlton, 2006 WL 2605101 (Conn. Super.. Aug. 4, 2006), and Ferrari v. First and Last Tavern of Guilford, 2009 WL 4852193 (Conn Super. Nov. 19, 2009), which Katcher also cites (Doc. 366, p. 23), were contract disputes as well.

<u>Yale Univ.</u>, 2005 WL 327138, at *1 (D. Conn. Feb. 8, 2005) (recognizing statutory theft is synonymous with larceny and thus a plaintiff must only prove defendant, with the intent to deprive another of property, wrongfully takes, obtains or withholds such property from the owner).

The lone case defendants cite for their incorrect proposition is <u>Schlesinger v. Prokopi</u>, 1996 WL 727333 (Conn. Super. Dec. 6, 1996), an unreported decision which is inapposite because it involved a 1983 Mercedes that the defendant paid for and continued to maintain in his garage. Here, the stolen funds were spent years ago to satisfy defendants' financial obligations. (Doc. 362-1.) That defendants have sufficient funds to pay back the stolen principal does not change that the funds were stolen and expended.

Accordingly, defendants' motion for partial summary judgment should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny defendants' motion for summary judgment dismissing plaintiffs' sixth and seventh claims.

Dated:  Garden City, New York
        March 16, 2012

                                        Respectfully Submitted,

                                        **STAGG, TERENZI, CONFUSIONE**
                                        **& WABNIK, LLP**

                          By:           s/ Andrew Kazin
                                      Andrew Kazin (ct-24833)
                                      Debra L. Wabnik (ct-24768)
                                      Thomas E. Stagg (ct-23429)
                            Attorneys for Plaintiffs SV Special Situations
                            Master Fund Ltd. and 3V Capital Master Fund Ltd.,
                            and Third-Party Defendants Scott A. Stagg and 3V
                            Capital Management LLC
                            **Office and P.O. Address:**
                            401 Franklin Avenue, Suite 300
                            Garden City, New York 11530
                            (516) 812-4500