UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

SV SPECIAL SITUATIONS MASTER FUND
LTD. and 3V CAPITAL MASTER FUND, LTD.,

      Plaintiff,

- against -

KNIGHT LIBERTAS LLC, KNIGHT LIBERTAS
HOLDINGS LLC, LIBERTAS HOLDINGS LLC,
LIBERTAS PARTNERS LLC, and GARY
KATCHER,

      Defendants/Third-Party Plaintiffs,

- against –

MARK A. FOCHT, SCOTT A. STAGG, and 3V
CAPITAL MANAGEMENT LLC,

      Third-Party Defendants.

Case No. 3:08cv1769 (SRU)

MARCH 16, 2012

---

**PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT
IN OPPOSITION TO DEFENDANTS/THIRD-PARTY PLAINTIFFS'
CROSS-MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS'
SIXTH AND SEVENTH CLAIMS FOR UNLAWFUL STATUTORY THEFT**

    Pursuant to Federal Rule 56(a)(1) and Federal District of Connecticut Local Rule of Civil Procedure 56(a)(2), Plaintiffs SV Special Situations Master Fund Ltd. ("SV Master Fund") and 3V Capital Master Fund, Ltd. ("3V Master Fund") submit their response to Defendants/Third-Party Plaintiffs' Local Rule 56(a)(1) Statement of Facts.

**Preliminary Statement**

    1. In or about February 2004, Scott Stagg ("Stagg") and Gary Katcher ("Katcher") formed a hedge fund business that consisted of 3V Capital Master Fund Ltd. ("3V Master Fund") and two feeder funds. (Dkt. No. 281 at 4; see also Dkt. No. 255-11, Response to ¶¶ 9-10; Dkt. No. 256-11,

Response to ¶ 1; Dkt. No. 242, Exh. 63 (Dkt. No. 148, Katcher Dec. 17, 2009 Aff., at ¶ 4)).

**Response:** Admitted.

2. The 3V hedge fund business was managed by two entities owned equally by Stagg and Katcher, including 3V Capital Management LLC ("3V Management"), the investment advisor through which 3V Master Fund effectuated its investment strategy. (Dkt. No. 281 at 4; see also Dkt. No. 255-11, Response to ¶ 11; Dkt. No. 256-11, Response to ¶¶ 4-5; Dkt. No. 242, Exh. 63 (Katcher Dec. 17, 2009 Aff., at ¶ 5) and 2 (Katcher June 17, 2010 Dep. Tr. At 415:17-415:19).)

**Response:** Admitted.

3. Between 2004 and 2007, the business operations of the 3V hedge fund business overlapped with the operations of Libertas, a broker-dealer business formed by Katcher in 2002. (Dkt. No. 281 at 4-5.)[1]

**Response:** Denied, because plaintiffs are unclear as to how defendants are defining the "business operations of the 3V hedge fund business" but admit that certain Libertas employees performed services for 3V Capital Management LLC.

4. The 3V entities and Libertas shared office space and personnel, and Libertas paid the 3V operations expenses, including rent, Bloomberg terminals, and the base salaries and health benefits of the employees. (Dkt. No. 281 at 5; Dkt. No. 148 at ¶ 8 (Katcher Dec. 17, 2009 Aff.); Dkt. No. 254, Exh. 1 at 80:20-81:06, 187:25-188:05; 188:19-189:10, 194:08-19, 204:19-205:12, 211:02-11 (Katcher June 16, 2010 deposition); Dkt. No. 149 at ¶ 3 (Davison Dec. 17, 2009 Aff.).)

**Response:** Denied, because plaintiffs are unclear as to how defendants are defining the "business operations of the 3V hedge fund business" but admit that certain Libertas employees performed services for 3V Capital Management LLC.

---

[1] As used herein, the term "Libertas" refers collectively to Knight Libertas LLC, Knight Libertas Holdings LLC, Libertas Partners LLC, and Libertas Holdings LLC.

5. Focht was 3V Management's COO from 2004 through 2007 and managed Libertas' back office operations until the end of 2006. (Dkt. No. 281 at 5; see also Dkt. No. 255-11, Response to ¶¶ 14; Dkt. No. 256-11, Response to ¶ 7; Dkt. No. 242, Exhs. 55 (Dkt. No. 88, Stagg Sept. 8, 2009 Aff., at ¶ 3) and 8 (Cassella Dec. 15, 2010 Dep. Tr. At 17:20-17:23); Dkt. No. 148, Katcher Dec. 17, 2009 Aff., at ¶¶ 10-11).)

**Response**: Denied, but admit that Focht worked or performed services for Libertas and 3V Capital Management from 2004 to 2008. (Doc. 243-2 p. 50.)

6. In January 2007, Focht informed Katcher that he was leaving Libertas to work exclusively for the 3V hedge fund business. (Dkt. No. 148 at ¶ 11 (Katcher Dec. 17, 2009 Aff.).)

**Response:** Admitted.

7. By early 2007, the 3V operations were separated from Libertas. (Dkt. No. 148 at ¶ 12 (Katcher Dec. 17, 2009 Aff.).)

**Response**: Denied because Katcher and Libertas continued to misappropriate money from 3V Master Fund in 2007. (Doc. 243-3 at pp. 6-8 (Kazin Affirmation Ex. H.))

8. In March 2007, Stagg moved the 3V offices to a new location without Katcher's knowledge or consent. (Dkt. No. 281 at 5; Dkt. No. 148 at ¶ 14 (Katcher Dec. 17, 2009 Aff.).)

**Response**: Admitted.

9. Among others, Focht knew about Stagg's plans, concealed them from Katcher at Stagg's request, and moved with Stagg to the new 3V offices. (Dkt. No. 281 at 5; Dkt. No. 242, Exh. 9 at 161:01-163:10 (Focht Jan. 24, 2011 deposition).)

**Response**: Admitted.

10. In November 2008, 3V Capital Master Fund commenced this action. (Dkt. No. 1).)

**Response**: Admitted.

11. On or about May 2, 2006, to pay for the purchase of certain Stelco bonds, $2,490,239.50 was wired from 3V Master Fund to an account owned by Libertas (the "3V Stelco Transfer"). (Dkt. No. 281 at 7-8; see also Dkt. No. 255-11, Response to ¶ 33; Dkt. No. 242, Exhs. 42 (3V Capital Management LLC letters of authorization dated May 2, 2006) and 9 (Focht Jan. 24, 2011 Tr. At 154:25-156:02).)

**Response:** Admitted.

12. The 3V Stelco Transfer was effectuated by a letter authorization from 3V Management. (Dkt. No. 281 at 8; Dkt. No. 242, Exh. 42 (3V Capital Management LLC letters of authorization dated May 2, 2006).)

**Response:** Admitted.

13. The letter of authorization that effectuated the 3V Stelco Transfer bears Stagg's signature. (Dkt. No. 281 at 8; Dkt. No. 242, Exh. 42 (3V Capital Management LLC letters of authorization dated May 2, 2006).)

**Response:** Admitted.

14. On or about May 2, 2006, to pay for the purchase of Stelco bonds, $2,918,021.50 was wired from non-party Distressed/High Yield Trading Opportunities Fund Ltd. ("Distressed") to an account owned by Libertas (the "Distressed Stelco Transfer"). (Dkt. No. 281 at 7-8; see also Dkt. No. 242, Exh. 42 (3V Capital Management LLC letters of authorization dated May 2, 2006) and 9 (Focht Jan. 24, 2011 Tr. at 154:25-156:02).)

**Response:** Admitted.

15. The Distressed Stelco Transfer was effectuated by a letter authorization from 3V Management. (Dkt. No. 281 at 8; Dkt. No. 242, Exh. 42 (3V Capital Management LLC letters of authorization dated May 2, 2006).)

**Response:** Admitted.

16. The letter of authorization that effectuated the Distressed Stelco Transfer bears Stagg's signature.  (Dkt. No. 281 at 8; Dkt. No. 242, Exh. 42 (3V Capital Management LLC letters of authorization dated May 2, 2006).)

**Response:**  Admitted.

17. On or about May 2, 2006, to pay for the purchase of Stelco bonds, $427,782.10 was wired from non-party Pierce Diversified Strategy Master Fund, LLC ("Pierce") to an account owned by Libertas (the "Pierce Stelco Transfer").  (Dkt. No. 281 at 7-8; see also Dkt. No. 242, Exh. 42 (3V Capital Management LLC letters of authorization dated May 2, 2006) and 9 (Focht Jan. 24, 2011 Tr. at 154:25-156:02).)

**Response:**  Admitted.

18. The Pierce Stelco Transfer was effectuated by a letter authorization from 3V Management.  (Dkt. No. 281 at 8; Dkt. No. 242, Exh. 42 (3V Capital Management LLC letters of authorization dated May 2, 2006).)

**Response:**  Admitted.

19. The letter of authorization that effectuated the Pierce Stelco Transfer bears Stagg's signature.  (Dkt. No. 281 at 8; Dkt. No. 242, Exh. 42 (3V Capital Management LLC letters of authorization dated May 2, 2006).)

**Response:**  Admitted.

20. On or about February 14, 2007, $3,362,565.89 was wired from 3V Master Fund to the J.P. Morgan account of Libertas' payroll agent (the "Payroll Transfer").  (Dkt. No. 281 at 7; see also Dkt. No. 242, Exhs. 43 (3V Capital Management LLC letter of authorization dated February 14, 2007) and 9 (Focht Jan. 24, 2011 Tr. at 156:20-157:11).)

**Response:**  Admitted and further state that Focht admitted transferring $3,362,565.89 from 3V Master Fund's trading account to Libertas Partners' payroll account to fund Libertas Partners'

5

bonus payroll and that Libertas lacked sufficient funds to otherwise pay its bonus payroll and that Focht advised Katcher that Libertas lacked sufficient funds. (Doc. 243-2 pp. 13-16.)

21. The Payroll Transfer was effectuated by a letter authorization from 3V Management. (Dkt. No. 281 at 7; Dkt. No. 242, Exh. 43 (3V Capital Management LLC letter of authorization dated February 14, 2007).)

**Response**:   Denied, but admit that Focht admitted transferring $3,362,565.89 from 3V Master Fund's trading account to Libertas Partners' payroll account to fund Libertas Partners' bonus payroll and that Libertas lacked sufficient funds to otherwise pay its bonus payroll and that Focht advised Katcher that Libertas lacked sufficient funds. (Id.)

22. The letter of authorization that effectuated the Payroll Transfer bears Stagg's signature. (Dkt. No. 281 at 7; Dkt. No. 242, Exh. 43 (3V Capital Management LLC letter of authorization dated February 14, 2007).)

**Response**:   Denied, but admit that the letter of authorization bears a signature purporting to be Stagg's and that Focht admitted transferring $3,362,565.89 from 3V Master Fund's trading account to Libertas Partners' payroll account to fund Libertas Partners' bonus payroll and that Libertas lacked sufficient funds to otherwise pay its bonus payroll and that Focht advised Katcher that Libertas lacked sufficient funds. (Id.)

23. On or about April 18, 2007, $3,102531.47 was wired from 3V Master Fund to Credit Suisse (the "Credit Suisse Transfer").  (Dkt. No. 281 at 8; see also Dkt. No. 242, Exh. 44 (3V Capital Management LLC letter of authorization dated April 18, 2007) and 9 (Focht Jan. 24, 2011 Tr. at 160:06-160:18).)

**Response**:   Denied, but admitted that on April 20, 2007, $3,102,531.47 was transferred from 3V Master Fund's trading account to pay an obligation Libertas had owed to Credit Suisse for more than one year. (Doc. 243-2 p. 19; Doc. 243-3 pp. 4-5.)

24. The Credit Suisse Transfer was effectuated by a letter authorization from 3V Management. (Dkt. No. 242, Exh. 44 (3V Capital Management LLC letter of authorization dated April 18, 2007).)

**Response:** Denied, but admitted that on April 20, 2007, $3,102,531.47 was transferred from 3V Master Fund's trading account to pay an obligation Libertas had owed to Credit Suisse for more than one year. (Doc. 243-3 pp. 4-5.)

25. The letter of authorization that effectuated the Credit Suisse Transfer bears Stagg's signature. (Dkt. No. 242, Exh. 44 (3V Capital Management LLC letter of authorization dated April 18, 2007).)

**Response:** Denied, but admitted that the letter of authorization that effectuates the Credit Suisse Transfer purports to bear Stagg's signature and that on April 20, 2007, $3,102,531.47 was transferred from 3V Master Fund's trading account to pay an obligation Libertas had owed to Credit Suisse for more than one year. (Id.)

26. Neither Libertas nor Katcher received any of the funds wired to Credit Suisse. (Dkt. No. 242, Exh. 11 at 224:06-15 (Stagg Jan. 27, 2011 deposition); see also February 24, 2012 Declaration of Andrew P.C. Wright (hereafter, "Decl.") Exh. A at ¶¶ 15, 25 (Weisman Report).)

**Response:** Admitted, but state that Libertas $3.1 million debt to Credit Suisse incurred in connection with its purchase of Transport bonds was eliminated by the Credit Suisse Transfer.

27. The transfers relating to Northern Offshore (the "Northern Offshore Transfers"), as identified by the Third Amended Complaint and prior pleadings in this case, were effectuated by letters of authorization from 3V Management. (See Dkt. No. 243-5, Exh. 3 (Stagg Feb. 24, 2010 Aff.).)

**Response:** Admitted.

28. The letter of authorization that effectuated the Northern Offshore Transfers bears Stagg's signature. (See Dkt. No. 243-5, Exh. 3 (Stagg Feb. 24, 2010 Aff.).)

**Response:** Admitted.

29. The Payroll Transfer was discovered by Libertas and its outside accountants in 2008. (Dkt. No. 148 at ¶ 22 (Katcher Dec. 17, 2009 Aff.); Dkt. No. 150 at ¶ 2 (Havey Dec. 17, 2009 Aff.); Dkt. No. 254, Exh. 3 at 49:17-50:13, 56:21-57:04, 62:02-15, 68:03-11, 71:17-72:16 (Havey Nov. 26, 2010 deposition).)

**Response:** Denied and further state that on February 14, 2007 Focht made a transfer of 3.4 million dollars from 3V Master Fund's trading account to Libertas Partners's payroll account to fund Libertas Partners' bonus payroll. (Doc. 243-3 p. 15) Katcher personally received not less than 100,000 of the stolen funds and admitted the transfer was unauthorized. (Doc. 243-3 p. 59). Aware that the stolen funds could preclude the sale of Libertas Holdings to Knight, Katcher directed Davison to draft a memorandum to Liertas's auditors stating that the transfer of funds was for expenses incurred on 3V's behalf in 2005-2006. (Doc. 243-2 pp. 78-79; Doc. 243-7 p. 23). Information in the memorandum came from Focht during a meeting with a year after the transfer. (Doc. 243-3 pp. 73-74). Katcher and his officers all knew the information Focht provided was a lie but nevertheless did not confirm it. (Doc. 243-2 pp. 84-85; Doc. 243-2 p. 34)

30. At Katcher's direction, Libertas employees inquired with Focht, the COO of the 3V hedge fund business, about the purpose and rationale for the transfer. (Dkt. No. 251 at ¶ 12 (Katcher Mar. 18, 2011 Aff.); Dkt. No. 252 at ¶ 7 (Havey Mar. 18, 2011 Aff.); Dkt. No. 150 at ¶ 3 (Havey Dec. 17, 2009 Aff.); Dkt. No. 254, Exh. 3 at 82:10-82:13, 91:05-10, 93:08-16 (Havey 11/26/10 deposition); Dkt. No. 149 at ¶ 4 (Davison Dec. 17, 2009 Aff.); Dkt. No. 254, Exh. 13 at 396:16-21 (Focht Jan. 25, 2011 deposition).)

**Response:** Denied that Focht was the COO of "the hedge fund business," but admitted that Katcher knew about the Payroll Transfer as early as April 2008, directed Libertas's employees to investigate the Payroll Transfer after Oracle questioned it and that Katcher and his officers blindly accepted Focht's false explanation even though his explanation was clearly a lie. (Doc. 243-2 p. 51.)

31.   Libertas also reported the transfer to its auditors, who were also 3V Master Fund's auditors, even though the auditors had completed their audit of Libertas and were prepared to issue their opinion concerning its financial statements.  (Dkt. No. 251 at at ¶ 15 (Katcher Mar. 18, 2011 Aff.); Dkt. No. 252 at ¶ 10 (Havey Mar. 18, 2011 Aff.); Dkt. No. 150 at ¶ 4 (Havey Dec. 17, 2009 Aff.); Dkt. No. 254, Exh. 3 at 97:17-24 (Havey Nov. 26, 2010 deposition); Dkt. No. 149 at ¶ 6 (Davison Dec. 17, 2009 Aff.); Dkt. No. 254, Exhs. 6 at 55:13-56:13, 87:06-21 (Davison Dec. 3, 2010 deposition) and 1 at 450:09-451:08, 456:05-15 (Katcher June 17, 2010 deposition); Dkt. No. 243-11 at ¶ 18 (Henderson Dec. 9, 2010 Aff.); Dkt. 254, Exhs. 3 at 137:02-06 (Havey Nov. 26, 2010 deposition) (identifying McGladrey as Libertas' auditors) and 6 at 54:14-16, 57:03-09 (Davison Dec. 3, 2010 deposition) (identifying McGladrey, including Mark Levy and Peter Testaverde, as Libertas' auditors); Dkt. No. 242, Exh. 11 at 116:21-117:23 (Stagg Jan. 27, 2011 deposition) (identifying McGladrey, including Mark Levy and Peter Testaverde as 3V's auditors).)

**Response:** Admitted to the extent that Katcher caused his General Counsel and CLO to draft an April 15, 2008 memo to Libertas' auditors stating that the transfer was for expenses incurred on 3V's behalf in 2005-06, even though Katcher and his officers knew that Libertas lacked any financial record, receivable or other document relating to these purported transfers. (Doc. 243-2 pp. 78-79; Doc. 243-7 p. 23.)

32.   Focht responded that the transfer was made by 3V to reimburse Libertas for the expenses it previously paid on behalf of 3V (including payroll, healthcare, and Bloomberg

9

expenses).  (Dkt. No. 251 at ¶ 13 (Katcher Mar. 18, 2011 Aff.); Dkt. No. 252 at ¶ 7 (Havey Mar. 18, 2011 Aff.); Dkt. No. 150 at ¶ 5 (Havey Dec. 17, 2009 Aff.); Dkt. No. 149 at ¶ 7 (Davison Dec. 17, 2009 Aff.); Dkt. No. 254, Exhs. 3 at 83:24-84:04, 87:16-20 (Havey Nov. 26, 2010 deposition) and 6 at 63:04-05 (Davison Dec. 3, 2010 deposition).)

**Response:**  Admitted that Katcher knew about the Payroll Transfer as early as April 2008, directed Libertas's employees to investigate the Payroll Transfer after Oracle questioned it and that Katcher and his officers blindly accepted Focht's false explanation even though his explanation was clearly a lie. (Doc. 243-2 p. 34.)

33.  Focht also provided documentation that he represented was from 3V Master Fund's administer [sic], a third party, that showed a payable for the expenses on 3V Master Fund's accounting records.  (Dkt. No. 251 at ¶ 13 (Katcher Mar. 18, 2011 Aff.); Dkt. No. 252 at ¶ 8 (Havey Mar. 18, 2011 Aff.); Dkt. No. 150 at ¶ 11, Exh. A (Havey Dec. 17, 2009 Aff.); Dkt. No. 149 at ¶ 9 (Davison Dec. 17, 2009 Aff.); Dkt. No. 254, Exhs. 3 at 83:24-84:04, 93:17-23, 166:02-07 (Havey Nov. 26, 2010 deposition) and 13 at 396:03-08, 397:03-08 (Focht Jan. 25, 2011 deposition).)

**Response:**  Admitted that Katcher knew about the Payroll Transfer as early as April 2008, directed Libertas's employees to investigate the Payroll Transfer after Oracle questioned it and that Katcher and his officers blindly accepted Focht's false explanation even though his explanation was clearly a lie. (Id.)

34.  Focht signed a representation letter to Libertas' auditors that supported his explanation for the Payroll Transfer.  (Dkt. No. 243-7, Exh. 18 (exhibit to Dkt. No. 243-5 (Stagg Feb. 24, 2011 Aff.); Dkt. No. 254, Exhs. 3 at 215:14-216:04 (Havey Nov. 26, 2010 deposition), 6 at 132:05-08, 152:08-09 (Davison Dec. 3, 2010 deposition), and 2 at 460:24-461:10, 479:06-18 (Katcher June 17, 2010 deposition).)

**Response:** Admitted.

35.  Libertas reviewed its books and records and confirmed that it had paid the expenses Focht claimed the Payroll Transfer reimbursed.  (Dkt. No. 252 at ¶ 9 (Havey Mar. 18, 2011 Aff.); Dkt. No. 150 at ¶¶ 12-13 (Havey Dec. 17, 2009 Aff.); Dkt. No. 149 at ¶¶ 10-11 (Davison Dec. 17, 2009 Aff.); Dkt. No. 254, Exh. 3 at 85:10-22, 189:21-190:06 (Havey Nov. 26, 2010 deposition).)

**Response:** Admitted.

36.  Libertas provided the documents it received from Focht, as well as its own documents, to its auditors, who approved the reimbursement and accepted it being recorded on Libertas' audited financial statements.  (Dkt. No. 254, Exhs. 3 at 201:15-25 (Havey Nov. 26, 2010 deposition), 6 at 89:11-21 (Davison Dec. 3, 2010 deposition), and 2 at 456:05-15 (Katcher June 17, 2010 deposition); Dkt. No. 254, Exh. 22 at KnightCap 000070 (Libertas Partners 2007 Audited Financial Statements) (recognizing reimbursement from 3V Capital Master Fund); Dkt. No. 251 at ¶ 16 (Katcher Mar. 18, 2011 Aff.); Dkt. No. 254 at Exhs. 13 at 396:09-15 (Focht Jan. 25, 2011 deposition) and 6 at 96:05-10 (Davison Dec. 3, 2010 deposition).)

**Response:**  Denied.  The same day Davison prepared her memo, Libertas' auditors prepared a letter for Katcher's signature based on the memo containing the false and fraudulent information. (Doc. 243-2 p. 71; Doc. 243-7 p. 25.)

37.  Libertas employees did not conceal and were not instructed to conceal the Payroll Transfer.  (Dkt. No. 251 at ¶ 18 (Katcher March 18, 2011 Aff.); Dkt. No. 252 at ¶ 7 (Havey March 18, 2011 Aff.); Dkt. No. 150 at ¶ 15 (Havey Dec. 17, 2009 Aff.); Dkt. No. 149 at ¶ 14 (Davison Dec. 17, 2009 Aff.).)

**Response:** Denied.  Katcher and other Libertas officers concealed the Payroll Theft.  On February 14, 2007 Focht made a transfer of 3.4 million dollars from 3V Master Fund's trading account to Libertas Partners's payroll account to fund Libertas Partners' bonus payroll. (Doc. 243-

11

3 p. 15) Katcher personally received not less than 100,000 of the stolen funds and admitted the transfer was unauthorized. (Doc. 243-3 p. 59). Aware that the stolen funds could preclude the sale of Libertas Holdings to Knight, Katcher directed Davison to draft a memorandum to Liertas's auditors stating that the transfer of funds was for expenses incurred on 3V's behalf in 2005-2006. (Doc. 243-2 p. 78-79; Doc. 243-7 p. 23). Information in the memorandum came from Focht during a meeting with a year after the transfer. (Doc. 243-3 pp. 73-74). Katcher and his officers all knew the information Focht provided was a lie but nevertheless did not confirm it. (Doc. 243-2 pp. 84-85; Doc. 243-2 p. 34.)

38. Defendants did not discover and were not aware of the 3V, Distressed, and Pierce Stelco Transfers until on or about the time this case was filed in November 2008. (Dkt. No. 251 at ¶¶ 19-20 (Katcher March 18, 2011 Aff.).)

**Response:** Denied. Defendants did not "discover" the Stelco Transfers, plaintiffs did. (Doc. 243-5 pp. 7-8.)

39. Defendants did not discover and were not aware of the Credit Suisse Transfer until on or about the time this case was filed in November 2008. (Dkt. No. 251 at ¶¶ 19, 21 (Katcher March 18, 2011 Aff.).)

**Response:** Denied. Defendants did not "discover" the Credit Suisse Transfer, plaintiffs did. (Doc. 243-5 pp. 7-8.)

40. Plaintiffs are not aware of any evidence that Defendants participated in or knew about the Stelco Transfer when it occurred. (Dkt. No. 242, Exh. 11 at 185:22-187:16 (Stagg Jan. 27, 2011 deposition).)

**Response:** Plaintiffs object to this statement because it is not a statement of material fact and therefore no response is required. To the extent a response is required, plaintiffs deny the

statement because Katcher instigated the Stelco purchase and the Stelco purchase was part of Katcher's scheme to disguise Libertas's undercapitalization.

41. Plaintiffs are not aware of any evidence that Defendants participated in or knew about the Payroll Transfer when it occurred.  (Dkt. No. 242, Exh. 11 at 201:21-202:08 (Stagg Jan. 27, 2011 deposition).)

**Response:** Denied.  The Payroll Transfer was part of Katcher's scheme.  The financial records Libertas disclosed in this action, the Reimer report and the Deloitte report confirm this. (Doc. 243-3; 362-1)

42. Plaintiffs are not aware of any evidence that Defendants participated in or knew about the Credit Suisse Transfer when it occurred.  (Dkt. No. 242, Exh. 11 at 224:06-15, 227:04-11 (Stagg Jan. 27, 2011 deposition).)

**Response:** Denied.  The Credit Suisse Transfer was part of Katcher's scheme to disguise Libertas's undercapitalization.

43. In August 2009, Focht pled guilty in New York state court to charges for misappropriating approximately $8.8 million from 3V Capital Master Fund and 3V Management. (Dkt. No. 281 at 9; <u>see also</u> Dkt. No. 255-11, Response to ¶ 32; Dkt. No. 242, Exh. 41 (Guilty Plea Exhibit 1, *The People of the State of New York v. Mark A. Focht*, Indictment No. 3796/2009 (Sup. Ct. N.Y. County Aug. 10, 2009).)

**Response:** Admitted.

44. Focht's affirmed in his plea agreement stated that he "acted alone in connection with his wrongful conduct."  (Dkt. No. 242, Exh. 41 (Guilty Plea Exhibit 1, *The People of the State of New York v. Mark A. Focht*, Indictment No. 3796/2009 (Sup. Ct. N.Y. County Aug. 10, 2009).)

**Response:** Denied because the quoted language refers solely to the initial payroll theft and does not qualify the Stelco theft, Transport theft or the 2008 cover-up of the payroll theft. (Doc. 88-2.)

45.   In July 2011, Defendants caused the sale of more than $13 million worth of stock and deposited the proceeds into an escrow account pending the outcome of this litigation.  (Dkt. No. 295 at ¶¶ 3-4 (Katcher Affidavit); Dkt. No. 315, Exh. A (escrow account statement).)

**Response:**  Admitted.


Dated: Garden City, New York
       March 16, 2011

                                  Respectfully Submitted,

                                  **STAGG, TERENZI, CONFUSIONE**
                                  **& WABNIK, LLP**

By:       s/ Andrew Kazin
      Debra L. Wabnik (ct-24768)
      Andrew Kazin (ct-24833)
      Thomas E. Stagg (ct-23429)
Attorneys for Plaintiff SV Special Situations Master Fund Ltd. and Third-Party Defendants Scott A. Stagg and 3V Capital Management LLC
**Office & P.O. Address:**
401 Franklin Ave., Suite 300
Garden City, New York 11530
(516) 812-4500