UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SV SPECIAL SITUATIONS MASTER FUND LTD. and 3V CAPITAL MASTER FUND, LTD., <br><br> Plaintiffs, <br><br> - against - <br><br> KNIGHT LIBERTAS LLC, KNIGHT LIBERTAS HOLDINGS LLC, LIBERTAS HOLDINGS LLC, LIBERTAS PARTNERS LLC, and GARY KATCHER, <br><br> Defendants/Third-Party Plaintiffs, <br><br> - against - <br><br> MARK A. FOCHT, SCOTT A. STAGG, and 3V CAPITAL MANAGEMENT LLC, <br><br> Third-Party Defendants. | Case No. 3:08cv1769 (SRU) <br><br> April 5, 2012 |

**DEFENDANTS' MEMORANDUM OF LAW
IN FURTHER SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT ON PLAINTIFFS' SIXTH
AND SEVENTH CLAIMS FOR UNLAWFUL STATUTORY THEFT**

Defendants Knight Libertas LLC, Knight Libertas Holdings LLC, Libertas Partners LLC, Libertas Holdings LLC (collectively, "Libertas"), and Gary Katcher (together with Libertas, "Defendants") submit this memorandum of law in further support of their motion pursuant to FED. R. CIV. P. 56 for summary judgment dismissing plaintiffs SV Special Situations Master Fund Ltd. ("SV Master Fund") and 3V Capital Master Fund Ltd.'s ("3V Master Fund") (collectively, "Plaintiffs") sixth and seventh claims asserting Connecticut statutory theft.[*]

---

[*] Citations in the form "Def. Br. at __" refer to Defendants' Memorandum of Law in Support of Cross-Motion for Summary Judgment (Dkt. No. 366) (the "Opening Brief"). Citations in the form "Opp. at __" refer to Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment (Dkt. No. 371). Unless otherwise noted, all other terms are consistent with the defined terms in the Opening Brief.

DOC ID-18343361.4

## INTRODUCTION

By now the Court is well-versed in the sensational allegations and unsupported conclusions repeated in Plaintiffs' Opposition, but after three and a half years—and seemingly endless discovery involving hundreds of thousands of pages of documents (including every email between Katcher and Focht); more than a dozen depositions; and a Court-appointed expert—Plaintiffs must adduce something more than fanciful theories and wishful inferences to avoid summary judgment. For this motion, that something more is specific evidence to rebut the facts showing Defendants (a) did not receive or effectuate the Credit Suisse Transfer, and (b) lacked the required intent to permanently deprive for any of the alleged transfers. Plaintiffs, however, cannot—and do not attempt to—show a genuine issue as to any of those inescapable facts.

Indeed, the relevant facts are simple and uncontested. Defendants neither knew about nor participated in any of the at-issue transfers. Instead, Mark Focht, the COO of 3V Management, effectuated each of the transfers with an LOA from 3V Management. Focht did not work at Libertas at the time of the Payroll and Credit Suisse Transfers, and the Stelco LOA, which Stagg concedes he authorized, was transferred to Libertas in a legitimate 3V transaction that later failed to settle. The Credit Suisse Transfer proceeds were sent directly from 3V Master Fund to a third-party; no funds were ever received by Defendants. Libertas had an honestly-held belief that this lawsuit was meritless when filed—its auditors (also 3V Master Fund's auditors) had approved the Payroll Transfer and the other transfers appeared to be a retaliatory action for Katcher asserting claims for the more than $10 million he is still owed or covering Stagg and Focht's prior misconduct. But once this action was filed, Defendants preserved stock representing the at-issue funds and have complied with the Court's escrow order.

Under Connecticut law, those undisputed facts are dispositve. Plaintiffs attempt to contort the applicable Connecticut law and precedent and try to muddy the waters with

familiar innuendo and conjecture. But at this stage their faux legal distinctions and irrelevant factual supposition is not enough to mask the inevitable conclusion that the evidence will not prove the statutory theft claims. Summary judgment dismissing these claims is appropriate as a matter of law and ending Plaintiffs' pursuit of punitive and unwarranted remedies will streamline the case for trial. The motion should be granted.

## ARGUMENT

### I. DEFENDANTS NEITHER CONTROLLED OR POSSESSED THE CREDIT SUISSE TRANSFER FUNDS

Plaintiffs admit the relevant facts regarding the Credit Suisse Transfer. Most importantly, Plaintiffs concede that the at-issue funds were wired, pursuant to a LOA from 3V Management, from 3V Master Fund's trading account directly to Credit Suisse, and neither Libertas nor Katcher received any of those funds. (Plaintiffs' Local Rule 56(a)(2) Statement, Dkt. No. 372 at 6-7 (Responses to 23 and 26) (hereinafter "Pl. R. 56 St.".)[1]

Instead, Plaintiffs argue that a "defendant need only exercise wrongful dominion over funds" to be liable for statutory theft and that "[w]hen a defendant wrongfully uses funds to satisfy its own financial obligations, it exercises dominion over funds." (Opp. at 7-8.) Yet Plaintiffs fail to demonstrate how the undisputed facts show Defendants in this case had "dominion" over funds they never received and transfers they did not (and could not) effectuate. "Dominion" means "possession or control," (Black's Law Dictionary, 9th Ed.), but the evidence is undisputed that Defendants never (*i*) possessed the funds; (*ii*) controlled the funds at 3V Master Fund or effectuated the transfer from 3V Master Fund to Credit Suisse; or (*iii*) controlled

---

[1] All of the relevant facts relating to the Credit Suisse Transfer are also confirmed by the Weisman Report, based on a review of the same evidence that is now before the Court. (See Dkt. No. 368, Exh. A at ¶¶ 15, 25.) The Court's July 8, 2011 opinion incorrectly stated that "on April 20, 2007 3V wired Libertas Partners $3,102,531.47 …Focht testified to having transferred the money from 3V Master Fund to Libertas and then wired the $3,102,531 to Credit Suisse to complete the purchase." (Dkt. No. 281 at 8.) There is no evidence nor do Plaintiffs assert, that (a) any of the funds transferred in this transfer were wired to Libertas, or (b) Focht testified to those facts.

the funds once they were wired to Credit Suisse. These undisputed facts prevent Plaintiffs from defeating summary judgment as to this transfer.[2]

Moreover, the single out-of-state criminal case cited by Plaintiffs to support their attempt to impose treble damage liability on Defendants applies a different statute and is clearly inapposite. In People v. Kozlowski, 47 A.D.3d 111 (N.Y. App. Div. 2007), the court, inter alia, affirmed one count of a criminal conviction of a notorious corporate CEO (who stole hundreds of millions of dollars) for embezzling $1.975 million, which he authorized to be transferred from the company for the purchase of three paintings to furnish his luxurious Fifth Avenue apartment and then altered his company's books to conceal. (Id. at 116.) Here, there is absolutely no evidence that Defendants effectuated, authorized or even knew about the transfer from 3V Master Fund to Credit Suisse.

## II. PLAINTIFFS CANNOT DISPUTE THE FACTS ESTABLISHING DEFENDANTS LACKED AN INTENT TO PERMANENTLY DEPRIVE

### A. Defendants had an honestly-held claim of right and Plaintiffs cannot defeat summary judgment by arguing that belief was wrong

Defendants' opening brief established that under Connecticut law a party acting in accordance with an honestly-held claim of right lacks the requisite intent to permanently deprive and set forth the facts underlying Defendants' honestly-held belief. (See Def. Br. at 23-27.) Plaintiffs do not argue that the legal principle is wrong or dispute any of those facts.

Rather, Plaintiffs' argue only that "defendants have no right to the stolen millions." (Opp. at 6-7.) That misses the point. For this motion, the issue is whether the facts show Defendants had an honestly-held claim of right, which would prevent Plaintiffs from

---

[2] See, e.g., Riverbend Executive Center, Inc. v. Modern Telecomm. (CT), Inc., No. CV 970157888S, 2000 WL 765500, at *6-7 (Conn. Super. Ct. June 1, 2000) (after bench trial, rejecting conversion and statutory theft claims against supervisor who oversaw office move where office fixtures were taken because defendant did not remove or direct the removal of the fixtures and there was no evidence he possessed the fixtures).

proving the essential element of intent. The issue is not whether the claim of right was right or wrong. Indeed, it is settled law that an honestly-held claim of right prevents a showing of intent even if the defendant's belief is mistaken, reckless, unreasonable, or unscrupulous. See Def. Br. at 23-24 and n.26 (citing cases). Because the facts in this case—which Plaintiffs do not dispute—establish Defendants' had a honestly-held claim of right to the at-issue funds and necessarily lacked the requisite intent to permanently deprive.[3]

Summary judgment based on Defendants' honestly-held claim of right with respect to the Payroll Transfer is particularly appropriate. It is undisputed that, inter alia, Libertas reported the transfer to its auditors, who also audited 3V Master Fund, and those auditors approved the transfer as a reimbursement of past expenses paid by Libertas and openly recorded it on Libertas' audited financial statements. Those undisputed facts alone establish that Defendants and an independent third party honestly believed Libertas had a claim of right.[4]

**B. Plaintiffs cannot avoid Connecticut law and precedent that establishing an escrow account precludes an intent to permanently deprive**

Plaintiffs admit that Defendants placed the at-issue funds in escrow. (Pl. R. 56 St. at 14 (Response to 45).) Under Connecticut law and precedent, that undisputed fact also

---

[3] Plaintiffs' attempt to distinguish only one of the cases cited by Defendants by arguing that the defendant in Lawson v. Whitey's Frame Shop was authorized to tow the plaintiffs' cars "at the direction of the Hartford police department." (See Opp. at 7.) However, that fact is irrelevant because it was not (a) the act that gave rise to the statutory theft claim (selling the towed cars afterwards), and (b) the basis for defendant's honestly-held belief that it could sell the cars (a city ordinance and the towing company's contract with the city). What is relevant about Lawson is that even though the plaintiffs proved the defendant liable for conversion, they could not prove statutory theft because defendant's honestly-held claim of right precluded a finding that the defendant had an intent to permanently deprive plaintiffs of their property. This case is no different: Plaintiffs may one day prove conversion, but they will never be able to prove an intent to permanently deprive because the undisputed facts establish Defendants had an honestly-held belief that they had a claim of right to the at-issue funds.

[4] Instead, Plaintiffs only offer more of the same conclusory assertions that Katcher "actively covered up the Payroll Theft with false documentation" and that there is "damning evidence of a widespread cover-up." (Opp. at 5 and 6.) There is no evidence to support those allegations—the undisputed facts show the opposite. See Def. Br. at 9-10, 26-27. Plaintiffs cannot defeat summary judgment with conjecture that is belied by the facts in evidence. See Tuccio Dev., Inc. v. Neumann, 114 Conn. App. 123, 129 (Conn. App. Ct. 2009) (affirming defendant's motion for summary judgment on statutory theft claim because "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment").

prevents Plaintiffs from establishing an intent to permanently deprive.  (See Def. Br. at 22-23) (citing Ferrari, Nationwide Airlines, and Psaki).[5]

Plaintiffs' argue that that precedent is somehow inapplicable to this case because they were "breach of contract" actions.  (Pl. Br. at 9.)  This is a curious (and disingenuous) argument because Plaintiffs (a) have asserted a breach of contract claim (see Third Amended Complaint, Dkt. No. 283, at ¶¶ 52-57) and (b) Plaintiffs cited multiple breach of contract cases when it suited their purposes.[6]  More importantly, it is an unavailing argument.  That the plaintiffs in those cases also may have asserted breach of contract claims is irrelevant to the merits of their statutory theft claims, which were rejected because they could not prove an intent to permanently deprive due to, among other things, the fact that the defendant in each case had established an escrow account.  (See Def. Br. at 22-23.)  The same undisputed fact in this case also prevents Plaintiffs from proving the same essential element of their claims.

Nor can Plaintiffs distinguish this case by arguing that the escrow account was funded too late to demonstrate a lack of intent to permanently deprive.  Although Defendants funded the escrow account with cash in July 2011, after this lawsuit was filed Defendants

---

[5] Unable to dispute this dispositive precedent, Plaintiffs cite State v. Weiler II, 35 Conn. App. 566, 577-78 (Conn. App. Ct. 1994), for the incredible proposition that they are not required to prove intent.  That is wrong and an obvious attempt to alter the elements of statutory theft because they cannot prove the required intent.  Not only does Weiler involve specific language in an different criminal statute, but an intent to permanently deprive is a well-established element of the statutory theft claim Plaintiffs assert in this case.  (See Def. Br. at 15-17 (citing statutes and case law).)  Indeed, that element is what distinguishes statutory theft from conversion and courts routinely deny statutory theft claims when it has not been proven—even if, unlike here, the defendant engaged in purposeful and egregious conduct.  See, e.g., Whitaker v. Taylor, 99 Conn. App. 719, 722-23, 732 (Conn. App. Ct. Mar. 6, 2007) (affirming trial court decision that evidence was insufficient to award treble damages against defaulted defendants who took advantage of elderly plaintiff by fraudulently inducing her to "loan" $97,000 to their company because, despite defendants' bad acts, there was no "factual assertion that [defendants] acted with the requisite intent to *permanently* deprive the plaintiff of her property"); Utzler v. Braca, No. FBTCV065003257S, 2008 WL 2068200, at *30 (Conn. Super. Ct. Apr. 25, 2008) (rejecting statutory theft claim after bench trial because plaintiff failed to prove defendant who fraudulently induced the plaintiff to invest $500,000 in real estate construction venture but then used funds to pay personal debts had intent to permanently deprive; the court concluded that "at all relevant times [defendant] believed he would be able to sell the house and repay some or all of the funds at issue").

[6] See, e.g., Health Comm'ns, Inc. v. Chicken Soup for the Soul Pub., No. X05CV084014539S, 2011 WL 2611826, at *1 (Conn. Super. Ct. June 14, 2011) ("This case is a contractual dispute between several parties to several different book publishing agreements, past and present.") (cited in Opp. at 4).

intentionally did not distribute Knight stock (which was ultimately sold to fund the escrow) that was owed to the shareholders of New Libertas LLC from the acquisition of Libertas. Setting aside and preserving that stock is no different than funding an escrow account and similarly establishes a lack of an intent to permanently deprive.[7]

### C. Plaintiffs cannot simply ignore that withholding at-issue funds during litigation is insufficient to establish an intent to permanently deprive

Plaintiffs' opposition reveals that the sole basis on which they hope to prove statutory theft is that Defendants "withheld" the proceeds of the Stelco and Payroll Transfers after this case was filed (see Opp. at 4-6),[8] yet Plaintiffs blatantly ignore this Court's holding in Nationwide Airlines that withholding funds for leverage or during the pendency of litigation does not constitute an intent to permanently deprive. 2007 WL 521155, at *18-19. Instead, Plaintiffs simply assert that "a party [may not] withhold millions of dollars because he seeks to use it as leverage in litigation." (Opp. at 9.) Not surprisingly, Plaintiffs cannot cite any authority supporting that proposition, which has been rejected by this Court. The only case Plaintiffs do cite, Blackwell v. Mahmood, neither addressed Nationwide Airlines nor involved a party

---

[7] See, e.g., Nationwide Airlines (Pty) Ltd. v. African Global, Ltd., No. 3:04 CV 00768 (MRK), 2007 WL 521155, at *10 (D. Conn. Feb. 14, 2007) (finding no intent to permanently deprive because, inter alia, defendant maintained an amount equal to the at-issue funds in his personal bank account during litigation). In Nationwide, the defendant admitted that he owed the plaintiff hundreds of thousands dollars but, as the parties' business relationship unraveled, the defendant intentionally and improperly transferred the funds at issue to his personal account (and spent them) "in order to retain leverage over [plaintiff] to obtain a settlement of its claims against him." (Id. at *8.) This Court held, however, that while the defendant "certainly intended to withhold funds in order to obtain leverage over [plaintiff],…the Court cannot find by even a preponderance of the evidence, let alone by clear and convincing evidence, that [defendant] intended to steal [plaintiff]'s money or to deprive [plaintiff] of it…Conduct of that sort does not constitute statutory theft. (Id. at *19.) Clearly, the facts in Nationwide Airlines are worse then in this case because (a) only the plaintiff had asserted claims, and (b) the defendant's actions were purposeful and knowing.

[8] As described above, Defendants could not "withhold" the Credit Suisse Transfer, because they never received the at-issue funds. Nor is there any argument that Defendants wrongfully "withheld" any funds before this lawsuit was filed because they had an honestly-held claim of right to the Payroll Transfer and, as Plaintiffs admit, no one at Libertas knew about the Stelco Transfer and Credit Suisse Transfer until Plaintiffs discovered them and filed this action. (See Pl. R. 56 St. at 12 (Responses to 38 and 39).)

withholding money for leverage during litigation. 120 Conn. App. 690, 702 (Conn. App. Ct. 2010) (affirming treble damages where defendant simply refused to return deposit to plaintiff).[9]

There could hardly be a case where the Nationwide Airlines holding is more applicable. As in that case, the parties here are involved in a bitter dispute that involves claims for millions of dollars. It is undisputed that Stagg and his companies owe Katcher over $10 million dollars. There is also substantial evidence of wrongdoing by Stagg—for example, in Judge Blawie's contempt opinion and the subsequent evidence showing Stagg continues to conceal assets and loot SV Master Fund while refusing to pay the $6 million judgment he owes to Katcher or comply the escrow order—leaving no doubt that any money paid to Plaintiffs would also disappear. Under these circumstances, refusing to pay first and litigate the unproven allegations later—particularly where the at-issue funds are in escrow (and the other party's astronomical demands would not be satisfied in any event)—simply does not give rise to statutory theft or show an intent to permanently deprive.[10]

### D. Plaintiffs sparse factual allegations are irrelevant, unsupported, and insufficient to defeat summary judgment

Unable to distinguish Connecticut precedent or cite any evidence to dispute the facts described above that require summary judgment, Plaintiffs return to the familiar crutch of

---

[9] The parenthetical Plaintiffs provide for Blackwell is misleading and wrong. Plaintiffs suggest that the court held the "defendant liable for statutory theft for withholding funds even though he believed that plaintiff had improperly failed to return deposits to defendant." (Opp. at 9.) But accurately quoted the court found that the defendant "refused to return the $40,000 deposit because, as he stated on cross-examination, there were many instances in which he did not get a return of deposit." 120 Conn. App. 690, 702. The defendant's reasoning had nothing to do with any evidence that the plaintiff owed him any money and he did not suggest that he withheld funds for litigation leverage. In fact, the defendant in Blackwell had not asserted any claims against the plaintiff.

[10] Plaintiffs urge the Court to adopt a rule that would require imposition of treble damages on every litigant who did not simply pay up when an unproven cause of action was filed. Other than their conclusory assertion it should be so, Plaintiffs also argue that Connecticut precedent holding exactly the opposite is inapplicable because those cases were decided under a clear and convincing evidentiary standard. But again this ignores the plain language of Nationwide Airlines: "the Court cannot find by even a preponderance of the evidence, let alone by clear and convincing evidence, that [defendant] intended to steal [plaintiff]'s money or to deprive [plaintiff]." 2007 WL 521155, at *19 (emphasis added). Moreover, it is a silly distinction because it goes to the facts of the case, not the legal principle. That principle—that withholding funds during litigation does constitute an intent to permanently deprive—is equally applicable to the undisputed facts of this case no matter what the evidentiary standard is.

innuendo and buzzwords. However, each of the factual allegations that can be gleaned from the Opposition fail to rebut the facts relevant to this motion, fail to create a genuine issue as to the lack of an intent to permanently deprive, and fail to otherwise defeat summary judgment.

First, Plaintiffs claim Katcher authorized every wire transfer from the Libertas escrow account. (Pl. Br. at 5.) But even if true, that fact is totally irrelevant to this motion since it does not establish that Katcher authorized or effectuated the at-issue wire transfers from 3V Master Fund, nor could it evidence that Katcher knew about the at-issue transfers.[11]

Second, Plaintiffs claim Katcher maintained a running balance of Libertas' cash flow. (Pl. Br. at 5.) But this claim is both unsupportable and irrelevant to this motion. Plaintiffs lack any tangible evidence of the supposed "running balance." Not one of the more than seventeen witnesses deposed by the parties testified to its existence. And neither of the two sources cited by Plaintiffs supports the claim.[12] More importantly, even if supported, Katcher's

---

[11] Indeed, only the Stelco Transfer—which was made for a legitimate transaction that ultimately failed to settle—went into the escrow account. (As described above, the Credit Suisse Transfer went directly to Credit Suisse and the Payroll Transfer went to the J.P. Morgan account of Libertas' payroll agent. Pl. R. 56 St. at 5 (Response to 20)). In any event, there is no evidence Katcher reviewed account statements or otherwise monitored the escrow account (which was established to settle physical trades and facilitated more than 500 transactions totaling more than $115 million between 2005 and 2007). See Defendants' Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 249) at 18-20. In fact, Focht's testimony, on which Plaintiffs' rely to support this claim, establishes that Katcher's authorization of transfers from the escrow account was little more than signing LOAs prepared by Focht (just as Stagg did for every wire transfer from 3V Master Fund, including the at-issue transfers). See Id. at 20 (citing Focht's testimony that Katcher did not check the account balances before signing an LOA; Focht "just gave [Katcher] the LOA, he signed it, and that was it").

[12] Plaintiffs cite two pages for Katcher's June 2010 deposition (Dkt. No. 243-2 pp. 44-45), which relate to the start-up of Libertas in 2002 and are clearly irrelevant. Plaintiffs also cite an affidavit from Stuart Henderson (Dkt. No. 243-11, ¶ 12), a disgruntled former employee who worked at Libertas from July 2007 to August 2008 (in other words, after all of the at-issue transfers). But the cited paragraph does not support (much less relate) to the allegation in the Opposition and even a cursory review of the rest of Henderson's affidavit reveals that (*i*) he only has personal knowledge (and thus could only testify) about the short period when he actually worked at Libertas; (*ii*) he claims that Libertas' books were in a state of "accounting anarchy," undermining any claim that Katcher kept a running total in his head; and (*iii*) he only attests that, during his brief employment at Libertas, Katcher was able to track Libertas' trading profit and loss on his Bloomberg machine, which does not correspond to actual trade settlements (in other words actual money in or out of Libertas' accounts). Indeed, it is incomprehensible that Katcher could have kept in his head a running total of the more than 40,000 securities trades, representing several billion dollars annually, Libertas brokered from 2005 through 2007, much less running balances for Libertas' more than ten bank and brokerage accounts, which from 2005 through 2007, included more than 3,000 transactions representing in excess of $110 million in gross activity. See Defendants' Opposition to Plaintiff's and Third-Party Defendants' Motion for Summary Judgment (Dkt. No. 249) at 14-15.

supposed running balance of Libertas' cash flow would not (and could not) establish that Katcher knew about the at-issue transfers.

Third, Plaintiffs allege Katcher was repeatedly advised that Libertas was underfunded and unable to meet its financial obligations. (Pl. Br. at 5.) Once again, even if true, this "fact" does not establish that Katcher authorized, effectuated, or knew about the at-issue transfers. Indeed, both Focht's testimony (the only evidence on which Plaintiffs' rely for this claim), and Focht's guilty plea confirm the far more relevant (and undisputed) fact that Focht never told Katcher or anyone else at Libertas about the transfers. See, e.g., Dkt. No. 243-2, p. 14 at 13:20-23 ("Did you tell Mr. Katcher that the way that you fixed the shortfall was to transfer money from 3V?  A.  No, I did not.").[13]  Plaintiffs' inability to cite any other evidence tells the Court all it needs to know about any genuine issue as to the material facts relevant to this motion.

### E. Plaintiffs cannot establish the required specific intent to permanently deprive by arguing Focht was Libertas' agent

Plaintiffs' final desperate allegation is that Defendants should be held liable for statutory theft—and had an intent to permanently deprive—because Focht was a Libertas employee or its agent. This conclusory allegation fails to defeat summary judgment due to Plaintiffs' inability to cite any supporting facts or evidence.[14]

---

[13]     Indeed, Focht confirmed that the relevant statement in his plea agreement applied to all of the at-issue transfers. See Defendants' Memorandum of Law in Support of Summary Judgment (Dkt. No. 237) at 24-25 and n.73. Moreover, while it is irrelevant to this motion, the credible evidence in this case establishes that Katcher was unaware of any alleged cash flow shortage. See, e.g., Defendants' Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 249) at 13 n.22, 15-18 (noting that there is no evidence Libertas' auditors, accountants or regulatory authorities ever suggested a cash flow shortage, and describing the documents Katcher reviewed, none of which show a cashflow shortage).

[14]     See Hill v. Jabbour, NNHCV096006300S, 2011 WL 1566745, at *4 (Conn. Super. Ct. Apr. 4, 2011) (granting motion to strike vicarious liability claims because "[a]lthough the plaintiff alleges that Jabbour acted as an agent and/or an employee…the plaintiff has failed to allege the facts necessary to prove the existence of such a relationship"). "Whether an agency relationship exists is normally a question of fact, but it becomes a question of law when no reasonable juror could find agency under the circumstances." Tirreno v. Mott, 453 F. Supp. 2d 562, 565 (D. Conn. 2006) (granting surety bond company's summary judgment motion because alleged wrongdoer was not surety's agent). This is exactly that case. In addition to being unable to cite any evidence supporting their conclusory allegation, Plaintiffs cite only one case, Sheltry v. Unum Life Ins. Co. of America, 247 F. Supp. 2d 169

In any event, two simple and undisputed facts establish that Focht was not Libertas' agent.  <u>First</u>, Focht was not employed by Libertas at the time of the April 2007 Credit Suisse and February 2007 Payroll Transfers.  (Pl. R. 56 St. at 3 (Response to 6).)[15]  <u>Second</u>, Focht effectuated each of the transfers in his capacity as 3V Management's COO.  This is particularly undisputed for the Stelco Transfer, which Plaintiffs admit was effectuated by an LOA signed by Stagg for a legitimate transaction that later failed to settle.  (<u>Id.</u> at 4-5 (Responses to 11-19).)  Both undisputed facts prevent Plaintiffs from establishing Focht was acting under Libertas' control and within his scope of employment (for the Stelco Transfer).[16]

## CONCLUSION

Plaintiffs must set forth specific facts showing a genuine issue for trial to defeat summary judgment.  They have not done so.  The undisputed facts establish this is not a larceny case:  no Defendant received any portion of the Credit Suisse Transfer and no evidence shows the required intent to permanently deprive.  The motion for summary judgment should be granted to streamline the trial and eliminate Plaintiffs' wildly-exaggerated damages claims.

---

(D. Conn. 2003), for the unremarkable proposition that a principal may be liable for acts of an agent.  However, Plaintiffs do not even attempt to apply the facts of that case here.  For good reason.  In <u>Sheltry</u> the court denied the defendant-insurance company's motion for summary judgment because it held there were genuine issues of fact as to whether an insurance agent who misappropriated money from the plaintiff-insurance policy applicants was the company's agent.  (<u>Id.</u> at 176-77.)  The evidence creating an issue of fact included that the insurance company had entered into a contractual agreement with the insurance agent authorizing him to solicit and accept premiums from applicants and had filed an application with the state indicating the insurance agent was the company's agent.  No similar facts exist in this case.

[15]     <u>See also</u> Declaration of Andrew P.C. Wright filed herewith, Exh. A at 28:11-21 (S. Stagg Jan. 27, 2011 deposition) (testifying Focht was taken off the Libertas payroll and put on the 3V payroll on January 1, 2007).

[16]     <u>See</u> <u>Housatonic Valley Publishing Co. v. Citytrust</u>, 4 Conn. App. 12 (Conn. App. Ct. 1985) (reversing trial court finding that advertising business was agent of its bank client because there was no evidence bank had "essential element of control" over the advertising company); <u>Coleman & Co. Sec., Inc. v. Giaquinto Family Trust</u>, 236 F. Supp. 2d 288, 303-05 (S.D.N.Y. 2002) (holding that broker-dealer could not be held liable for investment advisor's conduct after his employment ended); <u>Phillips v. TLC Plumbing, Inc.</u>, 91 Cal. Rptr. 3d 864, 872 (Cal. Ct. App. 2009) (employer was not liable for post-termination tortious acts committed by former employee).

Dated:  April 5, 2012                              Respectfully submitted,


                                        By:   /s/Jeffrey F. Robertson
                                                  Frederick S. Gold
                                                  Eric Lubochinski
                                                  Shipman & Goodwin LLP
                                                  300 Atlantic Street, Third Floor
                                                  Stamford, CT 06901-3522
                                                  Tel. (203) 324-8100
                                                  Fax (203) 324-8199


                                                  Howard Schiffman, pro hac vice
                                                  Jeffrey F. Robertson, pro hac vice
                                                  Andrew P.C. Wright, pro hac vice
                                                  Schulte Roth & Zabel LLP
                                                  1152 Fifteenth Avenue, NW
                                                  Washington, DC 20005
                                                  Telephone:  (202) 729-7461
                                                  Facsimile:  (202) 730-4520


                                                  *Attorneys for Defendants/Third-Party Plaintiffs Knight Libertas LLC, Knight Libertas Holdings LLC, Libertas Partners LLC, Libertas Holdings LLC, and Gary Katcher*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2012 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Jeffrey F. Robertson
Jeffrey F. Robertson