UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SV SPECIAL SITUATIONS MASTER FUND LTD. and 3V CAPITAL MASTER FUND, LTD., <br><br>Plaintiffs, <br><br>- against - <br><br>KNIGHT LIBERTAS LLC, KNIGHT LIBERTAS HOLDINGS LLC, LIBERTAS HOLDINGS LLC, LIBERTAS PARTNERS LLC, and GARY KATCHER, <br><br>Defendants/Third-Party Plaintiffs, <br><br>- against - <br><br>MARK A. FOCHT, SCOTT A. STAGG, and 3V CAPITAL MANAGEMENT LLC, <br><br>Third-Party Defendants. | Case No. 3:08cv1769 (SRU) <br><br>May 3, 2012 |

**DEFENDANTS' MEMORANDUM OF LAW IN
RESPONSE TO PLAINTIFFS' APRIL 25, 2012 LETTER BRIEF**

Plaintiffs' letter brief re-argues three issues addressed during the April 13, 2012 hearing (and in the parties' prior briefs), but the recycled arguments are as unavailing now as they were the first time around.  First, Plaintiffs' unclean hands defense to Gary Katcher's counterclaims fails because there is no evidence that Katcher acted with unclean hands with respect to his stolen 3V Capital Partners LP capital account.  What's more, this Court recently held that unclean hands is an equitable defense that applies only to equitable claims. Accordingly, Katcher's motion for summary judgment on his counterclaims should be granted.

Second, Plaintiffs cannot defeat summary judgment dismissing their statutory theft claims because there is no evidence Defendants had an intent to permanently deprive.  It is

undisputed that Defendants did not know about or participate in effectuating any of the alleged transfers. Instead, Plaintiffs assert that Defendants had an intent to permanently deprive—and should be liable for treble damages—because Focht, the COO of 3V, was supposedly also Libertas' agent. That argument fails because (a) Focht was not employed by Libertas at the time of the Payroll and Credit Suisse transfers; (b) the Stelco transfers were authorized by 3V for a legitimate transaction; and (c) Focht did not act in the scope of his (former) employment with Libertas or under Libertas' control. Effectuating transfers from 3V Master Fund was not part of Focht's job while employed at Libertas, and neither Libertas nor its agents had the ability to effectuate transfers from 3V Master Fund. Focht acted in his capacity as 3V's COO and with the authority derived from that position. Accordingly, Defendants' motion for summary judgment on the statutory theft claims should be granted.

Third, Plaintiffs still have not produced any evidence to support their speculative and limitless "but for" unjust enrichment theory, which also fails as a matter of law. No reasonable jury could find for Plaintiffs and this theory should be dismissed so that the case can be narrowed to legitimate issues.

## ARGUMENT

**I.    Plaintiffs' Unclean Hands Defense Does Not Prevent Summary Judgment On Defendant Gary Katcher's Counterclaims[1]**

This Court's holding in Drummond American LLC v. Share Corp., in which the Court applied Connecticut law, is dispositive on Plaintiffs' unclean hands defense to the counterclaims arising from the theft of Katcher's 3V Capital Partners LP capital account. In Drummond, this Court held, quoting the Connecticut Supreme Court, "[o]nly conduct that bears

---

[1]    As a threshold matter, Plaintiffs failed to answer or otherwise assert any special defenses—including unclean hands—to Defendants' Answer, Affirmative Defenses, and Counterclaims (Dkt. No. 291), filed in response to the Third Amended Complaint.

on 'the particular controversy at issue' can be the basis for an unclean hands defense." No. 3:08CV1665 (MRK), 2009 WL 3838800, at *5 (D. Conn. Nov. 12, 2009) (quoting Bauer v. Waste Mgmt. of Connecticut, Inc., 239 Conn. 515, 525 (Conn. 1996)); see also S.E.C. v. Electronics Warehouse, Inc., 689 F. Supp. 53, 73 (D. Conn. 1988) ("The defenses of unclean hands and inequitable conduct apply only where there is a direct nexus between the misconduct and the right which is the basis of the suit."). Thus, the defendant in Drummond could not avoid summary judgment on her former employer's breach of covenant not compete claims by asserting that the employer had unclean hands arising from its own hiring of employees from competitors, which "ha[d] nothing to do with the present dispute." 2009 WL 3838800, at *5. Likewise, Plaintiffs here cannot avoid summary judgment on Katcher's counterclaims because there is no evidence that Katcher acted with unclean hands in connection with his investment in 3V Capital Partners LP, which has nothing to do with the transfers Focht is alleged to have made from 3V Master Fund.[2]

---

[2]    Plaintiffs' unclean hands defense fails for at least three additional reasons. First, there is absolutely no evidence that Katcher knew about or acted wrongfully—an essential element of an unclean hands defense—with respect to any of the at-issue transfers. See Ulster Savings Bank v. 28 Brynwood Lane, Ltd., 134 Conn. App. 699, at *5-6 (Conn. App. Ct. Apr. 10, 2012) (holding the doctrine of unclean hands does not apply "[u]nless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people" and affirming summary judgment denying defense in foreclosure action because defendant failed to show the existence of a genuine issue of fact that the plaintiff had engaged in wrongful conduct); Rockville Bank v. Southington Hospitality Group, LLC, No. CV106012854, 2011 WL 2417196, at *3 (Conn. Super. Ct. May 12, 2011) (granting motion to strike unclean hands defense where defendants failed to allege "intentional misconduct" with respect to the transaction at issue). Second, SV Master Fund, from whom no funds were transferred, cannot raise a defense of unclean hands because "the conduct alleged to be unclean must have been done directly against the interests of the party seeking to invoke the doctrine, rather than the interests of a third party." Masse v. Perez, No. CV065007633S, 2011 WL 383854, at *4 (Conn. Super. Ct. Jan. 4, 2011) (holding actions by plaintiff did not give rise to unclean hands defense because "the alleged wrong was not done to the defendant, but to the interests of a third person") (quoting Thompson v. Orcutt, 257 Conn. 301, 311 (Conn. 2001)). Third, most fundamentally, it would be inequitable and unjust to deny Katcher's recovery of money he is indisputably owed—which the only evidence shows was stolen from him by Plaintiffs and Stagg—while permitting Plaintiffs to recover. See Fenn v. Yale Univ., 283 F. Supp. 2d 615, 635 (D. Conn. 2003) ("The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine is invoked…The clean hands doctrine is applied not for the protection of the parties but for the protection of the court…It is applied…for the advancement of right and justice.") (internal quotations and citations omitted); A&B Auto Salvage, Inc. v. Zoning Bd. of Appeals of Town of East Hartford, 189 Conn. 573, 578 (Conn. 1983) ("Application of the doctrine of unclean hands rests within the sound discretion of the trial court.").

Although it is irrelevant given that lack of any evidence Katcher acted with unclean hands in connection with his investment in 3V Capital Partners LP, Drummond also answered the exact question posed by the Court to Plaintiffs, holding that "the doctrine of unclean hands precludes only equitable relief." Id. at *4 (citing Bauer); accord Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 607 (2d Cir. 2005) ("Unclean hands is an equitable defense to equitable claims. Because the [counterclaimant] seeks damages in an action at law, [plaintiff] cannot avail itself of unclean hands as a defense."); Holm v. First Unum Life Ins. Co., 7 Fed. Appx. 40, 41 (2d Cir. 2001) ("The unclean hands doctrine closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.") (emphasis added and internal quotations and citations omitted).

## II. Plaintiffs Cannot Establish The Required Specific Intent To Permanently Deprive That Distinguishes Statutory Theft From Conversion By Arguing Focht Was Libertas' Agent

Plaintiffs attempt to save their meritless statutory theft claims by arguing that Defendants—who did not know about or participate in the transfers—had an intent to permanently deprive because Focht, the COO of 3V who effectuated the transfers in that capacity, was supposedly also Libertas' agent. But that allegation remains factually unsupported and legally wrong. It is undisputed that Focht stopped working at Libertas on January 1, 2007, and was not employed by Libertas at the time of the February 2007 Payroll Transfer or the April 2007 Credit Suisse Transfer (which was not transferred to Libertas in any event). (See Plaintiffs' Local Rule 56(a)(2) Statement, Dkt. No. 372 at 3 (Response to 6); Declaration of Andrew P.C. Wright, Dkt. No 376, Exh. A at 28:11-21 (S. Stagg Jan. 27, 2011 deposition) (testifying Focht was taken off the Libertas payroll and put on the 3V payroll on January 1, 2007).) Defendants cannot be held liable for post-employment acts of their former employee. See, e.g., Coleman & Co. Sec., Inc. v. Giaquinto Family Trust, 236 F. Supp. 2d 288, 303-05 (S.D.N.Y. 2002) (holding

that broker-dealer could not be held liable for investment advisor's conduct after his employment ended); Phillips v. TLC Plumbing, Inc., 91 Cal. Rptr. 3d 864, 872 (Cal. Ct. App. 2009) (employer was not liable for post-termination tortious acts committed by former employee).[3]

Moreover, effectuating transfers from 3V Master Fund was not within the scope of Focht's Libertas employment. Focht had the ability to effectuate transfers from 3V Master Fund only in his capacity as 3V's COO. Libertas and 3V were separate and different businesses, whose employees had separate and different roles and responsibilities. Neither Libertas nor its agents had the ability to effectuate transfers from 3V Master Fund, and there is no evidence that Libertas in any other way controlled Focht's actions in his capacity as COO of 3V. See Housatonic Valley Publishing Co. v. Citytrust, 4 Conn. App. 12 (Conn. App. Ct. 1985) (reversing trial court finding that advertising business was agent of its bank client because there was no evidence bank had "essential element of control" over the advertising company). Simply put, Plaintiffs' agent argument lacks any factual or legal basis.[4]

---

[3]   Plaintiffs admit that the Stelco Transfers—the only transfers effectuated while Focht was employed at both Libertas and 3V—were effected in Focht's role as a 3V employee and authorized by an LOA signed by Stagg for a legitimate transaction that later failed to settle. (Plaintiffs' Local Rule 56(a)(2) Statement, Dkt. No. 372 at 4-5 (Responses to 11-19).) Accordingly, Focht was acting in his capacity as 3V's COO and was not acting under Libertas' control and within his scope of employment at Libertas.

[4]   The cases cited by Plaintiffs highlight the flaws in their argument because, unlike the facts here, in each case the agent (a) was an employee, and (b) acted with specific authorization or within the scope of their employment. See United States v. Ionia Mgmt. S.A., 526 F. Supp. 2d 319, 325 (D. Conn. 2007) (upholding jury verdict finding corporation liable for pollution statute violations because employees who committed violations "were acting under direct orders from their superiors"); United States v. Agosto-Vega, 617 F.3d 541, 553 (1st Cir. 2010) (affirming corporation's conviction of aiding and abetting pollution statute violations carried out by employees with knowledge of their boss); New York Cent. & Hudson River R.R. Co. v. United States, 212 U.S. 481, 494 (1909) (affirming conviction of railroad company for illegal rebate payments made by employees who were authorized to set payment rates); New Orleans Employees Ret. Sys. V. Celestica, 455 Fed. Appx. 10, 15 (2d Cir. Dec. 29, 2011) (holding complaint adequately plead corporation's scienter in securities fraud action where it alleged CEO and CFO knowingly made false statements about the company's financial position); Valentini v. Citigroup, Inc., No. 11 Civ. 1355 (LBS), 2011 WL 6780915, at *6 (S.D.N.Y. Dec. 27, 2011) (holding complaint adequately plead corporation's scienter in securities fraud action because "employees" were alleged to have "performed their professional duties" with the requisite intent); Ucar Int'l v. Union Carbide Corp., No. 00CV1338 (GBD), 2004 WL 137073 (S.D.N.Y. Jan. 26, 2004) (corporation's guilty plea constituted an admission that "its officers and employees were acting on [the corporation's] behalf in participating in a price-fixing conspiracy," barring corporate claims against others for participating in the conspiracy).

### III. Plaintiffs Lack Any Evidence To Support Their "But For" Unjust Enrichment Damages Theory

Plaintiffs' letter brief confirms that—just as they admitted during the April 13, 2012 hearing—Plaintiffs have no evidence to support their "but for" unjust enrichment damages theory. Indeed, it is a purely speculative theory that ignores the many other options available to fund companies, including the specific options available to Katcher, such as cutting expenses; making a personal investment or loan to Libertas (his $4.1 million 3V Capital Partners LP investment would have been a good start); or obtaining outside financing or equity investors (as described in the Deloitte reports). Instead, Plaintiffs' letter brief merely asserts they do not need expert testimony to support their theory,[5] but that misses the point. Plaintiffs must present some evidence—expert opinion or otherwise—to support their theory, but here they have presented <u>no</u> evidence and therefore no reasonable jury could find for them. See <u>Schirmer v. Souza</u>, 126 Conn. App. 759, 772 (Conn. App. Ct. 2011) ("[I]t is the plaintiffs' burden to prove the elements of a claim of unjust enrichment, including that the defendants benefited.").[6]

---

[5] The only case cited by Plaintiffs to support their argument they do not need expert testimony, <u>Torrington v. Research Co. v. Marvin</u>, No. CV064005175, 2010 WL 1667580, at *6 (Conn. Super. Ct. Apr. 6, 2010), is inapposite. <u>Torrington</u> held that the Connecticut appraisal rights statutes do not <u>require</u> expert testimony; it did not address unjust enrichment or the speculative and remote restitutionary damages theory proposed by Plaintiffs, much less hold that Plaintiffs could proceed with that theory despite lacking <u>any</u> supporting evidence.

[6] More importantly, Plaintiffs' argument still confuses the "benefit" they supposedly provided to Defendants. Even if the transfers from 3V Master Fund allowed Libertas to stay in business, a theory for which they have offered no support, the "benefit" to Libertas is simply the foregone cost of obtaining alternative financing (e.g., a loan). Indeed, this is exactly what Deloitte opined. Plaintiffs' theory, however, goes much further—in an equitable action for restitution, they would impose a limitless proposition that would provide a party with endless claims to all future tangential gains no matter how remote to the alleged enriching act and regardless of all other factors. That is simply not the law. See, e.g., <u>Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.</u>, 231 Conn. 276, 286 (Conn. 1994) (rejecting theory of unjust enrichment benefit based on increased revenues defendants received from radio advertising they failed to pay for because "defendants' revenues would necessarily depend on many factors other than a particular local advertising program…including the state of the local and national economy, the fortunes of the industry, and the degree of competition, to state but a few"). And in fact, this case is a perfect example of why not: the only evidence in the record—the Deloitte reports (as well as Defendants' expert reports)—confirm that the Knight acquisition was not impacted by or based on the at-issue transfers, and instead was based on projected future revenues (based on Libertas' sales force, client relationships and other factors that did not result from the at-issue transfers). Plaintiffs "but for" theory also fails as a matter of law. It is well-established that the unjust enrichment benefit resulting from a money transfer is the dollar amount of the transfer. See <u>Schirmer v. Souza</u>, 126 Conn. App. 759, 772-774 (Conn. App. Ct. 2011) (affirming unjust enrichment award of $73,052.74, the exact amount the

**CONCLUSION**

Nothing in Plaintiffs' letter brief alters the conclusion that Plaintiffs' unsupported claims, theories, defenses, and allegations should be dismissed from this case. Not only is it legally appropriate, but it will streamline the case for trial.

Dated: May 3, 2012  Respectfully submitted,

By:  /s/Andrew P.C. Wright
Frederick S. Gold
Eric Lubochinski
Shipman & Goodwin LLP
300 Atlantic Street, Third Floor
Stamford, CT 06901-3522
Tel. (203) 324-8100
Fax (203) 324-8199

Howard Schiffman, *pro hac vice*
Jeffrey F. Robertson, *pro hac vice*
Andrew P.C. Wright, *pro hac vice*
Schulte Roth & Zabel LLP
1152 Fifteenth Avenue, NW
Washington, DC 20005
Telephone: (202) 729-7461
Facsimile: (202) 730-4520

*Attorneys for Defendants/Third-Party Plaintiffs Knight Libertas LLC, Knight Libertas Holdings LLC, Libertas Partners LLC, Libertas Holdings LLC, and Gary Katcher*

---

plaintiffs loaned for renovations of a property owned by defendants, even though after the renovations defendants sold the property for a profit of at least $177,000); see also Restatement (First) of Restitution § 150 (1937) ("In an action of restitution in which the benefit received was money, the measure of recovery for this benefit is the amount of money received."); Restatement (Third) of Restitution & Unjust Enrichment § 49(2) (2011) ("Enrichment from a money payment is measured by the amount of the payment or the resulting increase in the defendant's net assets, whichever is less."). This is consistent with Deloitte's analysis, which essentially concluded the "benefit" to Libertas was the dollar value of the transfers plus interest.

## CERTIFICATE OF SERVICE

    I hereby certify that on May 3, 2012 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                  /s/ Andrew P.C. Wright
                                Andrew P.C. Wright